# Exhibit

# A

**File #: 121.828**
**EDELSTEIN LAW, LLP**
**BY:    JAY L. EDELSTEIN, ESQUIRE**
**ATTY. I.D. NO.: 30227**
**230 S. Broad Street, Suite 900**
**Philadelphia, PA 19102**
**(215) 893-9311**
jedelstein@edelsteinlaw.com

**MAJOR JURY**



Filed and Attested by the
Office of Judicial Records
22 Aug 2024 05:17 pm

**Attorney for Plaintiff**

| | |
|---|---|
| **C.A.**<br>c/o Edelstein Law, LLP<br>230 S. Broad Street, Suite 900<br>Philadelphia, PA 19102,<br><br>          Plaintiff,<br><br>   v.<br><br>**VILLANOVA UNIVERSITY**<br>800 Lancaster Avenue<br>Villanova, PA 19085<br><br>    and<br><br>**COLLEGE HALL ASSOCIATES, L.P.,**<br>**d/b/a COLLEGE HALL**<br>**APARTMENTS, a/k/a "THE COURTS"**<br>101 Mill Creek Road<br>Ardmore, PA 19003<br><br>    and<br><br>**COLLEGE HALL G.P.,**<br>**d/b/a COLLEGE HALL**<br>**APARTMENTS, a/k/a "THE COURTS"**<br>101 Mill Creek Road<br>Ardmore, PA 19003<br><br>    and<br><br>**MARKS & COMPANY USA, INC.,**<br>**d/b/a MARKS & COMPANY**<br>101 Mill Creek Road<br>Ardmore, PA 19003<br><br>    and | COURT OF COMMON PLEAS<br><br>PHILADELPHIA COUNTY<br><br>August Term, 2024<br><br>No: _____ |

**ELIJAH JOSPEH KATZENELL**
12606 Granite Rock Road
Clarksburg, MD 20871

    and

**JUAN EGUIGUREN**
Villanova University
800 Lancaster Avenue
Villanova, PA 19085

    and

**ANDREW POLUN**
6 Timberpark Court
Luther-Timonium, MD 21093,

          Defendants.

## CIVIL ACTION COMPLAINT

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

    PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL and INFORMATION SERVICE
    One Reading Center
    Philadelphia, Pennsylvania 19107
    (215) 238-6333
    TTY: (215) 451-6197

### ADVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días, de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL:

    ASSOCIACION DE LICENDIADOS DE FILADELFIA
    SERVICIO DE REFENCIA E INFORMACION LEGAL
    One Reading Center
    Filadelfia, Pennsylvania 19107
    Teléfono: (215) 238-6333
    TTY: (215) 451-6197

Case ID: 240802790

## CIVIL ACTION COMPLAINT

Plaintiff, C.A., by and through her undersigned counsel, Jay L. Edelstein, Esquire, Edelstein Law, LLP, hereby demands damages from the above-captioned Defendants upon the causes of action set forth below.

### I.   PARTIES

1.      Plaintiff, C.A. (hereinafter "PLAINTIFF" or "C.A."), is an adult citizen and resident of the State of Virginia and is proceeding under initials, who can be contacted through her attorney at 230 S. Broad Street, Suite 900, Philadelphia, PA 19102.

2.      Plaintiff's name is a pseudonym.  Pseudonyms are appropriate because the nature of the facts herein involve a sexual attack upon C.A.

3.      At all relevant times hereto, Defendant VILLANOVA UNIVERSITY (hereinafter "VILLANOVA"), is a private university founded in 1842. Villanova boasts that it offers 50 undergraduate programs and over 40 master's, doctoral and professional programs.  Defendant's undergraduate program enrolls students from Pennsylvania as well as throughout other states and countries. Its principal campus is located at 800 Lancaster Avenue, Villanova, Delaware County, Pennsylvania.

4.      At all relevant times hereto, Defendant COLLEGE HALL ASSOCIATES, L.P., d/b/a COLLEGE HALL APARTMENTS, a/k/a "COLLEGE HALL" or "THE COURTS" (hereinafter "COLLEGE HALL ASSOCIATES"), was a corporation and/or other jural entity duly organized and operating under the laws of the Commonwealth of Pennsylvania with a principal place of business at 101 Mill Creek Road, Ardmore, PA 19003.

5.      At all relevant times hereto, Defendant COLLEGE HALL G.P., d/b/a COLLEGE HALL APARTMENTS, a/k/a "COLLEGE HALL" or "THE COURTS" (hereinafter "COLLEGE HALL G.P."), was a corporation and/or other jural entity duly organized and operating under the

Case ID: 240802790

laws of the Commonwealth of Pennsylvania with a principal place of business at 101 Mill Creek Road, Ardmore, PA 19003.

6.     COLLEGE HALL ASSOCIATES and COLLEGE HALL, G.P. are hereinafter collectively referred to as the "COLLEGE HALL DEFENDANTS."

7.     At all relevant times hereto and upon information and belief, the COLLEGE HALL DEFENDANTS owned COLLEGE HALL APARTMENTS.

8.     At all relevant times hereto, Defendant MARKS & COMPANY USA, INC., d/b/a MARKS & COMPANY (hereinafter "MARKS"), was a corporation and/or other jural entity duly organized and operating under the laws of the Commonwealth of Pennsylvania with a principal place of business at 101 Mill Creek Road, Ardmore, PA 19003.

9.     At all relevant times hereto and upon information and belief, MARKS was the management company for the COLLEGE HALL DEFENDANTS and COLLEGE HALL APARTMENTS.

10.     At all relevant times hereto, Defendant ELIJAH JOSEPH KATZENELL (hereinafter "KATZENELL"), was an adult individual who was a student and resided at VILLANOVA, who, upon information and belief, currently resides at 12606 Granite Rock Road, Clarksburg, MD 20871.

11.     At all relevant times hereto, Defendant JUAN EGUIGUREN (hereinafter "EGUIGUREN"), was an adult individual who was an Ecuadorian exchange student at VILLANOVA and resided at VILLANOVA, who, upon information and belief, currently resides at Villanova University, 800 Lancaster Avenue, Villanova, PA 19085.

12.     At all relevant times hereto, Defendant ANDREW POLUN (hereinafter "POLUN"), was an adult individual who was a student and resided at VILLANOVA, who, upon information and belief, currently resides at 6 Timberpark Court, Luther-Timonium, MD 21093.

## II.     VENUE

13.     Jurisdiction is pursuant to Pa. R.C.P. 2179 in that a lawsuit against a business can be brought in a county were a corporation (or similar entity) "regularly conducts business."

14.     Upon information and belief, VILLANOVA advertises regularly in Philadelphia, holds classes in Philadelphia, plays and hosts sporting events in Philadelphia, engages students and their activities, internships, and clinical studies in Philadelphia and hosts online instruction and classes which include students and staff that reside in Philadelphia.

15.     The Pennsylvania Supreme Court has determined that the percentage of business activities alone cannot serve as the sole factor in the regularity of business determination, holding that "a corporation may perform acts 'regularly' even though these acts make up a small part of its total activities." *Hangey v. Husqvarna Professional, Inc.*, 247 A.3d 1136, 2021 (Pa. Super. 2021).

16.     At all relevant times, VILLANOVA carried on substantial business activities within Philadelphia County and the Commonwealth of Pennsylvania.

17.     Venue is therefore proper in the Philadelphia Court of Common Pleas as the VILLANOVA "regularly conducts business" in the City and County of Philadelphia.

## III.     OEPRATIVE FACTS

### A.     VILLANOVA

18.     At all times relevant hereto, C.A. was a student at VILLANOVA.

19.     At all times relevant hereto, C.A. was a resident of Sheehan Hall on the VILLANOVA campus.

20.     In August 2022, C.A. was a returning student and was a sophomore at VILLANOVA.

21.     Upon information and belief, VILLANOVA did not provide any orientation to returning students or sophomores, including C.A.

22.     Upon information and belief, VILLANOVA did not provide any instruction or guidance regarding on- or off-campus alcohol and/or drug use and/or abuse. to returning students or sophomores including C.A.

23.     Upon information and belief, VILLANOVA did not provide any instruction or guidance regarding sexual abuse and/or misconduct to returning students on sophomores including C.A.

24.     Upon information and belief, VILLANOVA hosts a freshman orientation each year.

25.     Upon information and belief, the freshman orientation provided by VILLANOVA to students, including C.A., did not provide any specific instruction or guidance regarding on- or off-campus alcohol and/or drug use and/or abuse.

26.     Upon information and belief, the freshman orientation provided by VILLANOVA to students, including C.A., did not provide any specific instruction or guidance regarding sexual abuse and/or misconduct.

27.     Upon information and belief, VILLANOVA did not provide any warnings regarding on- or off-campus alcohol and/or drug use and/or abuse including at the "COLLEGE HALL APARTMENTS," more commonly known as "COLLEGE HALL" or "THE COURTS."

28.     Upon information and belief, VILLANOVA does not, and all time relevant hereto did not, send any text or e-mail messages or alerts to its students, including C.A., to exercise

Case ID: 240802790

caution or refrain from engaging in on- or off-campus alcohol and/or drug use and/or abuse or sexual abuse and/or misconduct, including at the "COLLEGE HALL APARTMENTS," more commonly known as "THE COURTS."

29.     The first day of classes at VILLANOVA that year was August 24, 2022.

30.     Upon information and belief, the first week of classes from the first day of classes through the end of that weekend, is known as "sylly week," as that is the period of time when students review their course syllabi with their professors.

31.     Upon information and belief, the evening of the first day of classes at VILLANOVA is known by students to be the first night of parties on- and off-campus. Furthermore, some VILLANOVA students may refer to this night as "sylly night."

32.     Upon information and belief, "sylly night" is a time that VILLANOVA students, including underaged students, attend parties, drink alcohol served to them by other students, some of legal age, others not of legal age, causing them to become intoxicated and act in an irrational manner.

33.     Upon information and belief, a large percentage of VILLANOVA students, including underaged students, attend "sylly night" at "THE COURTS."

34.     C.A. attended "sylly night" at "THE COURTS" during the evening of August 24, 2022.

35.     C.A. was under the age of 21 on the evening of August 24, 2022.

36.     While at "THE COURTS", C.A., imbibed alcoholic beverages served to her from within multiple apartments.

37.     Upon information and belief, VILLANOVA does not, and all time relevant hereto did not, send any text or e-mail messages or alerts to its students, including C.A., to exercise

Case ID: 240802790

caution or refrain from engaging in on- or off-campus alcohol and/or drug use and/or abuse or sexual abuse and/or misconduct, if they did indeed decide to attend any "sylly night" activities.

38.    VILLANOVA is known to have a drug, alcohol and sexual assault/abuse and rape problems on its campus.  VILLANOVA'S "Annual Security and Fire Safety Report" of 2023 reported, in part, the following statistics for the years 2020, 2021 and 2022[1]:

| INCIDENT TYPE | 2020 | 2021 | 2022 |
|---|---|---|---|
| RAPE | 3 | 13 | 10 |
| FONDLING | 1 | 7 | 3 |
| STALKING | 2 | 5 | 1 |
| DATING VIOLENCE | 0 | 2 | 10 |
| LIQUOR LAW – REFERRALS | 358 | 355 | 271 |
| DRUG LAW – REFERRALS | 44 | 29 | 45 |

**B.    THE VILLANOVAN ARTICLE**

39.    The Villanovan is a student-run, American university newspaper that is produced in Philadelphia, Pennsylvania. It has been the officially recognized and accredited student newspaper of Villanova University since its founding in 1916.[2]

40.    On or about February 21, 2024, the Villanovan published an article entitled "Community Tightens Around the Future of College Hall."[3]

41.    The article included the following quotes:

a.    "College Hall is home to more than 100 Villanova students."

---

[1] https://www1.villanova.edu/dam/villanova/publicsafety/documents/public-safety-final-2023.pdf - last accessed August 20, 2024.
[2] https://en.wikipedia.org/wiki/The_Villanovan - last accessed August 20, 2024.
[3] https://villanovan.com/25064/news/community-tightens-around-the-future-of-college-hall/ - last accessed August 20, 2024.

b. "College Hall has been the recent recipient of a concerted effort by both the Lower Merion Police Department (LMPD) and the University to crack down on residents' behavior and conduct."

c. "College Hall is its own animal," Lieutenant Edward Sarama of the LMPD said. "It's an echo chamber."

d. "Police reports from the first two weeks of the Fall 2022 semester indicated that the LMPD received three complaint calls from community members related to College Hall. However, the same reports from the first two weeks of the Fall 2023 semester indicate that the LMPD received 10 complaint calls from the community related to College Hall."

e. "We receive referrals [to the Dean of Students office] from Lower Merion, not from Marks, and we are made aware that a student was cited," Tom DeMarco, Associate Vice President for Student Life/Dean of Students, said. "Then, we do a follow up."

f. "Traditional itself, this cycle of consequences appears to be a norm for the University."

42. At all relevant times hereto and prior, VILLANOVA was fully aware of ongoing student misbehavior, underage alcohol consumption and multiple violations of the law that occur and have occurred at THE COURTS for generations of VILLANOVA students.

**C.    "COLLEGE HALL" ("THE COURTS")**

43. As stated above, College Hall is home to more than 100 Villanova students on an annual and recurring basis.

44.    College Hall has been a long-term nuisance to Lower Merion Township and its police, fire and EMS.

45.    College Hall's students have regularly hosted drug and alcohol induced parties.

46.    College Hall has been the subject of scores of complaints to Lower Merion Township, the Lower Merion Police Department and VILLANOVA.

47.    Pursuant to a Right-To-Know-Law (RTKL) request to the Montgomery County Emergency Communications Division (9-1-1 Center), the following data reflecting calls for service to 801 W. Montgomery Avenue, Lower Merion Township (THE COURTS) between March 6, 2021 and March 6, 2024 (3 years) was obtained:

    a.    There were 184 calls for service;

    b.    Approximately 164 calls were for police service;

    c.    The police calls for service included, but were not limited to, noise complaints, suspicious activity, directed patrols, foot patrols, disturbances, burglaries, and responses in conjunction with fire and EMS calls;

    d.    EMS and fire related calls included, but were not limited to, fire alarms, people passing out, unknown medical emergencies, overdoses and head injuries.

48.    Pursuant to a Right-To-Know-Law (RTKL) request to Lower Merion Township, between 2016 and 2024, there were approximately 25 sets of e-mails between Township personnel, board members, police officers, MARKS representatives and VILLANOVA representatives. Many of the e-mail sets provided in the RTKL response included lengthy e-mail chains between the parties.

49.    The content of the e-mails included, but was not limited to:

    a.    Revoking approval to rent to students;

Case ID: 240802790

b.   Results of court hearings, guilty pleas and fines against MARKS;

c.   Property inspections and issuance of citations to MARKS; and

d.   Setting up meetings with MARKS, VILLANOVA and VILLANOVA students;

50.   Pursuant to a Right-To-Know-Law (RTKL) request to Lower Merion Township, over 50 documents were received dating as far back as 1993.

51.   The content of some of these documents included, but was not limited to:

a.   A 1994 letter from Lower Merion Township to the then property owner (not identified) relating to the number of students that can inhabit a single unit;

b.   A 1994 letter from MARKS indicating they would evict students found to be violating maximum apartment occupancy;

c.   1996, 1999 and 2020 letters from Lower Merion Township to Mill Creek Associates and MARKS, regarding disorderly conduct incidents at THE COURTS;

d.   A 2023 letter from Lower Merion Township to MARKS regarding violations of the number of students residing per unit;

52.   At all relevant times hereto and prior, The COLLEGE HALL DEFENDANTS and MARKS knew, or should have known, that THE COURTS were a breeding ground for illicit activities by VILLANOVA students.

53.   At all relevant times hereto and prior, The COLLEGE HALL DEFENDANTS and MARKS were fully aware of ongoing student misbehavior, underage alcohol consumption and multiple violations of the law that occur and have occurred at THE COURTS for generations of VILLANOVA students.

D.   **SYLLY NIGHT AT THE COURTS**

54.   On the night of August 24, 2022, at approximately 10:00 p.m., C.A. attended "sylly night" at THE COURTS.

55.   Upon information and belief, there were hundreds of VILLANOVA students assembled inside and outside THE COURTS.

56.   Upon information and belief, there was no security at the COURTS and C.A. does not recall seeing any police on location.

57.   While at THE COURTS, C.A. had unfettered access to the hallways and apartments of THE COURTS.

58.   While traversing the hallways of THE COURTS, C.A. observed multiple rooms with open doors and large masses of VILLANOVA students, many of whom C.A. believed to be under the age of 21, roaming the hallways and entering and leaving multiple rooms.

59.   Inside many of the open rooms, C.A. observed an innumerable amount of bottles of liquor and beer in plain view.

60.   In the hallways and rooms, C.A. observed multiple students imbibing limitless supplies of alcoholic beverages.

61.   C.A. was served alcoholic beverages in at least one (1) room.

62.   C.A. did not pay for any of the alcoholic beverages she was served.

63.   Upon information and belief, no fees were collected by anyone for any of the alcoholic beverages that were served at THE COURTS that night.

64.   C.A. was never asked by anyone to produce any form of identification to establish her age.

65.   C.A. became highly intoxicated while at the COURTS.

### E.      RAPE AND SEXUAL ASSAULT OF C.A.

66.      C.A., being highly intoxicated, returned by way of an Uber sometime after midnight on August 25, 2022 to her dorm at VILLANOVA in the company of her roommate.

67.      While en route back to VILLANOVA, KATZENELL texted C.A. and asked her to come to his dorm room in Sheehan Hall (room 202) upon her return.

68.      C.A. had known KATZENELL since her freshman year at VILLANOVA.

69.      Upon entering KATZENELL'S dorm room, she noticed EGUIGUREN (KATZENELL'S roommate) and POLUN were also present.

70.      While in KATZENELL'S dorm room, C.A. imbibed more alcohol.

71.      C.A. passed out in KATZENELL'S room and does not recall anything until awakening at approximately 2:00 p.m. that day in her dorm room wearing a t-shirt that did not belong to her and no underwear.

72.      C.A. confronted KATZENELL who informed her that he had sexual intercourse with her.

73.      KATZENELL was ultimately arrested by Villanova Police for Rape Unconscious Victim (18 §3121 §A3), Sexual Assault (18 §3124.1), Indecent Assault Person Unconscious (18 §3126 §A4) and Indecent Assault w/o Consent of Other (18 §3126 §A1).

74.      KATZENLL'S criminal case, as of the date of the filing of this Complaint, is still pending in the Delaware County Court of Common Pleas, Docket #: CP-23-CR-0000137-2024.

75.      Pursuant to the Affidavit of Probable Cause in this matter, a consent search of EGUIGUREN'S cell phone revealed a video showing KATZENELL having sex with C.A. while she was unconscious.

76.     Pursuant to the Affidavit of Probable cause in this matter, POLUN admitted to Villanova Police "[t]hat he can be seen in the video recorded by EGUIGUREN and stated that he was 'assisting' KATZENELL in having intercourse with 'V1' [C.A.] as KATZENELL was a virgin and somewhat unsure of himself."  Furthermore, POLUN admitted to the police that C.A. was "noticeably drunk."

77.     Pursuant to the Affidavit of Probable cause in this matter, POLUN and EGUIGUREN both admitted that they assisted KATZENELL in transporting C.A. from KATZENELL's dorm room to the first-floor bathroom at approximately 2:30 a.m.  EGUIGUREN allegedly contact C.A.'s roommate to come to the bathroom to assist C.A.

78.     Upon information and belief, C.A. and C.A.'s roommate did not believe KATZENELL, EGUIGUREN or PULON were intoxicated.

## IV.     CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### PLAINTIFF C.A. v. VILLANOVA

79.     Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

80.     At all times relevant hereto, VILLANOVA owed a duty to its students, including C.A., to provide a safe educational and residential environment and to protect them from foreseeable risks of harm.

81.     VILLANOVA had a special relationship with its students, including C.A., imposing a duty to control and protect her.

82.     VILLANOVA had a college-student relationship with its students, including C.A., imposing a duty to control and protect her.

83.     VILLANOVA had a landlord-tenant relationship with its students who resided in university on-campus housing as did C.A.

84.     The special relationship, college-student relationship and landlord-tenant relationship between VILLANOVA and its students, including C.A., resembled that of a possessor of land and a business invitee in accordance with Restatement of Torts (Second).

85.     VILLANOVA had a duty to exercise reasonable care to discover that underage alcohol consumption, drug abuse and sexual abuse and misconduct (including rape) was occurring on- and off-campus.

86.     VILLANOVA had a duty to give warnings adequate enough to enable its visitors and students, including C.A., to avoid harm or otherwise protect them from harm.

87.     VILLANOVA represents that its campus is a safe and secure environment for learning.

88.     According to VILLANOVA'S website, "The Public Safety Department is responsible for providing a safe, secure living and learning environment for the Villanova University community."[4]

89.     VILLANOVA'S Director of Public Safety and Chief of Police, David G. Tedjeske, in his message on the VILLANOVA website, embodies the aforementioned sentiment:[5]



_____

[4] https://www1.villanova.edu/university/public-safety/about.html - last accessed August 22, 2024.
[5] https://www1.villanova.edu/university/public-safety/about.html - last accessed August 22, 2024.

90.     Based upon the aforementioned statistics (see ¶ 37, *supra),* VILLANOVA negligently misrepresented that its campus is a safe and secure environment for its students.

91.     VILLANOVA'S negligence, recklessness and outrageous conduct consisted of the following:

    a.   Failing to adequately warn its students, including C.A., about the illicit and underage use of alcohol and drugs on its campus;

    b.   Failing to adequately warn its students, including C.A., about sexual abuse/misconduct and rape on its campus;

    c.   Failing to adequately warn its students, including C.A., regarding the known issues of illicit and underage use of alcohol and drugs at THE COURTS;

    d.   Failing to adequately warn its students, including C.A., about illicit activities associated with "sylly night";

    e.   Failing to adequately warn its students, including C.A., that illicit activities such as underage alcohol and drug use may lower inhibitions and prevent them from protecting themselves from, or subjecting themselves to, harm, including being sexually abuse or raped;

    f.   Failing to communicate with the COLLEGE HALL DEFENDANTS, MARKS and the Lower Merion Township Police Department regarding security and enforcement of Commonwealth laws and VILLANOVA rules and codes of conduct at THE COURTS on "sylly night";

    g.   Failing to provide security or supervision for the protection of its students at THE COURTS on "sylly night";

Case ID: 240802790

h.  Failing to provide security in the dormitories, including C.A.'s dorm, to detect intoxicated students returning from "sylly night";

i.  Failing to provide emotional support and/or medical assistance to intoxicated and underage students, including C.A., upon their return to campus from "sylly night";

j.  Failing to send text messages or e-mails to students warning them of the ramifications of overindulgence of alcohol or drugs, especially in or around the time of "sylly night";

k.  Failing to require Resident Advisors/Assistants (RA) be present at the entrance to their dormitories to monitor returning students from "sylly night" for signs of intoxication or substance abuse;

l.  Failing to require RAs to monitor their dormitory hallways for intoxicated students;

m.  Failing to train RAs to recognize intoxicated or substance abused students;

n.  Failing to require RAs to have regular meetings, especially at the start of the school year or on "sylly night", to discuss alcohol use and/or abuse, underage alcohol use and/or abuse, drug abuse, and/or sexual abuse/misconduct/rape wit their assigned residential students;

o.  Failing to require RAs to search residential students' dorm rooms unannounced for illicit alcohol, drugs or other contraband;

p.  Failing to provide a safe educational and residential environment;

q.  Failing to use reasonable care under the circumstances; and

Case ID: 240802790

r.   Other negligent and reckless acts that may be learned from information currently and solely in the possession of VILLANOVA.

92.   VILLANOVA engaged in conduct that demonstrated a willful and wanton disregard for the safety and well-being of its students, including C.A.

93.   As a direct and proximate result of the aforesaid negligence, recklessness and gross negligence of VILLANOVA, Plaintiff C.A. was caused to be abused and sexually abused (raped) by KATZENELL in cohort with EGUIGUREN and POLULN.

94.   Plaintiff C.A. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of VILLANOVA and its employees, agents, and administrators.  The negligence, recklessness, and outrageous conduct was a substantial factor in causing, and did proximately cause, C.A. to become highly intoxicated and subsequently raped, severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

95.   Plaintiff C.A.'s injuries were caused solely by the negligence, recklessness, and outrageous conduct of VILLANOVA and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against VILLANOVA, including costs, damages for pre-judgment delay and any other relief the Court shall order.

**COUNT II**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**PLAINTIFF C.A. v. VILLANOVA**

96.     Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

97.     VILLANOVA had a pre-existing special relationship, college-student relationship and landlord-tenant relationship with C.A.

98.     VILLANOVA'S pre-existing special relationship, college-student relationship and landlord-tenant relationship created a duty of care to its students, including C.A.

99.     VILLANOVA breached the pre-existing special relationship, college-student relationship and landlord-tenant relationship as iterated above.

100.     VILLANOVA'S breach of the pre-existing special relationship, college-student relationship and landlord-tenant relationship created foreseeable emotional harm so extreme that a reasonable person, such as C.A., should not be expected to endure the resulting distress.

101.     As a direct and proximate result of the negligent and reckless conduct of VILLANOVA described above, Plaintiff C.A. was raped by another VILLANOVA student and suffered severe emotional distress.

102.     Plaintiff C.A. seeks punitive damages against VILLANOVA for their malicious and/or negligent, wanton and reckless acts and omissions described above.

103.     Plaintiff C.A.'s injuries were caused solely by the negligence, recklessness, and outrageous conduct of VILLANOVA and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against VILLANOVA, including costs, damages for pre-judgment delay and any other relief the Court shall order.

**COUNT III**
**NEGLIGENCE**
**PLAINTIFF C.A. v. THE COLLEGE HALL DEFENDANTS AND MARKS**

104.     Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

105.     At all relevant times hereto, the COLLEGE HALL DEFENDANTS owned the property at 801 W. Montgomery Avenue, in Lower Merion Township, Pennsylvania, known as the COLLEGE HALL APARTMENTS, a/k/a "COLLEGE HALL" or "THE COURTS".

106.     Upon information and belief, at all relevant times hereto, MARKS was the management company for the COLLEGE HALL DEFENDANT'S property known as the COLLEGE HALL APARTMENTS, a/k/a "COLLEGE HALL" or "THE COURTS".

107.     The COLLEGE HALL DEFENDANTS and MARKS knew, or should have known, that the COLLEGE HALL APARTMENTS rented primarily to VILLANOVA students.

108.     The COLLEGE HALL DEFENDANTS and MARKS knew, or should have known, that that the COLLEGE HALL APARTMENTS were the subject of multiple complaints from the community and incurred multiple responses from various law enforcement agencies, fire departments and EMS agencies.

109.     The COLLEGE HALL DEFENDANTS and MARKS knew, or should have known, that on many occasions, VILLANOVA students residing at COLLEGE HALL APARTMENTS allowed individuals, sometimes numbering in the hundreds, who were not tenants of COLLEGE HALL APARTMENTS to attend functions, parties, open houses, etc., where alcohol was served to underage people, including like C.A.

110.     The COLLEGE HALL DEFENDANTS and MARKS knew, or should have known, that annually, on the first night of classes at VILLANOVA, an event known as "sylly night" brought hundreds of VILLANOVA students to the COLLEGE HALL APARTMENTS.

Case ID: 240802790

111.    The COLLEGE HALL DEFENDANTS and MARKS knew, or should have known, that many of the VILLANOVA students attending "sylly night" were under the age of 21.

112.    The COLLEGE HALL DEFENDANTS and MARKS knew, or should have known, that many of the VILLANOVA students attending "sylly night" would indulge in drinking alcohol on their premises.

113.    The COLLEGE HALL DEFENDANTS and MARKS knew, or should have known, that their tenants hosted many of the parties at COLLEGE HALL APARTMENTS, allowed non-tenants to attend the parties, allowed attendees to congregate in the hallways and on the outskirts of the building, allowed tenants to keep their apartment doors open to which attendees could enter and consume readily available alcoholic beverages, and allowed unfettered consumption of alcoholic beverages under these circumstances.

114.    At all times relevant hereto and upon information and belief, the COLLEGE HALL DEFENDANTS and MARKS made no arrangements for security or law enforcement to be present at COLLEGE HALL APARTMENTS on "sylly night."

115.    At all times relevant hereto and upon information and belief, there was no security or law enforcement present at COLLEGE HALL APARTMENTS on "sylly night."

116.    C.A. attended "sylly night" activities at COLLEGE HALL APARTMENTS.

117.    C.A. was granted unfettered access to the COLLEGE HALL APARTMENTS property, including the hallways and apartments therein.

118.    C.A. was allowed to imbibe alcoholic beverages provided to her without any form of age verification by tenants of COLLEGE HALL APARTMENTS.

119.    C.A. became intoxicated while at the COLLEGE HALL APARTMENTS.

120.    C.A.'s faculties, as a result of her intoxication, became inhibited.

121.    C.A. was subsequently raped due to her being inhibited as a result of intoxication that occurred while at the COLLEGE HALL APARTMENTS on "sylly night."

122.    C.A. was a public invitee at the COLLEGE HALL APARTMENTS.

123.    The COLLEGE HALL DEFENDANTS and MARKS, as the property owner and management company, respectively, knew or should have known that dangers existed at COLLEGE HALL APARTMENTS, especially on "sylly night" that is the subject of this Complaint.

124.    The COLLEGE HALL DEFENDANTS and MARKS, as the property owner and management company, respectively, owed a duty to C.A. as an invitee, to warn her of the risks of harm that could occur and indeed did occur.

125.    The COLLEGE HALL DEFENDANTS and MARKS, as the property owner and management company, respectively, owed a duty to C.A. as an invitee, to inspect the premises for any known dangers that might harm her.

126.    The COLLEGE HALL DEFENDANTS and MARKS, as the property owner and management company, respectively, owed a duty to C.A. as an invitee, to keep her safe from the foreseeable dangers and risks of harm that were present on "sylly night" that is the subject of this Complaint.

127.    The COLLEGE HALL DEFENDANTS' and MARKS' negligence, recklessness and outrageous conduct consisted of the following:

   a.   Failing to adequately warn its invitees, including C.A., of the dangers and risk of harm present on their property, including on "sylly night";

b.  Failing to adequately warn its invitees, including C.A., regarding the known issues of illicit and underage use of alcohol and drugs on their property, including on "sylly night";

c.  Failing to adequately warn its invitees, including C.A., about illicit activities on their property associated with "sylly night";

d.  Failing to adequately warn its invitees, including C.A., that illicit activities such as underage alcohol and drug use may lower inhibitions and prevent them from protecting themselves from, or subjecting themselves to, harm, including being sexually abuse or raped;

e.  Failing to communicate with VILLANOVA and the Lower Merion Township Police Department regarding security and enforcement of Commonwealth laws and VILLANOVA rules and codes of conduct on their property, including on "sylly night";

f.  Failing to provide security or supervision for the protection of its invitees, including C.A., on their property on "sylly night";

g.  Failing to provide security or supervision for the protection it invitees, including C.A., in the hallways of their property, to detect underage alcohol consumption, especially on "sylly night";

h.  Failing to provide emergency medical assistance to intoxicated and underage students, including C.A., while on their property on "sylly night";

i.  Failing to provide a safe and environment about their property, especially on "sylly night";

j.  Failing to use reasonable care under the circumstances; and

k. Other negligent and reckless acts that may be learned from information currently and solely in the possession of the COLLEGE HALL DEFENDANTS and MARKS.

128. The COLLEGE HALL DEFENDANTS and MARKS engaged in conduct that demonstrated a willful and wanton disregard for the safety and well-being of its invitees, including C.A.

129. As a direct and proximate result of the aforesaid negligence, recklessness and gross negligence of the COLLEGE HALL DEFENDANTS and MARKS, Plaintiff C.A. was caused to become intoxicated which lowered her inhibitions which subsequently cause her to be abused and sexually abused (raped) by KATZENELL in cohort with EGUIGUREN and POLULN.

130. Plaintiff C.A. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of the COLLEGE HALL DEFENDANTS and MARKS and its employees, agents, and administrators.  The negligence, recklessness, and outrageous conduct was a substantial factor in causing, and did proximately cause, C.A. to become highly intoxicated and subsequently raped, severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

131. Plaintiff C.A.'s injuries were caused solely by the negligence, recklessness, and outrageous conduct of the COLLEGE HALL DEFENDANTS and MARKS and were not caused by the Plaintiff in any part.

Case ID: 240802790

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against the COLLEGE HALL DEFENDANTS and MARKS, including costs, damages for pre-judgment delay and any other relief the Court shall order.

**COUNT IV**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**PLAINTIFF C.A. v. THE COLLEGE HALL DEFENDANTS AND MARKS**

132.    Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

133.    The COLLEGE HALL DEFENDANTS and MARKS owned and managed, respectively, COLLEGE HALL APARTMENTS.

134.    Plaintiff C.A. was an invitee of the COLLEGE HALL DEFENDANTS and MARKS.

135.    The COLLEGE HALL DEFENDANTS and MARKS owed a duty of care to its invitees, including C.A.

136.    The COLLEGE HALL DEFENDANTS and MARKS breached the duty of care owed to its invitees, including C.A.

137.    The COLLEGE HALL DEFENDANTS and MARKS breach of the duty of care owed to its invitees created foreseeable emotional harm so extreme that a reasonable person, such as C.A., should not be expected to endure the resulting distress.

138.    As a direct and proximate result of the negligent and reckless conduct of the COLLEGE HALL DEFENDANTS and MARKS described above, Plaintiff C.A. was caused to become intoxicated which lowered her inhibitions which subsequently cause her to be abused and sexually abused (raped) by KATZENELL in cohort with EGUIGUREN and POLULN

139.    As a direct and proximate result of the negligent and reckless conduct of the COLLEGE HALL DEFENDANTS and MARKS described above, Plaintiff C.A. was caused to

become intoxicated which lowered her inhibitions which subsequently cause her to be abused and sexually abused (raped) by KATZENELL in cohort with EGUIGUREN and POLULN and which further caused her to suffer severe emotional distress.

140.    Plaintiff C.A. seeks punitive damages against the COLLEGE HALL DEFENDANTS and MARKS for their malicious and/or negligent, wanton and reckless acts and omissions described above.

141.    Plaintiff C.A.'s injuries were caused solely by the negligence, recklessness, and outrageous conduct the COLLEGE HALL DEFENDANTS and MARKS and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against the COLLEGE HALL DEFENDANTS and MARKS, including costs, damages for pre-judgment delay and any other relief the Court shall order.

### COUNT V
### RAPE, SEXUAL ASSAULT AND INDECENT ASSAULT
### PLAINTIFF C.A. v. ELIJAH KATZENELL

142.    Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

143.    Pursuant to Pa. 18 §3121 §A3 (Rape), a person commits a felony of the first degree when the person engages in sexual intercourse with a complainant: (3) Who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring.

144.    Pursuant to Pa. 18 §3121 §A3 (Sexual Assault), [a] person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

145.    Pursuant to Pa. 18 §3126 §A4 (Indecent Assault), a person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have

Case ID: 240802790

indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: (4) the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring.

146.    Pursuant to Pa. 18 §3126 §A1 (Indecent Assault), a person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: (1) the person does so without the complainant's consent.

147.    KATZENELL committed the aforementioned crimes against C.A.

148.    At all times relevant hereto, Plaintiff C.A. was intoxicated and unconscious.

149.    At all times relevant hereto, Plaintiff C.A. was unaware that sexual intercourse was occurring at the hands of KATZENELL.

150.    At all times relevant hereto, Plaintiff C.A. was unaware that indecent contact was occurring at the hands of KATZENELL.

151.    At all times relevant hereto, Plaintiff C.A. did not consent and was unable to consent to having sexual intercourse or indecent contact with KATZENELL.

152.    Plaintiff C.A. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of KATZENELL.  The negligence, recklessness, and outrageous conduct was a substantial factor in causing and did proximately cause severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss

of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

153.   Plaintiff C.A.'s injuries were caused solely by the negligence, recklessness, and outrageous conduct of KATZENELL and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against KATZENELL, including costs, damages for pre-judgment delay and any other relief the Court shall order.

## COUNT VI
## ASSAULT
## PLAINTIFF C.A. v. ELIJAH KATZENELL

154.   Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

155.   On August 25, 2022, KATZENELL intentionally had non-consensual sexual intercourse with Plaintiff C.A. while she was physically helpless or incapacitated.

156.   KATZENELL'S intentional actions caused physical, mental and emotional injuries to Plaintiff C.A.

157.   Plaintiff C.A. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of KATZENELL.  The negligence, recklessness, and outrageous conduct was a substantial factor in causing and did proximately cause severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

158.    Plaintiff C.A.'s injuries were caused solely by the intentional negligence, recklessness, and outrageous conduct of the KAZENELL and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against KATZENELL, including costs, damages for pre-judgment delay and any other relief the Court shall order.

### COUNT VII
### BATTERY
### PLAINTIFF C.A. v. ELIJAH KATZENELL

159.    Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

160.    On August 25, 2022, KATZENELL, intentionally had non-consensual sexual intercourse with Plaintiff C.A. while she was physically helpless or incapacitated.

161.    KATZENELL intended to cause Plaintiff C.A. fear or to apprehend physical harm.

162.    KAZENELL'S non-consensual sexual intercourse with Plaintiff C.A. was harmful and offensive.

163.    KATZENELL'S intentional actions caused physical, mental and emotional injuries to Plaintiff C.A.

164.    Plaintiff C.A. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of KATZENELL.  The negligence, recklessness, and outrageous conduct was a substantial factor in causing and did proximately cause severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

165.   Plaintiff C.A.'s injuries were caused solely by the intentional negligence, recklessness, and outrageous conduct of the KATZENELL and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against KATZENELL, including costs, damages for pre-judgment delay and any other relief the Court shall order.

### COUNT VIII
### INTENTIONAL AND NEGLIGENT INFLICTION
### OF EMOTIONAL DISTRESS
### PLAINTIFF C.A. v. ELIJAH KATZENELL

166.   Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

167.   As a direct and proximate result of the intentional and/or negligent conduct of Defendant KATZENELL described above, Plaintiff C.A. suffered severe emotional distress.

168.   Plaintiff seeks punitive damages against KATZENELL for KATZENELL'S malicious and/or intentional wanton and reckless acts and omissions described above.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against KATZENELL, including costs, damages for pre-judgment delay and any other relief the Court shall order.

### COUNT IX
### RAPE, SEXUAL ASSAULT AND INDECENT ASSAULT
### PLAINTIFF C.A. v. ANDREW POLUN

169.   Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

170.   Pursuant to Pa. 18 §3121 §A3 (Rape), a person commits a felony of the first degree when the person engages in sexual intercourse with a complainant: (3) Who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring.

171.     Pursuant to Pa. 18 §3121 §A3 (Sexual Assault), [a] person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

172.     Pursuant to Pa. 18 §3126 §A4 (Indecent Assault), a person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: (4) the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring.

173.     Pursuant to Pa. 18 §3126 §A1 (Indecent Assault), a person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: (1) the person does so without the complainant's consent.

174.     POLUN, pursuant to the Affidavit of Probable Cause in KATZENELL's criminal case, committed the aforementioned crimes against C.A. by, "'assisting' KATZENLL in having intercourse with C.A. as KATZENELL was a virgin and somewhat unsure of himself."

175.     At all times relevant hereto, Plaintiff C.A. was intoxicated and unconscious.

176.     At all times relevant hereto, Plaintiff C.A. was unaware that sexual intercourse was occurring at the hands of KATZENELL with the assistance of POLUN.

177.     At all times relevant hereto, Plaintiff C.A. was unaware that indecent contact was occurring at the hands of KATZENELL with the assistance of POLUN.

178.    At all times relevant hereto, Plaintiff C.A. did not consent and was unable to consent to having sexual intercourse or indecent contact with KATZENELL with the assistance of POLUN.

179.    Plaintiff C.A. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of POLUN.   The negligence, recklessness, and outrageous conduct was a substantial factor in causing and did proximately cause severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

180.    Plaintiff C.A.'s injuries were caused solely by the negligence, recklessness, and outrageous conduct of POLUN and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against POLUN, including costs, damages for pre-judgment delay and any other relief the Court shall order.

<u>**COUNT X**</u>
<u>**ASSAULT**</u>
<u>**PLAINTIFF C.A. v. ANDREW POLUN**</u>

181.    Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

182.    On August 25, 2022, KATZENELL, with the assistance of POLUN, intentionally had non-consensual sexual intercourse with Plaintiff C.A. while she was physically helpless or incapacitated.

183.    POLUN'S intentional actions caused physical, mental and emotional injuries to Plaintiff C.A.

184.   Plaintiff C.A. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of POLUN.  The negligence, recklessness, and outrageous conduct was a substantial factor in causing and did proximately cause severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

185.   Plaintiff C.A.'s injuries were caused solely by the intentional negligence, recklessness, and outrageous conduct of the POLUN and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against POLUN, including costs, damages for pre-judgment delay and any other relief the Court shall order.

## COUNT XI
## BATTERY
## PLAINTIFF C.A. v. ANDREW POLUN

186.   Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

187.   On August 25, 2022, KATZENELL, with the assistance of POLUN, intentionally had non-consensual sexual intercourse with Plaintiff C.A. while she was physically helpless or incapacitated.

188.   POLUN intended to cause Plaintiff C.A. fear or to apprehend physical harm.

189.   KAZENELL'S non-consensual sexual intercourse with Plaintiff C.A., with the assistance of POLUN, was harmful and offensive.

190.    POLUN'S intentional actions caused physical, mental and emotional injuries to Plaintiff C.A.

191.    Plaintiff C.A. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of POLUN.   The negligence, recklessness, and outrageous conduct was a substantial factor in causing and did proximately cause severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

192.    Plaintiff C.A.'s injuries were caused solely by the intentional negligence, recklessness, and outrageous conduct of the POLUN and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against POLUN, including costs, damages for pre-judgment delay and any other relief the Court shall order.

**COUNT XII**
**INTENTIONAL AND NEGLIGENT INFLICTION**
**OF EMOTIONAL DISTRESS**
**PLAINTIFF C.A. v. ANDREW POLUN**

193.    Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

194.    As a direct and proximate result of the intentional and/or negligent conduct of Defendant POLUN described above, Plaintiff C.A. suffered severe emotional distress.

195.    Plaintiff C.A. seeks punitive damages against POLUN for POLUN'S malicious and/or intentional wanton and reckless acts and omissions described above.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against POLUN, including costs, damages for pre-judgment delay and any other relief the Court shall order.

### COUNT XIII
### CONSPIRACY
### PLAINTIFF C.A. v. ELIJAH KATZENELL,
### ANDREW POLUN and JUAN EGUIGUREN

196.    Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein.

197.    On August 25, 2022, Plaintiff C.A. was invited to KATZENELL'S dorm room on the campus of VILLANOVA.

198.    KATZENELL knew that C.A. had been at "sylly night" and was intoxicated.

199.    Upon arrival at KATZENELL'S dorm room, C.A. observed the presence of KATZENELL, POLUN and EGUIGUREN.

200.    C.A. was intoxicated upon arrival at KATZENELL'S dorm room.

201.    C.A. became unconscious while in KATZENELL'S dorm room.

202.    KATZENELL raped, sexually assaulted and indecently assaulted C.A. after she became unconscious.

203.    POLUN assisted KATZENELL in raping, sexually assaulting and indecently assaulting C.A. while she was unconscious.

204.    EGUIGUREN video recorded the rape, sexual assault and indecent assault of C.A. while she was unconscious.

205.    KATZENELL, POLUN and EGUIGUREN acted with a common purpose to do an unlawful act, namely the rape, sexual assault and indecent assault of C.A.

206.    KATZENELL and POLUN overtly raped, sexually assaulted and indecently assaulted C.A. while EGUIGUREN video recorded the acts.

Case ID: 240802790

207.    POLUN and EGUIGUREN failed to take any action to prevent KATZENELL from committing the aforementioned crimes against C.A.

208.    EGUIGUREN failed to take any action to prevent KATZENELL and POLUN from committing the aforementioned crimes against C.A.

209.    C.A. was injured and damaged as described herein.

210.    KATZENELL intended to rape, sexually assault and indecently assault C.A.

211.    POLUN intended to assist KATZENELL to rape, sexually assault and indecently assault C.A.

212.    KATZENELL, POLUN and EGUIGUREN conspired to rape, sexually assault and indecently assault C.A.

213.    The conspiracy committed by KATZENELL, POLUN and EGUIGUREN created extraordinary circumstances involving truly outrageous and reckless conduct.

**WHEREFORE**, Plaintiff C.A. demands judgment in her favor, including compensatory damages and punitive damages against KATZENELL, POLUN and EGUIGUREN, including costs, damages for pre-judgment delay and any other relief the Court shall order.


**EDELSTEIN LAW, LLP**


BY:    /s/ Jay L. Edelstein
       JAY L. EDELSTEIN, ESQUIRE
       *Attorney for Plaintiff*

Dated: August 22, 2024

## <u>VERIFICATION</u>

I, <u>C.A.</u>, hereby state that I am the Plaintiff in this matter and verify that the statements made in the foregoing *Civil Action Complaint* are true and correct to the best of my knowledge. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

C.A.

Date: 8/22/2024

Case ID: 240802790