## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C.A.,<br><br>        Plaintiff,<br><br>v.<br><br>Villanova University, et al.,<br><br>        Defendants. | Case No. 2:24-cv-04434-KNS<br><br><br><br>Electronically Filed |

## ORDER

**AND NOW,** this _____ day of _____, 20__, after consideration of Defendant Villanova University's Motion to Dismiss Plaintiff's Second Amended Complaint With Prejudice, and any response thereto, it is **ORDERED** that the Motion is **GRANTED.** The Second Amended Complaint is **DISMISSED WITH PREJUDICE** as to Defendant Villanova University.

**BY THE COURT:**


_____
Hon. Kai N. Scott

53422276.1

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C.A., | Case No. 2:24-cv-04434-KNS |
| Plaintiff, | |
| v. | |
| Villanova University, et al., | Electronically Filed |
| Defendants. | |

## DEFENDANT VILLANOVA UNIVERSITY'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE

For the reasons set forth in the Memorandum of Law filed concurrently with this Motion, Defendant Villanova University moves to dismiss with prejudice Plaintiff C.A.'s Second Amended Complaint as to Defendant Villanova University pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

Respectfully submitted,

/s/ James A. Keller
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

Date: November 26, 2024

53422276.1

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C.A., | Case No. 2:24-cv-04434-KNS |
| Plaintiff, | |
| v. | |
| Villanova University, et al., | Electronically Filed |
| Defendants. | |

## DEFENDANT VILLANOVA UNIVERSITY'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

PROCEDURAL HISTORY ................................................................................................... 2

STATEMENT OF ALLEGED FACTS ................................................................................. 2

QUESTION PRESENTED .................................................................................................... 4

ARGUMENT ........................................................................................................................ 4

    A.    Plaintiff Fails To State A Claim for Negligence Against The University (Count I) Because The University Owed Her No Duty, And Did Not Cause Her Damages ................... 5

        1.    The University Owed No Duty To Plaintiff As A Student, Invitee, Or "Tenant"........ 5

        2.    The University Was Not The Legal Cause Of Plaintiff's Damages ........................... 11

    B.    Plaintiff Fails To State A Claim For Negligent Infliction Of Emotional Distress Against The University (Count II) Because Plaintiff Has Not Adequately Stated An Underlying Claim Of Negligence And Because The University's Conduct Was Not "Extreme And Outrageous" 14

    C.    Plaintiff's Second Amended Complaint Should Be Dismissed With Prejudice Because Further Amendment Would Be Futile ................................................................................... 16

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcrof v. Iqbal*, 556 U.S. 662 (2009) ....................................................................4, 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................5

*Bradshaw v. Rawlings*, 612 F.2d 135 (3d Cir. 1979) ..................................................7

*Byers v. Intuit, Inc.*, 600 F.3d 286 (3d Cir. 2010)........................................................4

*Estate of Puza v. Carbon Cty.*, 586 F. Supp. 2d 271 (M.D. Pa. 2007), *aff'd sub nom. Baker-Puza v. Carbon Cty.*, 304 F. App'x 47 (3d Cir. 2008) .....................7

*Fitzpatrick v. Universal Tech. Inst. Inc.,* No. 08-1137, 2010 WL 3239173 (E.D.Pa. Aug. 11, 2010) .........................................................................................8

*Hall v. United States,* Civil Action No. 2:19-cv-05256-KSM, 2020 WL 3265146 (E.D.Pa. June 17, 2020) ..................................................................................17

*Haque v. Swarthmore College,* No. 15-CV-1355, 2016 WL 11812329 (E.D.Pa. Feb. 3, 2016) ................................................................................................10

*Heller v. Consol. Rail Corp.*, 576 F. Supp. 6 (E.D. Pa. 1982)...................................7

*Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454 (E.D. Pa. 2014)......................15

*In re New Jersey Title Ins. Litig.*, 683 F.3d 451 (3d Cir. 2012) ..........................5, 16

*James v. Duquesne Univ.*, 936 F. Supp. 2d 618 (W.D. Pa. 2013).......................8, 11

*Leidy v. Borough of Glenolden,* 277 F. Supp. 2d 547 (E.D. Pa. 2003) ....................6

*McLaughlin v. Bayer Corp.*, 172 F.Supp.3d 804 (E.D. Pa. 2016)............................5

*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 (W.D. Pa. 2019).......14

*Mohn v. United States*, Civil Action No. 23-2653, 2023 WL 8458243 (E.D.Pa. Dec. 6, 2023)...................................................................................................17

*Phillips v. Cnty. of Allegheny,* 515 F.3d 224 (3d Cir. 2008) ...................................16

53422276.1

*Read v. Sam's Club, et al.,* No. 2:05-CV-00170-LDD, 2005 WL 2346112 (E.D. Pa. Sept. 23, 2005) ....................................................................................................9

*Smith v. Lincoln Ben. Life Co.,* 395 F.App'x 821 (3d. Cir. Sept. 24, 2010)............17

*Sullivan v. Warminster Tp.,* 765 F. Supp. 2d 687 (E.D.Pa. 2011)...........................12

**STATE CASES**

*Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. Ct. 1981)...............15, 16

*Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36 (Pa. Super. Ct. 2000).........14

*Cooper v. Frankford Health Care Sys., Inc.*, 960 A.2d 134 (Pa. Super. Ct. 2008)...7

*Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243 (Pa. Super. Ct. 1983) ....................................................................................................................16

*Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571 (Pa. Super. Ct. 1999) ..................................................................................................................14

*Dudley v. USX Corp.*, 414 Pa.Super. 160, 606 A.2d 916 (1992)............................11

*F.D.P. v. Ferrara*, 804 A.2d 1221 (Pa. Super. Ct. 2002) ..........................................6

*Feeney v. Disston Manor Personal Care Home, Inc.*, 849 A.2d 590 (Pa. Super. 2004) ..................................................................................................................13

*Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984) .......................................10, 11

*Ferencz v. Milie*, 517 Pa. 141, 535 A.2d 59 (1987)..................................................10

*H.B. by & through Clark v. Whittemore*, 552 N.W.2d 705 (Minn. 1996).................7

*Herr v. Booten,* 398 Pa.Super. 166, 580 A.2d 1115 (Pa. Super. Ct. 1990) .............10

*Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998) .............................................................15

*Leoni v. Reinhard,* 194 A. 490 (Pa. 1937) ...............................................................12

*Lux v. Gerald E. Ort Trucking, Inc.*, 2005 Pa. Super 400, 887 A.2d 1281 (Pa. Super. 2005)....................................................................................................11

*Manley v. Fitzgerald*, 997 A.2d 1235 (Pa. Commw. Ct. 2010)...............................15

*Martin v. Johns-Manville Corp.*, 494 A.2d 1088 (Pa. 1985)...................................16

*Millard v. Osborne,* 611 A.2d 715 (Pa. Super. Ct. 1992)..........................................8

*Moran v. Valley Forge Drive-In Theater, Inc.*, 431 Pa. 432 (1968).....................8, 9

*Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970)...............................................15, 16

*Pietrulewicz v. Gil*, No. 2014-C-0826, 2014 WL 11226404 (Pa. Ct. Com. Pl. June 6, 2014) ...............................................................................................................16

*Reilly v. Tiergarten, Inc.*, 430 Pa. Super. 10, 633 A.3d 208 (1993) .......................12

*Seebold v. Prison Health Servs., Inc.*, 618 Pa. 632 (2012) ........................................6

*Swift v. Northeastern Hospital of Pennsylvania*, 456 Pa. Super. 330, 690 A.2d 719 (1997)..............................................................................................................8

*Swisher v. Pitz*, 868 A.2d 1228 (Pa. Super. Ct. 2005) .............................................15

*T.A. v. Allen*, 669 A.2d 360 (Pa. Super. Ct. 1995).....................................................6

*Trude v. Martin*, 442 Pa. Super. 614, 660 A.2d 626 (1995) ....................................12

*Von der Heide v. Com., Dep't of Transp.*, 553 Pa. 120, 718 A.2d 286 (1998) ...........................................................................................................................12, 13

*Wittrien v. Burkholder*, 965 A.2d 1229 (Pa. Super. Ct. 2009)...................................5

## FEDERAL STATUTES

Clery Act ......................................................................................................................9

Federal Rule of Civil Procedure 12(b)(6) ........................................................passim

Landlord Tenant Act ...................................................................................................10

No Special Relationship With Villanova Under Premises Liability Law ................8

Pennsylvania's Landlord Tenant Act ........................................................................10

## STATE STATUTES

Notice of Removal. Doc. 1 ...........................................................................................2

**OTHER AUTHORITIES**

Restatement of Torts ................................................................................5, 6

Restatement (Second) of Torts § 314 ..........................................................6

Restatement (Second) of Torts § 344 .......................................................8, 9

Restatement (Second) of Torts § 442B ........................................................13

53422276.1

## INTRODUCTION

The claims of Plaintiff C.A. ("Plaintiff") against Defendant Villanova University ("Villanova" or the "University") arise from an incident of sexual assault committed against Plaintiff, a Villanova student, by another (now former) Villanova student, Defendant Elijah Joseph Katzenell ("Katzenell"). The incident occurred after Plaintiff, under the age of 21, apparently became intoxicated at the College Hall Apartments, colloquially referred to as "The Courts," an off-campus apartment building which is owned by Defendants College Hall Associates L.P. and College Hall G.P. (collectively, the "College Hall Defendants") and managed by Defendant Marks & Company USA, Inc. ("Marks"). Plaintiff left The Courts and then consumed more alcohol in the dorm room of Katzenell, where the assault occurred. Two other students, Defendants Juan Eguiguren ("Eguiguren") and Andrew Polun ("Polun"), are alleged to have witnessed the assault.

Without a doubt, the actions of Katzenell, Eguiguren, and Polun are troubling, and the criminal legal process has held Katzenell accountable for his actions. Missing, though, is any legitimate basis to hold the University responsible. A university does not have a duty to – and indeed cannot – act as a guarantor for the safety of its students at off-campus premises which are entirely outside its supervisory authority, nor be responsible for the unforeseeable, independent criminal actions of its students, whether on- or off-campus. Because Plaintiff cannot show that the University breached any duty to her, or was the cause of any harm that befell her, she fails to state a claim for Negligence (Count I) as a matter of law. And, because Plaintiff cannot sustain a claim for Negligence or otherwise show that the University's conduct was "extreme and outrageous," she fails to state a claim for Negligent Infliction of Emotional Distress (Count II) as a matter of law. As such, pursuant to Rule 12(b)(6), the Second Amended Complaint should be dismissed against the University in its entirety, with prejudice.

**PROCEDURAL HISTORY**

Plaintiff filed a "Civil Action Complaint" in the Court of Common Pleas of Philadelphia County, Pennsylvania, Case ID. No. 240802790, on August 22, 2024. Doc. 1, Ex. A. On August 23, 2024, the University filed a Notice of Removal. Doc. 1. Plaintiff thereafter filed her First Amended Complaint in this Court on September 11, 2024. Doc. 5. Plaintiff filed a Second Amended Complaint ("SAC") on November 12, 2024. Doc. 21.

**STATEMENT OF ALLEGED FACTS**

In August 2022, Plaintiff returned for her sophomore year at Villanova, residing in Sheehan Hall on Villanova's campus. SAC ¶¶ 18-20. Plaintiff avers that the University did not provide orientation to returning students, nor "instruction or guidance" regarding on- or off-campus alcohol or drug use, nor such guidance regarding sexual abuse or misconduct. *Id.* ¶¶ 21-23. Plaintiff also avers that although the University does provide orientation to first year students, this orientation also does not provide "instruction or guidance" regarding on- or off-campus alcohol or drug use, or regarding sexual abuse or misconduct. *Id.* ¶¶ 24-26.[1]

Plaintiff avers that the evening following the first day of classes in 2022 (that year, August 24) was referred to by "some Villanova students" as "sylly night," a reference to "sylly week," a time when "students review their course syllabi with their professors." *Id.* ¶¶ 29-31. Plaintiff avers that on "sylly night," some students, "including underaged students, attend parties [and] drink

---

[1] The University disagrees with and disputes many of the allegations set forth in the SAC, including the mischaracterization of its robust education and prevention programs pertaining to alcohol, drugs, and sexual misconduct, particularly as such efforts are exhaustively detailed in the University's publicly-available Annual Security and Fire Safety Report – a document which Plaintiff herself cites in the SAC, at ¶ 38, evincing her awareness of same. Nonetheless, the University acknowledges that the Court must accept any well-pleaded allegations in the SAC as true for the purposes of this motion. This Statement of Alleged Facts is therefore based on the allegations in the SAC.

53422276.1

alcohol served to them by other students, some of legal age, others not of legal age, causing them to become intoxicated and act in an irrational manner." *Id.* ¶ 32.

Plaintiff avers that she went to The Courts on "sylly night" and, even though she was under the age of 21, she "imbibed alcoholic beverages served to her from within multiple apartments." *Id.* ¶¶ 34-36. Plaintiff describes The Courts, an off-campus apartment building, as "home to more than 100 Villanova students on an annual and recurring basis," and asserts that Villanova was "aware of ongoing student misbehavior" including "underage alcohol consumption" occurring there. *Id.* ¶¶ 42-43.

Plaintiff avers that she "became highly intoxicated" while at The Courts, drinking alcohol which was provided to her for free, although she was underage. *Id.* ¶¶ 61-65. Plaintiff does not allege that she was unaware that alcohol would be available at The Courts when she went there to celebrate "sylly night" or that anyone pressured or forced her to drink alcohol.

Plaintiff avers that she returned to her campus residence, Sheehan Hall, sometime after midnight in the company of her roommate. *Id.* ¶ 66. However, Plaintiff did not return to her own room in Sheehan Hall; rather, she went to the room of Katzenell at his invitation, where she imbibed more alcohol. *Id.* ¶¶ 67, 70. Plaintiff avers that she "passed out in Katzenell's room and does not recall anything until awakening at approximately 2:00 p.m. that day in her dorm room wearing a t-shirt that did not belong to her and no underwear." *Id.* ¶ 71. Per Plaintiff, Katzenell later "informed her that he had sexual intercourse with her," for which he was arrested and criminally charged, ultimately pleading guilty to Sexual Assault. *Id.* ¶¶ 72-74. Plaintiff alleges that Eguiguren and Polun were both present in  Katzenell's room while Katzenell had sexual intercourse with Plaintiff. *Id.* ¶ 69. Eguiguren is alleged to have recorded the incident, with Polun captured in the recording. *Id.* ¶¶ 75-76. After the assault, Katzenell, Eguiguren, and Polun

transported Plaintiff to a shared restroom, and Eguiguren allegedly contacted her roommate to come assist her. *Id.* ¶ 77. Plaintiff asserts that neither she nor her roommate believe Katzenell was intoxicated during these events. *Id.* ¶ 78.

Based on the above, Plaintiff asserts two claims against the University: Negligence (Count I) and Negligent Infliction of Emotion Distress (Count II). As detailed below, Plaintiff has failed to state a claim against the University, and the Second Amended Complaint should be dismissed against the University in its entirety under Fed. R. Civ. P. 12(b)(6), with prejudice.

## QUESTION PRESENTED

*Question Presented:* Should this Court dismiss Plaintiff's Second Amended Complaint with prejudice for failure to state a claim upon which relief can be granted?

*Suggested Answer: Yes.*

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcrof v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). While the complaint must be construed "in the light most favorable to the plaintiff," *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010) (citation and internal quotations omitted), "'labels and conclusions' [and] . . . 'naked assertion[s]' devoid of 'further factual enhancement'" are not entitled to the presumption of truthfulness. *Iqbal*, 556 U.S. at 678 (citations omitted).

Ultimately, if the alleged facts fail "to raise a right to relief above the speculative level," the reviewing court must dismiss the claim. *Twombly*, 550 U.S. at 555.

As detailed below, Plaintiff has not stated a viable claim against the University under Rule 12(b)(6). The Second Amended Complaint should be dismissed against the University in its entirety and with prejudice, because any further amendment would be futile. *See In re New Jersey Title Ins. Litig.*, 683 F.3d 451, 462 (3d Cir. 2012) (district court need not permit curative amendment if complaint is vulnerable to 12(b)(6) dismissal and amendment would be inequitable or futile).

A.    <u>Plaintiff Fails To State A Claim for Negligence Against The University (Count I) Because The University Owed Her No Duty, And Did Not Cause Her Damages</u>

1.    The University Owed No Duty To Plaintiff As A Student, Invitee, Or "Tenant"

"In any negligence case, the plaintiff must prove duty, breach, causation and damages." *Wittrien v. Burkholder*, 965 A.2d 1229, 1232 (Pa. Super. Ct. 2009).[2] *See also McLaughlin v. Bayer Corp.*, 172 F.Supp.3d 804, 817 (E.D. Pa. 2016). Here, Plaintiff alleges that the University "owed a duty to its students, including C.A., to provide a safe educational and residential environment and to protect them from foreseeable harm," because it had a "college-student relationship with its students," a "special relationship with its students," and "a landlord-tenant relationship with its students." SAC ¶¶ 80-83. Per Plaintiff, these "duties" "resemble[] that of a possessor of land and a business invitee in accordance with Restatement of Torts (Second)" and impose[]upon the University the duties to "discover that underage alcohol consumption, drug abuse and sexual abuse and misconduct (including rape) was occurring on- and off-campus" and to "give warnings

---

[2] For the purposes of this Memorandum of Law, the University applies Pennsylvania law, as there is no real dispute that Pennsylvania law applies to the claims at issue in this case.

adequate enough to enable its visitors and students, including C.A., to avoid harm or otherwise protect them from harm." *Id.* ¶¶ 84-86. Specifically, Plaintiff alleges that the University failed to warn students of obvious dangers such as the risks associated with underage drinking (on- or off-campus), that sexual assault may occur on a college campus, and that drinking may increase the vulnerability of a person to sexual assault, *id.* ¶¶ 91(a-e, j, n); failed to assert responsibility for the security of The Courts, an off-campus residence over which it has no authority, *id.* ¶¶ 91(f-g); and failed to detect intoxicated students, such as by monitoring all students for signs of intoxication on "sylly night" and conducting unannounced room searches for alcohol or drugs. *Id.* ¶¶ 91(h-i, k-m, o).

Plaintiff fundamentally misstates the University's duties to its invitees, students, and residents. "Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time." *T.A. v. Allen*, 669 A.2d 360, 362 (Pa. Super. Ct. 1995). There is "no duty to control the conduct of a third party to protect another from harm unless there is a special relationship between [the defendant] and the third [party]," or between the defendant and the plaintiff. *F.D.P. v. Ferrara*, 804 A.2d 1221, 1228 (Pa. Super. Ct. 2002) (citing Restatement (Second) of Torts § 315 (1965)). *See also Leidy v. Borough of Glenolden,* 277 F. Supp. 2d 547 (E.D. Pa. 2003) (same); *Seebold v. Prison Health Servs., Inc*., 618 Pa. 632, 659 (2012) (citing Restatement (Second) of Torts § 314 for the position that "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action"). The Restatement (Second) of Torts § 314 identifies the following "special relationships" that give rise to a legal duty to act affirmatively to protect another: a common carrier's duty to its passengers; an inn-keeper's duty to its guests; custodial environments' duty to those in custody (such as prisons, hospitals, or mental health institutions);

or, as noted by Plaintiff, "[a] possessor of land who holds it open to the public," which has a "duty to members of the public who enter in response to his invitation."[3]

None of these apply here.

    a.    No Special Relationship With Villanova As A Student

The University owed Plaintiff no special duty just because she was a student. Pennsylvania courts have repeatedly refused to find an inherent special relationship between institutions of higher education and their students that imposes a blanket duty of care upon institutions. *See Bradshaw v. Rawlings*, 612 F.2d 135, 138-40 (3d Cir. 1979) ("Our beginning point is a recognition that the modern American college is not an insurer of the safety of its students. . . . [T]he competing interests of the student and of the institution of higher learning are much different today than they were in the past. At the risk of oversimplification, the change has occurred because society considers the modern college student an adult, not a child of tender years."); *see also Heller v. Consol. Rail Corp.*, 576 F. Supp. 6, 13 (E.D. Pa. 1982) (citing *Bradshaw* in declining to find Villanova owed a duty of care to a student, as "the plaintiff is a 21 year old adult fully capable of protecting his own self interests"). This is not a new principle; instead, it is well-settled law in Pennsylvania that the relationship between university and student is not, without more, a "special

---

[3] It does not appear that Plaintiff is asserting she was in the custody of the University, giving rise to a special relationship. But, for the avoidance of doubt, she was not, as she was not under its control such that she was "deprive[d]…of h[er] normal opportunities for protection…." *Id. See Cooper v. Frankford Health Care Sys., Inc.*, 960 A.2d 134, 147-48 (Pa. Super. Ct. 2008) (discussing custodial environments and therapeutic relationships giving rise to duty of care); *Estate of Puza v. Carbon Cty.*, 586 F. Supp. 2d 271 (M.D. Pa. 2007) (mental health institutions and professionals with custodial relationships have recognized duty of care), *aff'd sub nom. Baker-Puza v. Carbon Cty.*, 304 F. App'x 47 (3d Cir. 2008). "Custody" sufficient to give rise to a special relationship in these situations generally involves physical control over another, as in the case of prisoners, or a voluntary assumption of responsibility to care for or supervise another, as in the case of a doctor-patient relationship. *See Cooper*, 960 A.2d at 147-48; *see also H.B. by & through Clark v. Whittemore*, 552 N.W.2d 705, 708 (Minn. 1996) (explaining special relationships giving rise to a duty "typically involve some degree of dependence"). None of these is at issue here.

relationship" that imposes upon the university a duty to protect its students from the intentional and/or criminal acts of a third party. *See, e.g., James v. Duquesne Univ.*, 936 F. Supp. 2d 618, 646 (W.D. Pa. 2013) ("[A]ny relationship between defendant and plaintiff as university/student did not give rise to a pre-existing duty to protect plaintiff from the spontaneous criminal acts of third persons") (citation omitted); *Fitzpatrick v. Universal Tech. Inst. Inc.,* No. 08-1137, 2010 WL 3239173, at *3 (E.D.Pa. Aug. 11, 2010) ("The general rule in Pennsylvania, regarding the relationship between a college and a student, is that no special relationship exists"); *Millard v. Osborne,* 611 A.2d 715, 721 (Pa. Super. Ct. 1992) ("Clearly, in modern times, it would be inappropriate to impose an *in loco parentis* duty upon a university that renders the university responsible for student safety at all times").

Plaintiff points to no exception to these well-established principles, nor could she.

b.     No Special Relationship With Villanova Under Premises Liability Law As An "Invitee"

Plaintiff's putative negligence claim also cannot proceed under a theory of premises liability. Preliminarily, any premises liability analysis would not extend to actions or omissions at The Courts, which is not Villanova property and over which Villanova exercises no control. *See* Restatement (Second) of Torts § 344 (imposing liability on landowners for physical harm to invitees "while they are upon the land"); *Moran v. Valley Forge Drive-In Theater, Inc*., 431 Pa. 432 (1968) (recognizing § 344 in Pennsylvania).

Moreover, a landowner is not an insurer of the safety of those on its premises. *Swift v. Northeastern Hospital of Pennsylvania*, 456 Pa. Super. 330, 690 A.2d 719 (1997). With respect to offenses committed by third parties on the land, the landowner "is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur," although "[i]f the place or character of his business, or his past

experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it….” *See* Restatement (Second) of Torts § 344 (Comment (f)). In other words, even if Plaintiff is adequately pled to have been an "invitee," the University's obligations to her as an invitee were "not triggered until the [University] has actual or constructive knowledge of such conduct by third-parties." *Read v. Sam's Club, et al.,* No. 2:05-CV-00170-LDD, 2005 WL 2346112, *5 (E.D. Pa. Sept. 23, 2005) (no knowledge where similar incidents (spills) occurred once every two and a half months, in varying locations across the premises, under varying circumstances). *Compare Moran*, 431 Pa. at 435 (knowledge imputed where substantially identical incidents (firecracker explosions) occurred "[o]n approximately twelve occasions each year over the two year period immediately preceding" the incident underlying the case at bar, including once in the exact location).

There are no facts alleged in the Second Amended Complaint that plausibly plead, or even suggest, that the University knew or should have known that Katzenell, Eguiguren, or Polun posed a risk of harm to Plaintiff or anyone else. Nor are there any facts alleged suggesting that there was any "past experience" of sexual assaults occurring in connection with "sylly night." Plaintiff alleges only, in SAC ⁋ 38, that there were 3 reports of "rape" on campus in 2020, 13 in 2021, and 10 in 2022[4] – ironically, information Plaintiff gleaned from Villanova's **public warnings** regarding reported misconduct on campus, including reports of sexual misconduct and liquor law

---

[4] As a point of further clarification, this information is derived from Villanova's Annual Security Report prepared pursuant to The Clery Act, a federal law which requires a university to publish information of *all reports* of certain alleged criminal misconduct, which materially differs from an arrest or conviction for such conduct.

violations – without providing any information suggesting that those reported incidents were of a similar nature to that which occurred here.[5]

Plaintiff has not plausibly pled a "special relationship" based on her putative status as an invitee.

### c.    No Special Relationship With Villanova As A "Tenant"

Finally, Plaintiff's claim cannot succeed under a "landlord-tenant" theory. Preliminarily, students residing in dormitories do not have landlord-tenant relationships with their institutions, and Plaintiff has not pled the existence of any lease or other written housing agreement, or any facts whatsoever, to show that there was such a relationship. *See Haque v. Swarthmore College,* No. 15-CV-1355, 2016 WL 11812329, *15 (E.D.Pa. Feb. 3, 2016) ("The Landlord Tenant Act itself does not specifically identify college dormitories as included within its coverage and in fact it is unclear whether Pennsylvania's Landlord Tenant Act is applicable to dormitories") (citation omitted). Even if there was such a relationship, Pennsylvania courts have repeatedly held that a landlord is not responsible for protecting tenants from the criminal acts of third persons absent an agreement to do so, and Plaintiff points to no such agreement here. *Feld v. Merriam,* 506 Pa. 383, 391, 485 A.2d 742, 745 (1984). Finally, even in the event that there was an explicit undertaking to

---

[5] Here, the University has restricted its analysis to the actions of Katzenell, Eguiguren, and Polun. To the extent that Plaintiff may be suggesting, albeit unclearly, that she was harmed by her own consumption of alcohol (*see* SAC ⁋ 94, asserting that the University's conduct "was a substantial factor in causing, and did proximately cause, C.A. to become highly intoxicated"), the University notes that where a plaintiff voluntarily proceeds to encounter a known or obvious danger, she is deemed to have agreed to accept the risk and the defendant is under no duty of care with respect to that risk as a matter of law. *See Ferencz v. Milie,* 517 Pa. 141, 535 A.2d 59 (1987); *Herr v. Booten,* 398 Pa.Super. 166, 176, 580 A.2d 1115, 1120 (Pa. Super. Ct. 1990) (same, with assumption of risk abrogated where defendant directly provided underaged person with alcohol). For the avoidance of doubt, Plaintiff does not allege that alcohol consumption by Katzenell contributed to his conduct, as she asserts that neither she nor her roommate believe he was intoxicated; she does not allege that Eguiguren or Polun were intoxicated or that intoxication contributed to their alleged conduct. SAC ⁋ 78.

provide a program of protection to Plaintiff (there was not), a landlord is only required to exercise reasonable care under the circumstances and is not under a duty to "defeat all designs of felony." *Feld,* 506 Pa. at 394. Landlords are not the "insurers of their tenants' safety," as that is "a burden which could never be completely met given the unfortunate realities of modern society." *Id. See also James*, 936 F.Supp.2d (collecting cases and determining that university defendant owed no duty to student who was attacked on campus because the institution's "prior experiences with crime on campus did not give rise to a reasonable expectation that the type of harm that occurred would occur").

In short, Plaintiff has not plausibly pled a "special relationship" creating a duty based on a landlord-tenant relationship.

> 2.    The University Was Not The Proximate or Legal Cause Of Plaintiff's Damages

Even if Plaintiff could show there was a duty which was breached – which she cannot – she has not alleged any facts which would show a "causal connection between the [alleged] breach of the duty and the resulting injury; and actual loss or damage suffered…." *Lux v. Gerald E. Ort Trucking, Inc*., 2005 Pa. Super 400, 887 A.2d 1281 (Pa. Super. 2005) (citations omitted). "Proximate cause is a question of law to be determined by the court before the issue of actual cause may be put to the jury." *Id*. (quoting *Reilly v. Tiergarten, Inc*., 430 Pa. Super. 10, 633 A.3d 208, 210 (1993)). "Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Dudley v. USX Corp*., 414 Pa.Super. 160, 606 A.2d 916, 923 (1992) (citations omitted). A defendant does not bear legal responsibility where the causal chain of events resulting in the plaintiff's injury is so remote as to appear highly extraordinary that the conduct could have brought about the harm. *Id*., 606 A.2d at 923. "[T]he court must determine

whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of." *Reilly*, 633 A.3d at 210.

Plaintiff has not plausibly averred that the University's alleged actions or inactions were the legal cause of the harm that befell her. She makes no factual allegations whatsoever which link the University to the superseding intervening criminal acts perpetrated by Katzenell, and allegedly by Polun and Eguiguren, which were the sole cause of Plaintiff's injuries. "A superseding cause is an act of a third person or other force which, by its intervention, prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Von der Heide v. Com., Dep't of Transp*., 553 Pa. 120, 718 A.2d 286, 288 (1998) (quoting Restatement (Second) of Torts § 440 and citing *Trude v. Martin*, 442 Pa. Super. 614, 660 A.2d 626, 632 (1995)). *See also Sullivan v. Warminster Tp.,* 765 F. Supp. 2d 687, 704 (E.D.Pa. 2011) (decedent's subsequent criminal acts were a "superseding cause that broke the chain of causation" between his death and the defendant's allegedly negligent training and policies).

Put another way, even assuming, *arguendo*, that the University had some duty to prevent students from becoming intoxicated on "sylly night" which it failed to satisfy, the Court cannot accept that being sexually assaulted is the "natural and probable outcome" of a student drinking alcohol. It is axiomatic that "Pennsylvania law regards those consequences as remote, and therefore, not actionable, which are produced by the intervention of human agency, or the voluntary act of such persons." *Leoni v. Reinhard,* 194 A. 490, 491 (Pa. 1937) (citation omitted). *See also Trude,* 660 A.2d at 627 (an intervening wrongful act becomes a superseding cause when, "looking retrospectively from the harm through the sequence of events by which it was produced, it is so extraordinary as not to have been reasonably foreseeable") (citation omitted). It is true that "[t]wo or more causes may contribute to and thus be the legal or proximate cause of an injury."

*Feeney v. Disston Manor Personal Care Home, Inc.*, 849 A.2d 590, 595 (Pa. Super. 2004). However, where there is a "superseding cause," the superseding cause "by its intervention…prevents the [defendant] from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Von der Heide*, 718 A.2d at 288 (quoting Restatement (Second) of Torts § 440). This axiom makes particular sense when the intervening act was intentional (such as the criminal acts of Katzenell and, allegedly, Polun and/or Eguiguren) and takes place outside the scope of any alleged antecedent negligence (such as a third party committing sexual assault after the victim's voluntary consumption of alcohol went undetected by her school's disciplinary authorities). *See* Restatement (Second) of Torts § 442B ("Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, **except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct**") (emphasis added).

While the University empathizes with the harm alleged by Plaintiff, it would be bad public policy to hold educational institutions responsible for any harm their students suffer, no matter how far removed from the University's own actions. With respect to "sylly night" in particular:

i.    Plaintiff asserts that the University failed to warn students "about illicit activities associated with 'sylly night.'" SAC ⁋ 91(d, j, n). But, Plaintiff voluntarily entered The Courts, "observed multiple students imbibing limitless supplies of alcoholic beverages," and chose to imbibe. *Id.* ⁋⁋ 60-61. Regardless of the University's alleged failure to warn, Plaintiff saw with her own eyes "illicit activities" on "sylly night" and decided to participate, suggesting that a warning from the University of what she *might* encounter would have been of no effect.

ii.   Plaintiff asserts that the University failed to provide "security," "enforcement of Commonwealth laws and Villanova rules and codes of conduct," or "supervision" at The Courts on "sylly night." *Id.* ⁋⁋ 91(f-g). But, leaving aside the fact that the University had no authority over The Courts whatsoever and Plaintiff does not

plead otherwise, Plaintiff was not injured at The Courts. Even assuming, *arguendo*, that Plaintiff had been unable to procure alcoholic beverages at The Courts, it does not follow that Plaintiff would not have encountered harm from Katzenell, Eguiguren, or Polun, or that she would not have sought to drink alcoholic beverages at any number of other locations.

iii.    Plaintiff asserts that the University failed to adequately detect intoxicated students on "sylly night." *Id.* ¶ 91(h-i, k). But, Plaintiff does not allege that she encountered any University personnel upon her return, was visibly intoxicated upon her return, or was otherwise apparently unwell – particularly given that she was accompanied by her roommate, who apparently saw no reason to object to Plaintiff returning to Katzenell's room rather than her own.

To summarize, even if the University had done everything Plaintiff asserts it should have done, but did not do, on "sylly night," there is no reason to believe that Plaintiff would have been spared the harm which occurred, because the simple fact is that it was the alleged deliberate, sober, and criminal actions of Katzenell, and, as-pled, Polun and/or Eguiguren that caused Plaintiff's damages, and nothing else.

B.    <u>Plaintiff Fails To State A Claim For Negligent Infliction Of Emotional Distress Against The University (Count II) Because Plaintiff Has Not Adequately Stated An Underlying Claim Of Negligence And Because The University's Conduct Was Not "Extreme And Outrageous"</u>

Plaintiff's negligent infliction of emotional distress ("NIED") claim should be dismissed, most fundamentally, because she has failed to plausibly state an underlying claim for negligence. In Pennsylvania, "[t]he crux of a [NIED] claim is that [defendants] breached some duty they owed to [plaintiff] and that the breach injured [her]." *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 578 (Pa. Super. Ct. 1999). Thus, to succeed on a NIED claim, a plaintiff must establish a prima facie case of negligence. *See Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000) ("[A]bsent a finding of negligence, the negligent infliction of emotional distress claim cannot survive."). Here, as addressed in detail in Section A, *supra*, Villanova had no duty to Plaintiff and did not cause Plaintiff's damages. *See MDB v.*

14

*Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 594 (W.D. Pa. 2019) ("Pennsylvania courts would not extend liability for the NIED tort to a case involving a relationship between a school and its student"); *see also Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014) (granting motion to dismiss student's NIED claim against college due to lack of special relationship).

Plaintiff's NIED claim must also be dismissed because she does not allege any "extreme and outrageous" conduct on the part of the University. *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). A court must determine whether the alleged conduct, as pled, rises to the level of "extreme and outrageous" as a threshold issue. *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005).

Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society[.]" *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998) (citation and quotation omitted). Consequently, only cases asserting "the most egregious conduct" imaginable in society meet the "extreme and outrageous" standard. *See Papieves v. Lawrence*, 263 A.2d 118, 121-22 (Pa. 1970) (concerning defendant who killed plaintiff's son with car, failed to notify authorities, and buried body in field); *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236, 1239 (Pa. Super. Ct. 1981) (regarding homicide indictment resulting from fabricated medical records which suggested plaintiff had killed third-party).

The University's conduct as alleged by Plaintiff does not rise to the level necessary to qualify as "extreme and outrageous." Plaintiff's NIED claim hinges on her allegation that the University's actions or inactions created a risk of "foreseeable emotional harm so extreme that a reasonable person, such as C.A., should not be expected to endure the resulting distress," and that

"[a]s a direct and proximate result of the negligent and reckless conduct of Villanova…Plaintiff C.A. was raped by another Villanova student and suffered severe emotional distress." SAC ¶¶ 100-101. The alleged "actions or inactions" to which Plaintiff cites, however, are things such as failing to warn students of obvious dangers such as the risks associated with underage drinking, *id.* ¶¶ 91(a-e, j, n); assert responsibility for the security of off-campus residences over which it has no authority, *id.* ¶¶ 91(f-g); and detect intoxicated students, *id.* ¶¶ 91(h-i, k-m, o). Even if the University was negligent in this regard – which is vehemently denied – such allegations do not remotely approach the same level as killing someone's child, *Papieves*, 263 A.2d at 121-22, or framing someone for homicide. *Banyas*, 437 A.2d at 1239.[6]

Because she has failed to adequately plead an underlying negligence claim, or to show extreme or outrageous conduct on the part of the University, Plaintiff's NIED claim against the University should be dismissed.

C.    Plaintiff's Second Amended Complaint Should Be Dismissed With Prejudice Because Further Amendment Would Be Futile

Plaintiff's SAC should be dismissed with prejudice because any further amendment would be futile. *See In re New Jersey Title Ins. Litig.*, 683 F.3d at 462; *Phillips v. Cnty. of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (district court must permit curative amendment, unless amendment would

---

[6] The same reasoning defeats Plaintiff's demand for punitive damages, which she makes in connection with Count II. SAC ¶ 102. Similar to NIED, "[t]o state a claim for punitive damages, the plaintiff must plead specific facts demonstrating outrageous and/or willful conduct….The mere assertion of a claim for punitive damages is insufficient as a matter of law." *Pietrulewicz v. Gil*, No. 2014-C-0826, 2014 WL 11226404, at *2 (Pa. Ct. Com. Pl. June 6, 2014) (internal quotations and citations omitted); *see also Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1263 (Pa. Super. Ct. 1983) (punitive damages are "awarded against a person to punish him for outrageous conduct"). Because Plaintiff has failed to allege "extreme and outrageous" conduct by the University, she is unable to recover punitive damages. *See Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 (Pa. 1985) (no punitive damages "for ordinary negligence, inadvertence, mistake, or errors of judgment").

be inequitable or futile). The fundamental flaw undergirding Plaintiff's negligence and NIED claims is that the University owed Plaintiff no duty of care. "Duty is a legal question, rather than a factual one." *See Hall v. United States,* Civil Action No. 2:19-cv-05256-KSM, 2020 WL 3265146, *3 (E.D.Pa. June 17, 2020) (citing *R.W. v. Manzek,* 888 A.2d 740, 746 (Pa. 2005) for the proposition that "[t]he existence of a duty is a question of law for the court to decide"). "As such, while the Court must accept all factual allegations in [Plaintiff's] complaint as true, the Court need not accept any conclusions in the complaint regarding the purported duty the [Defendant] owed to [Plaintiff]." *Hall,* 2020 WL at *3.

Similar to the plaintiff in *Hall,* who asserted a theory of physician liability to a  third party injured by the physician's patient, Plaintiff's "argument that a duty of care should exist under the facts of this case has been repeatedly rejected by Pennsylvania courts." *Id.* at *5. There simply is no generalized duty to ensure the safety of a student, invitee, or tenant under Pennsylvania law. This is "a legal deficiency, rather than a factual efficiency, so an amendment to [the] negligence claim would be futile." *Id.* at *5 n. 8 (citing *Neave v. Hershey Co.,* No. 1:19-CV-776, 2019 WL 2577304, at *1 (M.D. Pa. June 24, 2019) for the proposition that "leave to amend would be futile and cause undue delay because [the plaintiff's] complaint is legally rather than factually deficient and thus incurable"). *See also Mohn v. United States*, Civil Action No. 23-2653, 2023 WL 8458243, *2 (E.D.Pa. Dec. 6, 2023) (negligence claim dismissed with prejudice because plaintiff could not establish defendant had "a duty to him as a borrower" and as such could  not "plead the United States as lender breached a duty to him and amendment would be futile");  *Smith v. Lincoln Ben. Life Co.,* 395 F.App'x 821, 824 (3d. Cir. Sept. 24, 2010) (dismissal with prejudice appropriate where "Claimant could not demonstrate how amended complaint would allege new facts or legal arguments to support recovery").

Plaintiff has already submitted a First Amended Complaint, and a Second Amended Complaint, and neither has overcome this obvious and fatal defect. Dismissal of the SAC should be with prejudice.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff's Second Amended Complaint (Doc. 21) should be dismissed in its entirety against the University, with prejudice, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), along with any other, further relief the Court deems proper, equitable, and just.

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Attorneys for Defendant*
*Villanova University*

Dated: November 26, 2024

## <u>CERTIFICATE OF SERVICE</u>

I, James A. Keller, hereby certify that I electronically filed the foregoing Motion to Dismiss and Memorandum of Law with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system, but for Defendant Juan Eguiguren, to whom notice has been sent by mail at 800 Lancaster Avenue, Villanova, PA 19085.

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Attorneys for Defendant*
*Villanova University*

Dated:  November 26, 2024

53422276.1