UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C.A.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Villanova University, et al.,<br><br>　　　　Defendants. | Case No. 2:24-cv-04434-KNS<br><br>Electronically Filed |

**DEFENDANT VILLANOVA UNIVERSITY'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
<u>PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE</u>**

53726988.3

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

    A.    Plaintiff Fails To State A Claim for Negligence (Count I) or NIED (Count II) Against The University Because The University Owed Her No Duty ........................................ 1

    B.    Plaintiff Fails To State A Claim for Negligence (Count I) or NIED (Count II) Against The University Because The University Was Not The Proximate or Legal Cause Of Plaintiff's Damages ................................................................................................ 6

    C.    Plaintiff Fails To State A Claim For Negligent Infliction Of Emotional Distress Against The University (Count II) Because Plaintiff Has Not Adequately Stated An Underlying Claim Of Negligence And Because The University's Conduct As Pled Was Not "Extreme And Outrageous" ........................................................................... 7

CONCLUSION .................................................................................................................... 10

53726988.3

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Bradshaw v. Rawlings*, 612 F.2d 135 (3d Cir. 1979).......................................................................1

*Corbett v. Morgenstern*, 934 F. Supp. 680 (E.D. Pa. 1996) ............................................................9

*Court v. Loews Philadelphia Hotel, Inc.*, No. 16-4848, 2017 WL 6406458
 (E.D.Pa. Dec. 15, 2017) ..............................................................................................................9

*Court v. Loews Philadelphia Hotel*, No. 16-4848, 2017 WL 569522
 (E.D. Pa. Feb. 13, 2017)..........................................................................................................8, 9

*Doe v. Moravian College*, No. 5:20-CV-00377-JMG, 2023 WL 144436
 (E.D. Pa. Jan. 10, 2023) ..............................................................................................................4

*Fitzpatrick v. Universal Tech. Inst. Inc.,* No. 08-1137, 2010 WL 3239173
 (E.D.Pa. Aug. 11, 2010)..............................................................................................................1

*Haque v. Swarthmore College,* No. 15-CV-1355, 2016 WL 11812329
 (E.D.Pa. Feb. 3, 2016).................................................................................................................3

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) .....................................10

*James v. Duquesne Univ.*, 936 F. Supp. 2d 618 (W.D. Pa. 2013) ...............................................1, 4

*Johnson v. Goldstein*, 864 F. Supp. 490 (E.D. Pa. 1994) ................................................................5

*Johnson v. OYR Realty Partners LP*, No. 14-CV-4630, 2015 WL 7733544
 (E.D.Pa. Dec. 1, 2021) ................................................................................................................5

*Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360 (3d Cir. 1993) ......................................................2

*Phillips v. Cnty. of Allegheny,* 515 F.3d 224 (3d Cir. 2008)..........................................................10

*Read v. Sam's Club, et al.,* No. 2:05-CV-00170-LDD, 2005 WL 2346112
 (E.D. Pa. Sept. 23, 2005) ............................................................................................................6

**STATE CASES**

*Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (Pa. 1984)............................................................3, 4

*Feleccia v. Lackawanna Coll.*, 215 A.3d 3 (Pa. 2019) ....................................................................2

*Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998) ....................................................................................8

53726988.3

*Leoni v. Reinhard,* 194 A. 490 (Pa. 1937) ...................................................................................6

*Manley v. Fitzgerald*, 997 A.2d 1235 (Pa. Commw. Ct. 2010) ....................................................8

*Millard v. Osborne,* 611 A.2d 715 (Pa. Super. Ct. 1992) ..............................................................2

*Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) ..........................................................................8

*Reider v. Martin*, 519 A.2d 510 (Pa. Super. Ct. 1987) ..................................................................5

*Swisher v. Pitz*, 868 A.2d 1228 (Pa. Super. Ct. 2005) ...................................................................8

**STATE STATUTES**

Rule 12(b)(6)................................................................................................................................10

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 442B ..........................................................................................6

iii

**INTRODUCTION**

In her Opposition to Defendant Villanova University's ("University") Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") With Prejudice (the "Opposition," Doc. 40), Plaintiff spends pages discussing an off-campus property called "The Courts." As pled by Plaintiff, The Courts is owned by Defendants College Hall Associates L.P. and College Hall G.P. and managed by Defendant Marks & Company USA, Inc. All three entities are entirely distinct from the University. Plaintiff also spends pages in her Opposition discussing the intervening criminal acts of Defendant Elijah Joseph Katzenell ("Katzenell") – acts to which he has now pled guilty.

Perhaps Plaintiff has viable claims against those other parties. What Plaintiff does not have, however, is any persuasive legal authority or plausible factual basis to establish that a duty was owed by the University to Plaintiff under these circumstances; that the University was the legal cause of Plaintiff's damages; or that the University's conduct was "extreme and outrageous." This means that Plaintiff's SAC does not adequately plead a case for Negligence (Count I) or Negligent Infliction of Emotional Distress ("NIED," Count II) against the University, and should be dismissed as against the University in its entirety, with prejudice.

**ARGUMENT**

A.   <u>Plaintiff Fails To State A Claim for Negligence Against The University Because Villanova Owed Her No Duty</u>

Plaintiff's Opposition fails to provide binding or even persuasive legal support for the contention that the University owed Plaintiff a duty either as a student, as an occupant of University housing, or as an invitee.

    1.   *No Duty To Plaintiff As A Student*

There is no inherent special relationship between institutions of higher education and their students that gives rise to a general duty of care. *See Bradshaw v. Rawlings*, 612 F.2d 135, 138-40

53726988.3

(3d Cir. 1979); *James v. Duquesne Univ.*, 936 F. Supp. 2d 618, 646 (W.D. Pa. 2013); *Fitzpatrick v. Universal Tech. Inst. Inc.,* No. 08-1137, 2010 WL 3239173, at *3 (E.D. Pa. Aug. 11, 2010); *Millard v. Osborne,* 611 A.2d 715, 721 (Pa. Super. Ct. 1992). Plaintiff concedes this point: "It is true that a college does not owe its students a generalized duty…simply because of the college/student relationship." Opposition at 15. In order to surmount this well-established precedent, the Opposition attempts two equally unsuccessful arguments.

First, Plaintiff cites cases which indicate that institutions of higher education may have heightened duties to student-*athletes* whose physical well-being is within their care and control. These cases are inapplicable. The Opposition principally relies on *Baumbach v. Lafayette College*, in which the Court concluded that the defendant institution had a duty to protect the plaintiff student-athlete because it undertook specifically to "act for [athletes'] safety and protection," including by providing special access to an off-campus facility and entrusting their care to coaches who "provided physical training, supervised the team's equipment and logistics, and instructed the students with respect to their conduct…." 272 A.3d 83, 89 (Pa. Super. Ct. 2022). Here, the SAC pleads no facts which would show that Villanova undertook any special action for Plaintiff's "safety and protection"; generic pronouncements from the University's Department of Public Safety are hardly "promises," and are part and parcel of the college/student relationship – which Plaintiff concedes is insufficient to establish a duty. The other cases Plaintiff cites are also limited in scope to athletics and do not advance her case. *See Kleinknecht v. Gettysburg Coll*., 989 F.2d 1360, 1366-67 (3d Cir. 1993) (student-athlete suffered a fatal heart attack during practice); *Feleccia v. Lackawanna Coll*., 215 A.3d 3, 331 (Pa. 2019) (football players injured at practice).

In the alternative, Plaintiff attempts to survive dismissal by citing a single case – *Dalgic v. Misericordia University* – for the proposition that "it would be premature to determine whether a

2

53726988.3

special relationship existed between the parties" in the context of a motion for judgment on the pleadings. No. 3:16-CV-0443, 2019 WL 2867236, at *26-27 (M.D. Pa. July 3, 2019). However, *Dalgic* did not hold that a determination of whether a special relationship existed *cannot* be made on a motion for judgment on the pleadings (or a motion to dismiss), but rather that the facts of that case dictated against making such a determination. In *Dalgic*, the plaintiff, an international student, established that his institution had undertaken specific actions on his behalf, as required by federal law. This included assisting him in applying for an employment authorization, but doing so incorrectly, resulting in the denial of his authorization to work in the United States. As Misericordia allegedly assumed a specific and unique duty to its international student, the Court determined the case could proceed to discovery.

By contrast, it would *not* be "premature" in this case to determine that there is no special relationship between C.A. and Villanova, because Plaintiff pleads no facts plausibly suggesting that the University took actions on her behalf which created such a special relationship. The only credible reading of Plaintiff's Opposition is that by having a public safety department, and articulating the desire to have a safe campus, the University has assumed a duty to be the guarantor of student safety at all times. That is not the law, cannot be the law, and would upend decades of precedent and public policy.

    2.    *No Duty To Plaintiff As An Occupant of University Housing*

There is no inherent special relationship between landlords and their tenants obligating the landlord to protect tenants from the criminal acts of third persons absent an agreement to do so. *Feld v. Merriam*, 506 Pa. 383, 391, 485 A.2d 742, 745 (1984). Even if there was a landlord/tenant relationship between Plaintiff and the University, which the University denies, *see Haque v. Swarthmore College,* No. 15-CV-1355, 2016 WL 11812329, *15 (E.D.Pa. Feb. 3, 2016), Plaintiff points to no agreement by the University to provide such protections. Moreover, even if, *arguendo,*

3

there *was* an explicit undertaking by the University to provide a program of protection to Plaintiff, Plaintiff has pleaded no facts which would show the University failed to carry out the program.

Citing *Doe v. Moravian College*, No. 5:20-CV-00377-JMG, 2023 WL 144436, at *11 (E.D. Pa. Jan. 10, 2023), Plaintiff acknowledges that "a landlord generally owes no duty to protect its tenants from the criminal conduct of other parties" and that "an exception to this rule is recognized where the landlord establishes a program of security, the tenants reasonably rely upon it, and the landlord negligently carries out the program." Opposition at 12. The claims of the plaintiff in *Moravian* ultimately failed because she did not "establish what the security program at Moravian specifically entailed" or "produce any evidence to establish what the standard campus security practices were at that time" to show that they had been breached. 2023 WL 144436 at *12. Here, Plaintiff does not even plead in the SAC that there was a specific "security program" on which she reasonably relied. To the contrary, Plaintiff's theory of the case is that Villanova did *not* have a program of security in place. *See, e.g.,* SAC ¶¶ 21-28, 87-89, 91.

Plaintiff also leaves out the critical next sentence in the holding she quotes from *Moravian*: "Importantly, though, 'a tenant may not expect more than is offered.'" 2023 WL 144436 at *12 (quoting *Feld*, 506 Pa. at 394); *see Feld*, 506 Pa. at 394 ("If, for instance, one guard is offered, he cannot expect the same quality and type of protection that two guards would have provided, nor may he expect the benefits that a different program might have provided"); *see also James,* 936 F. Supp. at 644-5 (limiting reliance on the exception to security that "routinely had been provided," and concluding plaintiff had improperly sought "to impose liability based not on the negligent failure to act with due care with regard to the program of security that had been provided, but on expectations of more or better benefits….**Pennsylvania law does not recognize a duty to provide such benefits**") (emphasis added). In other words, even if Plaintiff adequately pled that there was

4

a program of security on which she reasonably relied (which she has not), all she does in the SAC is identify other steps she believes the University *should* have undertaken, which cannot serve as a basis for liability as a matter of law.

Finally, it is worth emphasizing that Plaintiff's SAC focuses on two areas where she suggests security was lacking – at The Courts, which are wholly unrelated to the University, and in the University's residence halls. But, the types of measures Plaintiff asserts the University should have had in place at the dorms are not in the character of a "program of security," which typically pertain to security systems designed to exclude intruders with criminal intentions.[1] Katzenell's conduct was terrible, criminal, he has pled guilty to it, and he will be punished accordingly – but it was also behind closed doors, committed against a friend he invited and who, trusting him, entered his room willingly. Plaintiff does not and cannot credibly suggest that any program of security would or could include in-room monitoring by a University of its students.

3. *No Duty To Plaintiff As An Invitee*

As a landowner, the University is not liable under a theory of premises liability for actions or omissions at property which it does not own and over which it exercises no control, like The Courts. Plaintiff cites no law to the contrary, but rather asserts that a duty was owed to her because the University "knew or should have known that **The Courts** were a breeding ground for illicit

---

[1] *See, e.g., Johnson v. Goldstein*, 864 F. Supp. 490 (E.D. Pa. 1994) (after becoming aware of burglaries in the building in which perpetrators entered through windows, defendants voluntarily installed security bars on the windows of all apartments other than that of the plaintiff, who was then assaulted by an intruder); *Johnson v. OYR Realty Partners LP*, No. 14-CV-4630, 2015 WL 7733544 (E.D.Pa. Dec. 1, 2021) (after becoming aware of several criminal incidents in the rear parking lot, rear building doors were not monitored at any time and security cameras with the wires ripped out were not repaired, after which time plaintiff was assaulted in the area in question); *Reider v. Martin*, 359 Pa. Super. 586, 592-593, 519 A.2d 510, 511 (1987) (landlords "had no preexisting duty to supply their tenants with a functional front door lock," but "assumed the duty" to do so, then failed to do so, after which plaintiff was raped, robbed, and beaten by an intruder).

5

53726988.3

activities." Opposition at 18 (emphasis added). Even if the University was aware of concerns involving The Courts, that does not and cannot establish that the University somehow owed a duty to invitees on another landowner's property.

Moreover, a landowner is not an insurer of the safety of those on its own premises against criminal acts absent "actual or constructive knowledge of such conduct by third-parties." *Read v. Sam's Club, et al.,* No. 2:05-CV-00170-LDD, 2005 WL 2346112, *5 (E.D. Pa. Sept. 23, 2005). There are no facts in the SAC that plausibly allege the University knew or should have known that any of the individual Defendants posed a risk of harm to Plaintiff (or anyone else), or even that there was any "past experience" of sexual assaults occurring in connection with "sylly night," or incidents of a similar nature to that which occurred in the case at bar. SAC ¶ 38.

Because Plaintiff has not plausibly alleged that a duty was owed to her as a student, an occupant of University housing, or an invitee, she cannot sustain a claim of negligence. Counts I (Negligence) and II (NIED) should be dismissed, with prejudice.

B.  <u>Plaintiff Fails To State A Claim for Negligence Against The University Because Villanova Was Not The Proximate or Legal Cause Of Her Damages</u>

With respect to causation, Plaintiff fails to rebut that it was the intervening conduct of the individual Defendants, not the University, which was the legal cause of Plaintiff's damages. "Pennsylvania law regards those consequences as remote, and therefore, not actionable, which are produced by the intervention of human agency, or the voluntary act of such persons." *Leoni v. Reinhard,* 194 A. 490, 491 (Pa. 1937) (citation omitted). "Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct." Restatement (Second) of Torts § 442B.

Plaintiff acknowledges that in order to survive dismissal, the SAC must plausibly allege that "the alleged injury would not have occurred but for the negligent conduct of the defendant." Opposition at 19. Having acknowledged this, Plaintiff points to no facts in the SAC which plausibly allege that the University was such a "but for" cause, or support a contention that even if the University had done everything Plaintiff asserts it should have done on "Sylly night," Plaintiff would have been spared the harm which occurred.[2] Nor does she point to any cases in which proximate cause was found to have been plausibly alleged under similar circumstances.[3]

Instead, Plaintiff asserts that "criminal acts **do not automatically** constitute a superseding cause" and "**[i]n general**, the issue of whether a given force is a superseding or intervening cause is a question to be resolved by the fact finder." *Id.* at 22-23 (emphases added). It may be true that criminal acts are not "automatically" a superseding cause, and cause is "generally" a question for the fact finder, but that does not absolve an individual plaintiff of the duty to plausibly state a claim. Where, as here, a plaintiff has failed to do so, dismissal is appropriate. Because Plaintiff has not plausibly alleged that the University was the proximate or legal cause of her damages, she cannot sustain a claim of negligence, and Counts I and II should be dismissed, with prejudice.

C.  Plaintiff Fails To State A Claim For NIED Against The University Because Villanova's Conduct Was Not "Extreme And Outrageous"

In addition to having failed to plausibly state an underlying claim of negligence, Plaintiff's NIED claim must be dismissed because she does not allege any "extreme and outrageous" conduct on the part of the University. *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010).

---

[2] To the extent that Plaintiff paints the individual Defendants as "part of the reckless abandon of 'Sylly Week' and 'Sylly Night,'" Opposition at 24, this characterization is belied by the SAC, which does not assert that any of the three were drinking or participating in "Sylly Night" activities, and in fact explicitly *denies* that intoxication was a factor in Katzenell's conduct. *See* SAC ¶ 78.

[3] Plaintiff bizarrely cites to two cases involving the foreseeability of negligent driving on roadways, which are not analogous to the case at bar.

A court must determine whether the alleged conduct, as pled, rises to the level of "extreme and outrageous" as a threshold issue. *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005). Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society[.]" *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998) (citation and quotation omitted). Consequently, only cases asserting "the most egregious conduct" imaginable in society meet the "extreme and outrageous" standard. *Papieves v. Lawrence*, 263 A.2d 118, 121-22 (Pa. 1970).

Plaintiff asserts: "In the context of rape and sexual assault, the Eastern District of Pennsylvania has denied motions to dismiss [claims of] negligent infliction of emotional distress." Opposition at 25. To the extent this statement attempts to imply that an NIED claim cannot be dismissed when the plaintiff has been sexually assaulted, the statement is incorrect. For support, Plaintiff cites *Court v. Loews Philadelphia Hotel*, No. 16-4848, 2017 WL 569522 (E.D. Pa. Feb. 13, 2017), in which the NIED claim of the plaintiff, who was groped by a massage therapist in a hotel spa, survived dismissal. However, in that case, unlike this one, the plaintiff was determined to have "sufficiently pleaded a claim for relief…for negligence," *id.* at *7, and the Court did not even appear to assess the "extreme and outrageous" requirement.

A look at the subsequent history of the *Loews* case shows that when the Court *did* assess the "extreme and outrageous" requirement in a later opinion, the Court did not rest its analysis on the fact that the plaintiff had been sexually assaulted, but rather on the facts, as alleged, that one of the defendants had hired the perpetrator without conducting a criminal record check or verifying his employment history, which would have revealed that he had three prior convictions for fleeing or evading the police; had been arrested and charged with the alleged rape of a minor; and had just

8

53726988.3

been fired for grabbing the genitals of a client during a massage. *Id.* at \*2-3. The outrageous nature of the defendant's conduct in *Loews*, as averred, was heightened due to the fact that the defendant had previously experienced one of its massage therapists sexually assaulting a client but did not change its employment practices, and that it ignored plaintiff's allegations, after which time more women were sexually assaulted by the same massage therapist. *Court v. Loews Philadelphia Hotel, Inc.*, No. 16-4848, 2017 WL 6406458, \*6 (E.D.Pa. Dec. 15, 2017).

The *Loews* scenario is hardly analogous to the instant case. Nor is the second case Plaintiff cites, *Corbett v. Morgenstern*, 934 F. Supp. 680 (E.D. Pa. 1996), on point. Plaintiff cites *Corbett* for the proposition that an NIED claim survived dismissal "where the defendant psychotherapist from whom she had sought treatment allegedly initiated [a] sexual relationship." Opposition at 26. Again, a closer look at the facts in that case reveals that the occurrence of conduct which was sexual in nature was not in itself "extreme and outrageous," but rather that the defendant had "initiat[ed] and continu[ed] a 12–year sexual relationship with a patient who suffered from a borderline personality disorder and other psychological problems stemming from a history of childhood sexual abuse" and did not satisfy the professional obligation to refer her to another provider. *Corbett,* 934 F. Supp. at 684. Under these circumstances, the Court concluded that his behavior "may be reasonably regarded as…outrageous and extreme…." *Id*. Again, this is hardly analogous to the instant case, where the University's conduct – failing to adopt certain measures Plaintiff believes would have been prudent[4] – is far less egregious than a mental health professional sexually exploiting a vulnerable person in their care.

---

[4] To the extent Plaintiff attempts to introduce facts not alleged in the SAC through the Opposition (such as at 26, asserting that Plaintiff experienced emotional distress due to Defendant Eguiguren's continued enrollment at Villanova), any such alleged facts should be disregarded. It is axiomatic that "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997).

9

53726988.3

In assessing the viability of Plaintiff's NIED claim against the University, it is the conduct of the *University* that must be found to be extreme and outrageous. Plaintiff attempts to conflate the University's conduct with that of the individual Defendants, asserting: "There is no denying the direct emotional impact of being forcibly raped, while videotaped, and waking up in strange clothes, with no underwear on, several hours later. The outrageous nature of the act is clear." Opposition at 26. The University does not disagree that such acts may be regarded as extreme and outrageous – but those were not the acts of the University. Plaintiff has sued the parties she believes are responsible, and she can seek relief from them.

Because she has failed to adequately plead an underlying negligence claim, or to show extreme or outrageous conduct on the part of the University, Plaintiff's NIED claim against the University (Count II) should be dismissed, with prejudice.

## **CONCLUSION**

Plaintiff has already amended her initial complaint twice, and, as explained in the University's Memorandum of Law in support of its Motion to Dismiss the SAC, further amendment would be futile. *See Phillips v. Cnty. of Allegheny,* 515 F.3d 224 (3d Cir. 2008). As such, for the reasons set forth herein, Plaintiff's Second Amended Complaint (Doc. 21) should be dismissed in its entirety against the University, with prejudice, for failure to state a claim pursuant to Rule 12(b)(6), along with any other, further relief the Court deems proper, equitable, and just.

---

Regardless, even if the Court did consider this improperly introduced allegation, the University reaching a disciplinary outcome with which the Plaintiff disagreed is also not "extreme and outrageous," even considered in conjunction with the rest of Plaintiff's allegations.

53726988.3

        Respectfully submitted,

        */s/ James A. Keller*
        James A. Keller (PA 78955)
        Jesse L. Krohn (PA 313059)
        **SAUL EWING LLP**
        1500 Market Street, 38th Floor
        Philadelphia, PA 19102
        (215) 972-1964//7869
        James.Keller@saul.com
        Jesse.Krohn@saul.com

        *Attorneys for Defendant*
        *Villanova University*

Dated: January 16, 2025

53726988.3

## CERTIFICATE OF SERVICE

I, James A. Keller, hereby certify that I electronically filed the foregoing Motion to Dismiss and Memorandum of Law with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

        Respectfully submitted,

        */s/ James A. Keller*
        James A. Keller (PA 78955)
        Jesse L. Krohn (PA 313059)
        **SAUL EWING LLP**
        1500 Market Street, 38th Floor
        Philadelphia, PA 19102
        (215) 972-1964//7869
        James.Keller@saul.com
        Jesse.Krohn@saul.com

        *Attorneys for Defendant*
        *Villanova University*

Dated:  January 16, 2025

53726988.3