UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **C.A.**<br><br>Plaintiff,<br><br>v.<br><br>**VILLANOVA UNIVERSITY, et al.**<br><br>Defendants. | No.: 2:24-cv-04434-KNS<br><br>**PLAINTIFF C.A.'S SURREPLY TO DEFENDANT VILLANOVA UNIVERSITY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE**<br><br>Electronically Filed |

## ARGUMENT

**A. DEFENDANT VILLANOVA'S REPLY MEMORANDUM OF LAW MAKES NEW ARGUMENTS THAT WARRANT PLAINTIFF'S SURREPLY AND ADDITIONAL EVIDENCE.**

In Defendant Villanova's Reply[1], Defendant Villanova cites and relies on nine (9) cases[2] not previously discussed in their Motion to Dismiss, and articulates new and noticeably nuanced arguments with respect to the duties Defendant Villanova owed to its student, C.A., its institutional failures to uphold their duty of care, and its willful blindness on "Sylly Night."

First, Defendant Villanova argues that Villanova is a separate and distinct entity from the corporate defendants that own and manage The Courts. Specifically, the Reply states "As pled by Plaintiff, The Courts is owned by Defendants College Hall Associates L.P. and College Hall G.P.

---

[1] On January 16, 2025, Defendant Villanova filed its Reply Memorandum of Law in Support of Motion to Dismiss (ECF Doc. 49).

[2] See Def's Table of Authorities referencing Corbett v. Morgenstern, 934 F. Supp. 680 (E.D. Pa. 1996); Court v. Loews Philadelphia Hotel, Inc., No. 16-4848, 2017 WL 6406458 (E.D.Pa. Dec. 15, 2017), Court v. Loews Philadelphia Hotel, No. 16-4848, 2017 WL 569522 (E.D. Pa. Feb. 13, 2017); Doe v. Moravian College, No. 5:20-CV 00377-JMG, 2023 WL 144436 (E.D. Pa. Jan. 10, 2023); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997); Johnson v. Goldstein, 864 F. Supp. 490 (E.D. Pa. 1994); Johnson v. OYR Realty Partners LP, No. 14-CV-4630, 2015 WL 7733544 (E.D.Pa. Dec. 1, 2021); Feleccia v. Lackawanna Coll., 215 A.3d 3 (Pa. 2019); and Reider v. Martin, 519 A.2d 510 (Pa. Super. Ct. 1987).

1

and managed by Defendant Marks & Company USA, Inc. All three entities are entirely distinct from the University." See Def. MOL, p. 1.

Second, Defendant Villanova argues that the cases cited by Plaintiff that found that institutions of higher education have a heightened duties to student-athletes or international-students are distinguishable on the facts of this case. Specifically, the Reply states "…Plaintiff cites cases which indicate that institutions of higher education may have heightened duties to student-athletes whose physical well-being is within their care and control." See Def. MOL, p. 2.

Third, Defendant Villanova argues Defendant Villanova never took actions on behalf of students, like C.A., which created such a special relationship. Specifically, the Reply states "…the SAC pleads no facts which would show that Villanova undertook any special action for Plaintiff's "safety and protection." See Def. MOL, p. 2.

Fourth, Defendant Villanova argues Defendant Villanova's "having a public safety department, and articulating the desire to have a safe campus" does not make Defendant Villanova a "guarantor of student safety at all times." See Def. MOL, p. 3.

These four new and discrete arguments denying Defendant Villanova's duty to students like C.A. are unmistakably contradicted by Defendant Villanova's own public declarations of their intent and efforts to protect students from sexual crimes, alcohol abuse, and other harms on-campus and off-campus.

      **B.    DEFENDANT VILLANOVA'S STUDENT HANDBOOK[3] AND CODE OF CONDUCT[4] FURTHER INFORM AND DEFINE ITS DUTY TO PLAINTIFF, C.A.**

---

[3] Villanova's Student Handbook is 141 pages long and is incorporated herein by reference as if a complete copy is attached as an Exhibit. The full document is publicly available at the following web address, last accessed January 23, 2025: https://studenthandbook.villanova.edu/sites/default/files/student-handbook-202223-8-3-23.pdf

[4] Villanova's Student Code of Conduct is contained within the Student Handbook. Separately it is 38 pages long and is incorporated herein by reference as if a complete copy is attached as an Exhibit. The full document is publicly available at the following web address, last accessed January 23, 2025:

Defendant Villanova's two public and binding documents, both individually and collectively, establish that Defendant Villanova publicly proclaimed that it has jurisdiction, oversight authority, and enforcement powers over each and every subject matter that underlies the legal duties Defendant Villanova owed Plaintiff, C.A.

### 1. Defendant Villanova's Student Code Of Conduct Contained Within Its Student Handbook Declares The University's Intent To Protect Students Like C.A.

Defendant Villanova's Student Code of Conduct purportedly exists for "three distinct purposes":

> First, the Code helps to motivate good decision making, create community, and enhance respect for individual differences while emphasizing a commitment to the common good. Secondarily, the Code represents limits, a description of conduct that contradict the purpose and nature of Villanova University. Such conduct violates presumptions of membership, and cannot be tolerated in an academic community. Finally, the Code and its implementation recognizes the basic student composition of the community and the corresponding behavioral dynamic.

See Code of Conduct, p. 1; Student Handbook p. 23. To these ends, Defendant Villanova endeavors to make the following promises and assurances for the safety of its students:

> To accomplish these purposes, students who do not uphold the standards of the University, or who violate the provisions of the Code, or who fail to fulfill their obligations as members of this community will be held responsible and accountable for their conduct.

See Code of Conduct, p. 1.

### 2. Defendant Villanova Makes It Clear That It Has And Will Exercise Jurisdictional Power And Control Both On- and Off-Campus.

"Jurisdiction" is the second declarative section of Villanova's Student Code of Conduct:

> **Jurisdiction**
> The Code of Student Conduct applies to all students enrolled at Villanova University, with the exception of students of the Charles Widger School of Law, who are governed by their own policies and procedures. This includes students participating in overseas study or other off-campus academic programs. The University has a vital interest in the character of its students and may regard their

---

https://studenthandbook.villanova.edu/sites/default/files/pdf/toc_page/code-of-student-conduct.pdf?generated=1735365482

3

conduct as a reflection of a student's character and fitness to be a member of the student body.

Accordingly, the Code of Student Conduct applies to conduct that occurs both on and off the Villanova campus, and the University reserves the right to sanction any student or student organization found responsible for violating the Code. Students and student organizations will be afforded the elements of process afforded by the Code.

See Code of Conduct, p. 1.

### 3. Defendant Villanova Is An Active Participant In Off-Campus Housing As Part Of The University's Housing Guarantee.

Off-campus conduct and behavior are no exception to Defendant Villanova's authority and responsibility under the Student Code of Conduct:

> **Off-Campus Expectations**
> The University prioritizes the holistic education of its students and recognizes that their conduct reflects the character of themselves and the University. Students are expected to understand their responsibilities both as students and as members of the greater community. Accordingly, conduct that occurs both on and off campus is within the jurisdiction of the Code of Student Conduct.
>
> Therefore, off-campus conduct including but not limited to unruly gatherings, excessive noise, littering, trespassing, public intoxication, as well as other conduct which is disruptive, or which disregards the rights of members of the community, or which violates University policy, constitutes a violation of the Code of Student Conduct. Additionally, any off-campus violation of local, state or federal laws or ordinances constitutes a violation of the Code of Student Conduct. The University also reserves the right to address off-campus reports or concerns, regardless of the initiation of and/or outcome of legal proceedings. Violations may result in the full range of disciplinary sanctions plus other administrative and disciplinary measures.

See Code of Conduct, p. 10; Student Handbook, p. 32.

> **E.    Residency Requirement and Housing Guarantee**
> Students admitted to the University as a resident student are required to reside in on-campus housing during the academic year for their first two years of enrollment. First- or second-year students who wish to reside off-campus during the academic year at a residence other than their permanent address must request permission in writing from the Office for Residence Life. To be considered, the request must identify extenuating circumstances. If approved, students will forfeit the three-year housing guarantee and be ineligible to participate in future housing selection processes.

Student Handbook, p. 78.

### 4. Defendant Villanova's Alcohol Policy Endeavors To Regulate Consumption Of Beverages Above 15% Alcohol By Volume, Use Resident Assistants To Inspect Dorm Rooms, Confiscate Alcohol, And Punish Violators of its Alcohol Policy.

4

Defendant Villanova sets forth a strict alcohol policy, which includes the following provisions:

**Alcohol Policy**

Villanova University strives to develop and sustain a living and learning environment in which the full potential of its members may be realized. Therefore, the University aspires to the highest standards of academic excellence and is committed to the personal health and safety of all individuals. In pursuing these community goals, all students and student organizations are required to comply with applicable state and federal laws and the following University policies regarding alcohol.

1. Any person under the age of 21 in the Commonwealth of Pennsylvania may not lawfully possess, consume, purchase, attempt to purchase or transport alcoholic beverages.
2. Furnishing alcohol to any person under the age of 21 or enabling underage alcohol consumption is strictly prohibited. Violations that result in disorderly, disruptive or dangerous conduct, damages, injury, or other criminal activity will be considered more serious.
3. Regardless of age, the abusive or dangerous use of alcohol is prohibited on and off campus, including but not limited to:
   - Intoxication that results in impaired motor skills or balance, slurred speech, disorientation, vomiting, blacking-out, passing-out, or other similar behavior.
   - Disruptive, disorderly, or dangerous conduct related to the consumption of alcohol.
   - Driving on or off campus while under the influence of alcohol.
4. Residing on campus and the possession/consumption of alcoholic beverages on campus is a privilege and not a right. Therefore, regardless of age, the following policies apply within University residence halls and/or on University property:
   - The possession, consumption, or furnishing of alcoholic beverages that contain fifteen percent (15%) or higher alcohol by volume (e.g. hard liquor) is prohibited within University residence halls. This regulation applies to all students and their guests.
   - Consumption or possession of alcoholic beverages in open containers is prohibited in common areas of residence halls, including hallways, lounges, lobbies, stairwells, and bathrooms.
   - Alcoholic beverages may not be possessed or consumed in academic, administrative, or public areas of campus without authorization from appropriate University officials.
   - Common source containers of alcoholic beverages, including beer kegs and alcoholic punch (e.g. "jungle juice"), are prohibited in residence halls and on University property without authorization from appropriate University officials.
   - The possession, consumption, or furnishing of alcoholic punch, caffeinated alcohol, powdered alcohol, grain alcohol, or gelatin shots is prohibited within University residence halls and on University property.
   - Participation in drinking games, consuming shots of alcohol, and any type of binge drinking (e.g. chugging, "shot-gunning," etc.) is prohibited in residence halls and on University property. Simulated drinking games are prohibited regardless of whether or not alcohol is present.
   - Possession or use of binge drinking paraphernalia (e.g. funnels, beer pong tables, etc.) or any instrument of alcohol abuse is prohibited in residence halls

and on University property.

See Code of Conduct, p. 2-3; Student Handbook, p. 24-25.

Defendant Villanova's edicts do not shy away from the fact that it has the power of "enforcement" and "sanctioning" related to the university's Alcohol Policy:

> **Alcohol Policy Enforcement and Sanctioning**
> The University reserves the right to sanction students who violate the law and/or the above University alcohol policies (both on and off campus). Violations may result in the full range of sanctions such as warnings, fines, disciplinary probation (plus other disciplinary measures) up to and including suspension or expulsion from the University. Subsequent violations, excessive quantities of alcohol, and/or aggravating factors will result in more severe sanctions. Typically, first-time alcohol violations which do not involve disruptive, disorderly, or dangerous conduct, and which are consistent with the concept of moderate and responsible consumption will result in educational follow-up and/or less severe sanctions. Student organizations that violate the law and/or University alcohol policies are also subject to disciplinary action, up to and including suspension or loss of recognition.
>
> 1. While legal aged students are permitted to possess and consume alcoholic beverages with **less than fifteen percent (15%) alcohol** by volume in campus residence halls, if at any time, and in the discretion of University staff, the possession or consumption exceeds the concept of moderate and responsible use, or if there is disorderly, disruptive, or dangerous conduct, **the University reserves the right to take immediate corrective action, including but not limited to, the confiscation of alcoholic beverages and/or the dispersion of guests from a residence hall room/apartment.** The University reserves the right to sanction students in cases of excessive, dangerous or abusive alcohol use, or for disorderly or disruptive conduct.
> 2. **When a suspected policy violation is encountered by University staff in a residence hall room or apartment, University staff may enter rooms or apartments to address policy violations, to confiscate containers of alcohol**, whether full or empty, and/or to disperse guests, if appropriate. **University staff may confiscate all alcohol present at the time of a violation regardless of the type of alcohol or the age of the residents**. University staff may also, at the time and location of an alcohol violation and when students are present in the room, open and inspect refrigerator(s) and/ or coolers (both personal and University-owned) in order to remove all alcohol from the premises. Students are expected to comply with University staff in their efforts. Failure to comply will result in more severe sanctions. Items found that violate the above policies will be confiscated by appropriate University personnel and not returned.
> 3. **The University reserves the right to sanction all residents of a residence hall room/apartment, whether or not the residents are present at the time of the violation, as well as any students present when an alcohol violation occurs, regardless if the alcohol containers are empty or full, decorative or otherwise**.

See Code of Conduct, p. 4; Student Handbook 26 (emphasis added).

### 5. Defendant Villanova's Sexual Misconduct Policy Speaks To The Specific Dangers Of Alcohol.

6

Within the "Prohibited Conduct" section of the Student Handbook's proscriptions about sexual misconduct, Defendant Villanova specifically acknowledges the danger posed by alcohol consumption in the context of sexual misconduct:

> **ALCOHOL and OTHER DRUGS:** Sexual misconduct is never excused because a person is intoxicated or impaired by alcohol or other drugs, and the consumption of alcohol or drugs does not diminish one's responsibility to obtain consent. **The University considers sexual contact while under the influence of alcohol or other drugs to be risky behavior because people may abuse the impaired condition of another to commit sexual misconduct. Alcohol and other drugs impair a person's decision-making capacity, awareness of the consequences, and ability to make informed judgments. The use of alcohol or other drugs can limit a person's ability to freely, affirmatively, and clearly give consent and can create an atmosphere of confusion over whether or not consent has been freely, affirmatively, and clearly sought or given.** The perspective of a reasonable person will be the basis for determining whether a Respondent should have been aware of the extent to which the use of alcohol or other drugs impacted a Complainant's ability to give consent.

See Student Handbook, p. 63 (emphasis added).

### 6. Rape, Sexual Misconduct, Sexual Assault, Sexual Exploitation, and Coercion Are All Identified as Prohibited Conduct.

Defendant Villanova's Student Handbook sets forth a 26-page, single-spaced set of policies, procedures, rules, and regulations regarding sexual misconduct. It lists dozens of resources, including a "Sexual Assault Resource Coordinator," who is available 24 hours a day, 7 days a week, to prevent sexual misconduct and assist survivors of sexual misconduct. The Student Handbook states:

> **PROHIBITED CONDUCT**
> This policy applies to all on-campus conduct, as well as any off-campus conduct, that has an adverse impact on any member of the University community or the University. All conduct outlined below is prohibited under this policy and, in some instances, may also constitute behavior prohibited under Title IX. In order to fall under the scope of Title IX, the conduct must take place during a University education program or activity in the United States which includes:
> - Any on-campus premises
> - Any off-campus premises over which Villanova University has substantial control.
> - Any buildings or property owned or controlled by a recognized student organization.
> - Activity occurring within computer and internet networks, digital platforms, and computer hardware or software owned or operated by, or used in the operations of, Villanova University's programs and activities over which the University has substantial control.
>
> **SEXUAL MISCONDUCT.** The term sexual misconduct is a comprehensive term that encompasses any unwelcome conduct of a sexual nature and includes dating violence, domestic violence, sexual assault, sexual exploitation, sexual harassment and stalking.

**SEXUAL ASSAULT**. Having or attempting to have sexual intercourse or sexual contact with another person without consent. This includes sexual intercourse or sexual contact achieved by the use or threat of force or coercion, where a person does not consent to the sexual act, or where a person is incapacitated (as defined in Section B). Sexual assault includes rape, fondling, incest, and statutory rape, defined as follows:

- **Rape - Attempted or Actual Penetration(s)**: Causing or attempting to cause non-consensual vaginal, anal, or oral penetration, however slight, with any object or body part, with another person.
- **Fondling - Non-Consensual Sexual Contact:** The touching of the private body parts of another, for the purpose of sexual gratification forcibly and/or against that person's will; or not forcibly or against that person's will where the person is incapable of giving consent because of their age or because of their temporary or permanent mental or physical incapacity. This can include causing the other to touch the harasser's private body parts.
- **Incest –** Incest is sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.
- **Statutory Rape –** Statutory rape is sexual intercourse with a person who is under the statutory age of consent. In Pennsylvania, individuals under 13 years of age can never consent to intercourse; individuals younger than 16 years of age can never consent to intercourse with a partner more than four years their senior. For more about consent, see Part B below.

**SEXUAL EXPLOITATION.** Sexual exploitation is an act or omission to act that involves taking non-consensual, unjust, humiliating, or abusive sexual advantage of another, either for personal advantage or to benefit or advantage anyone other than the Complainant. Examples of sexual exploitation include but are not limited to the following:

- Creating a picture(s), movie(s), webcam, tape recording(s), graphic written narrative(s), or other means of memorializing sexual behavior or a state of undress of another person without the other's knowledge and consent;
- Sharing items described in the paragraph above beyond the boundaries of consent where consent was given. For example, showing a picture to friends where consent to view it was given for oneself only;
- Observing or facilitating observation by others of sexual behavior or a state of undress of another person without the knowledge and consent of that person;
- Voyeuristic behaviors, such as watching another person or persons, without their consent, while they are undressing, undressed, or engaged in sexual activity;
- Engaging in sexual behavior with knowledge of an illness or disease that could be transmitted by the behavior without full and appropriate disclosure to the partner(s) of all health and safety concerns;
- Engaging in or attempting to engage others in "escort services" or "dating services" which include or encourage in any way sexual behavior in exchange for money;
- Intentionally, knowingly, or surreptitiously providing drugs or alcohol to a person for the purpose of sexual exploitation; or
- Exposing another person to sexually explicit or lewd material without the person's advanced knowledge and consent.

*       *       *

**COERCION**: Consent must be freely given. Consent is not freely given if it results from the use or threat of physical force, intimidation, or coercion, or any other factor that would compromise someone's ability to exercise their own free will to choose whether or not to have sexual contact. Coercion includes the use of pressure and/or oppressive behavior, including express or implied threats of harm or severe and/or pervasive emotional intimidation, which (a) places a person in fear of immediate or future harm or physical injury of themselves or another person, or (b) causes a person to engage in unwelcome sexual activity. A person's words or conduct amount to coercion if they wrongfully impair the other's freedom of will and ability to choose whether or not to engage in sexual activity. Coercion also includes administering a drug, intoxicant, or similar substance that impairs the person's ability to give consent.

See Student Handbook, pp. 61-63.

### 7. Bystanders Are Singled Out By Defendant Villanova's Student Handbook.

Bystanders to sexual misconduct – particularly relevant here – are directly Defendant Villanova's Student Handbook. Defendant Villanova encourages *intervention* from bystanders and asserts the authority to hold them accountable. See Student Handbook, pp. 65-66.

### C. DEFENDANT VILLANOVA'S STUDENT HANDBOOK AND CODE OF CONDUCT DEMONSTRATE THAT THE UNIVERSITY ENDEAVORED TO PROTECT THIS CLASS OF STUDENTS ON- AND OFF-CAMPUS.

Defendant Villanova's sweeping policy statements are unequivocally part of Defendant Villanova's public safety endeavors, as complicated by Plaintiff's negligent undertaking arguments under Restatement (Second) of Torts §§ 323 and 324, and Feld v. Merriam, 485 A.2d 742, 746 (Pa. 1984).

Defendant Villanova's Student Code of Conduct and Student Handbook, both individually and collectively, establish that Defendant Villanova had specific policies and procedures with respect to off-campus housing, including off-campus application review, off-campus housing approval, and oversight of off-campus housing. These documents prove that Defendant Villanova had a relationship with off-campus housing facilities like The Courts, where Villanova students resided off-campus for generations. Thus, from an operations and oversight perspective, Defendant Villanova was not likely as independent form or "separate and distinct" from The Courts, their property owners, Defendants College Hall Associates L.P. and College Hall G.P., and their property manager, Defendant Marks & Company USA, Inc.

Rape, sexual assault, sexual misconduct, sexual exploitation, and fondling/non-consensual sexual conduct are all the subject of "PROHIBITED CONDUCT" in Defendant Villanova's

9

Student Handbook. The Student Handbook also discusses a person's capacity to consent when under the influence of alcohol and drugs, as well as bystander intervention.

Defendant Villanova's Student Handbook and Code of Conduct also set forth rules and regulations regarding alcohol consumption, alcohol possession and storage within university dormitories, and monitoring of alcohol by Residential Assistants.

Finally, Villanova's Student Handbook and Code of Conduct make declarations concerning Defendant Villanova's "jurisdiction" over on-campus and off-campus students on all the matters outlined above, and preserves Villanova's "*right* to address behavior that violates this Policy regardless of whether the conduct also violates Federal, State and/or municipal civil or criminal law." See Student Handbook, p. 60 (emphasis added).

Defendant Villanova declares that it has the right and jurisdiction to address "PROHIBITED CONDUCT" like the misdeeds that C.A. alleges, the authority to approve/disapprove and oversee off-campus housing, and the power to police and regulate alcohol consumption within its dormitories. Certainly, then, Defendant Villanova owed students like C.A. a duty to exercise reasonable care in all of the safety measures it endeavored to enact and enforce.

## CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Court deny the instant Motion to Dismiss, and allow Plaintiff to move forward with the discovery process against all defendants.

                              **EDELSTEIN LAW, LLP**

                    BY:    /s/ Jay L. Edelstein
                            JAY L. EDELSTEIN, ESQUIRE
                            *Attorney for Plaintiffs*

## CERTIFICATION OF SERVICE

I hereby certify that the foregoing was served on January 24, 2025 by this Court's Electronic Filing System and/or electronic mail upon the following:

James A. Keller, Esquire
Jesse Krohn
Saul Ewing Arnstein & Lehr, LLP
1500 Market Street, 38th Floor West
Philadelphia, PA 19102
**E-Mail:** jesse.krohn@saul.com
**E-Mail:** james.keller@saul.com
*Attorneys for Villanova University*

Lisa Ingram, Esquire
Kristin Shicora, Esquire
Campbell Conroy & Oneil
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
**E-Mail:** lingram@campbell-trial-lawyers.com
**E-Mail:** keshicora@campbell-trial-laweyrs.com
*Attorneys for College Hall Assso. & College Hall GP*

Eamon Merrigan, Esquire
GOLDBERG, MILLER & RUBIN, P.C.
The North American Building
121 South Broad Street
Suite 1600
Philadelphia, PA 19107
**E-Mail:** emerrigan@gmrlawfirm.com
*Attorneys for Elijah Joseph Katzenell*

Brian J. McMonagle, Esquire
McMonagle Perri McHugh Mischak and Davis
1845 Walnut Street, 19th Floor
Philadelphia, PA 19103
**E-Mail:** bmcmonagle@mpmpc.com
*Attorney for Andrew Polun*

Douglas C. Maute, Esquire
Maute Law LLC
141 Pleasant Valley Avenue
Moorestown, NJ 08057
**E-Mail:** dcm@mautelaw.com
*Attorney for Juan Eguirguren*

**EDELSTEIN LAW, LLP**

BY:      /s/ Jay L. Edelstein
         JAY L. EDELSTEIN, ESQUIRE
         *Attorney for Plaintiffs*

11