**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **C.A.** | : | |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **CIVIL NO.  24-4434** |
| | : | |
| **VILLANOVA UNIVERSITY et al.** | : | |
| *Defendants* | : | |

## MEMORANDUM

Plaintiff C.A. brought claims against Villanova University ("Villanova"); College Hall

Associates, College Hall GP, LLC, and Marks & Co., Inc. (collectively "The Courts"); Elijah

Katzenell; Juan Eguiguren; and Andrew Polun.  Plaintiff's second amended complaint contains

thirteen counts total—alleging negligence and negligent infliction of emotional distress against

Villanova and The Courts; sexual assault, assault, battery, negligence, conspiracy, and

intentional and negligent infliction of emotional distress against Katzenell; negligence and

negligent infliction of emotional distress against Polun; and negligence and conspiracy against

Eguiguren.  All but Polun filed motions to dismiss Plaintiff's second amended complaint in some

capacity.  For the following reasons, the motions are granted in part and denied in part.

## I.    FACTUAL BACKGROUND

In August 2022, Plaintiff C.A. was returning to school at Villanova University as a

sophomore.  ECF No. 21 ¶ 20 [hereinafter Compl.].  She was sexually assaulted by Defendant

Katzenell in the first week that she was back on campus.  Compl. ¶¶ 73-75.  Plaintiff sued

Katzenell, but she also sued Villanova, The Courts (an off-campus housing complex where

Plaintiff was previously drinking alcohol before the sexual assault), and Polun and Eguiguren

(two other Villanova students that were in the dorm room while Katzenell sexually assaulted Plaintiff).

### A. Plaintiff's Sexual Assault on Sylly Night.

To understand each Defendants' place in this lawsuit, it is important to understand the context of the night of the sexual assault. The first week of classes at Villanova, and many other college campuses, is known as "sylly week." Compl. ¶ 30. This is a time for students to review their course syllabi, so coursework is lighter this week. *Id.* It is also a time for students to attend parties and underage drink. Villanova students also refer to the first evening back for class as "sylly night." *Id.* ¶¶ 31-32.

One popular location to partake in sylly night is The Courts—an off-campus apartment complex that is unaffiliated with Villanova, though many of its residents are Villanova students. *Id.* ¶¶ 33, 41. The night of August 24, 2022, Plaintiff went to The Courts for sylly night. *Id.* ¶ 36. According to the Complaint, students at The Courts had unfettered access to move at will between the hallways and apartments. *Id.* ¶¶ 57-58. Alcohol was plentiful that night at The Courts, and Plaintiff, who was under 21 years old at the time, became intoxicated while drinking there. *Id.* ¶¶ 61-65.

Sometime after midnight, Plaintiff and her roommate took an Uber from The Courts to Sheehan Hall, the dormitory ("dorm") building where they lived on Villanova's campus. Compl. ¶ 66. While in the Uber, Katzenell texted Plaintiff and invited her to his dorm room in Sheehan Hall. *Id.* ¶ 67. Plaintiff went to Katzenell's dorm, where Eguiguren (Katzenell's roommate) and Polun were also present. *Id.* ¶ 69. While in Katzenell and Eguiguren's dorm room, Plaintiff drank more alcohol and eventually passed out. *Id.* ¶71. She later woke up in her own dorm

2

room at approximately 2:00 p.m. in a t-shirt that did not belong to her and no underwear. *Id*. She did not recall anything that happened after passing out in Katzenell and Eguiguren's dorm room. *Id*.

Plaintiff confronted Katzenell who informed her that he had sexual intercourse with her. *Id*. ¶ 72. Katzenell was arrested, and a consent search of Eguiguren's cell phone revealed a video "showing Katzenell having sex with [Plaintiff] while she was unconscious." *Id*. ¶ 75. Polun can be seen in the video, and he admitted to the police that Plaintiff was "noticeably drunk." *Id*. ¶ 76. Moreover, Polun and Eguiguren admitted to assisting Katzenell in transporting the Plaintiff from Katzenell's dorm room on the second floor to the first-floor bathroom at about 2:30 a.m. *Id*. ¶ 77. After helping transport Plaintiff, Eguiguren contacted Plaintiff's roommate to assist Plaintiff in the first-floor bathroom. *Id*.

### B. A History of Underage Drinking on Sylly Night.

In addition to suing the three individuals, Plaintiff also contended that Villanova and The Courts were responsible for her sexual assault. Plaintiff alleged that Villanova provided no orientation, instruction, guidance, or warning of any kind regarding alcohol consumption or sexual assault to returning sophomores, unlike the freshman orientation. Compl. ¶¶ 21-25, 37. Moreover, Villanova did not warn about alcohol consumption occurring at The Courts. Plaintiff maintained that Villanova should have provided these warnings because it knew of the increased risk of underage drinking and sexual assaults, occurring both on campus and at The Courts, on sylly night. *Id*. ¶ 42.

For instance, Plaintiff alleged that Villanova's "Annual Security and Fire Safety Report" of 2023—a report required by the Clery Act for Villanova to document any report of sexual

assault—indicates known "drug, alcohol and sexual assault/abuse and rape problems on [Villanova's] campus." Compl. ¶ 38; ECF No. 68 at 13-14 [hereinafter Hearing Transcript].

Plaintiff also maintained that Villanova and The Courts were acutely aware that The Courts was a hotbed for underage drinking on sylly night, thereby contributing to increased risks of student sexual assaults. The Villanovan, a student-run newspaper, published an article in February 2024 about The Courts, which included several quotes characterizing The Courts as a nuisance to the surrounding community because of the residents' behavior and conduct. Compl. ¶ 41.

In addition to the Villanovan article, Plaintiff provided public record evidence. Pursuant to a request under Pennsylvania's Right-To-Know-Law, more than 150 calls for police service were made to the Courts from 2021 to 2024. *Id.* ¶ 47. The calls for police service and emergency medical service related to noise complaints, suspicious activity, directed patrols, foot patrols, disturbances, burglaries, fire alarms, people passing out, unknown medical emergencies, overdoses, and head injuries. *Id.*

Plaintiff also obtained roughly 25 sets of email conversations between Lower Merion Township (the township encompassing The Courts), police officers, representatives of The Courts, and Villanova representatives. Compl. ¶¶ 48-49. The email conversations, spanning from 2016 to 2024, discussed issues related to The Courts—including revoking rent approval to students, court hearings, guilty pleas, fines, citations against the management company, property inspections, and meetings scheduled between the management company, Villanova, and students. *Id.* ¶ 49. Plaintiff also obtained letters from Lower Merion Township to The Courts regarding disorderly conduct incidents at The Courts. *Id.* ¶ 51.

Plaintiff averred that the above-mentioned evidence demonstrates Villanova and The Courts' negligence. Consequently, Plaintiff named Villanova, The Courts, Katzenell, Eguiguren, and Polun in her second amended Complaint. All but Polun filed motions to dismiss. Villanova and The Courts seek to dismiss both the negligence and negligent infliction of emotional distress claims against them. Katzenell seeks to dismiss only the sexual assault claim against him. Eguiguren seeks to dismiss both the negligence and conspiracy claims against him.

## II.    LEGAL STANDARD

A defendant may move to dismiss a lawsuit for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a [plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a Rule 12(b)(6) motion to dismiss, this Court accepts Plaintiffs' allegations in their Complaint and makes reasonable inferences based on the facts, in the light most favorable to Plaintiffs. *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). This Court need not accept legal conclusions and conclusory statements in Plaintiffs' Complaint. *Id.*

## III.   DISCUSSION

For the reasons that follow, The Courts' motion to dismiss Counts III and IV is granted, Katzenell's motion to dismiss Count V is granted, and Eguiguren's motion to dismiss Count XII is granted. The motions to dismiss other claims are denied.

5

## A. VILLANOVA

### a. Negligence

To survive a motion to dismiss in a negligence case, a party must adequately allege duty, breach, causation, and damages. *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 602 Pa. 346, 354 (2009). Villanova challenged both duty and causation in its motion to dismiss.

### i. Villanova had a duty to Plaintiff as an invitee.

Plaintiff alleged that the University "owed a duty to its students, including C.A., to provide a safe educational and residential environment and to protect them from foreseeable risks of harm." Compl. ¶ 80. "Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time." *T.A. v. Allen*, 669 A.2d 360, 362 (Pa. Super. Ct. 1995). Specifically, Plaintiff alleged that Villanova had a duty under three distinct theories— Villanova had a special relationship with Plaintiff, landlord-tenant relationship, and a possessor of land relationship. *Id.* ¶¶ 81-84.

The only theory that carries water is the possessor of land relationship.[1] Determining duty is typically a legal question. Yet, in this case, Villanova's duty to Plaintiff as an invitee

---

[1]     None of the special relationships outlined in the Restatement (Second) of Torts Section 314A (e.g., common carrier duty, inn-keeper's duty, etc.) are present here. Restatement (Second) of Torts § 314A. Moreover, no special relationship existed merely because Plaintiff was a student. *See Bradshaw v. Rawlings*, 612 F.2d 135, 140 (3d Cir. 1979); *Alumni Ass'n v. Sullivan*, 524 Pa. 356, 364 (1990). The examples Plaintiff cited—the student-athlete relationship in *Kleinknecht v. Gettysburg Coll.* and the international student relationship in *Dalgic v. Misericordia University*—are not persuasive. 989 F.2d 1360, 1368 (3d Cir. 1993); No. 3:16-CV-0443, 2019 WL 2867236, at *26-27 (M.D. Pa. July 3, 2019). In both *Kleinknecht* and *Dalgic*, the universities had undertaken certain obligations to the students; those circumstances are not present here.

    In addition, absent an agreement to protect tenants from criminal acts of a third person, landlords are not obligated to protect tenants from those criminal acts. *Feld v. Merriam*, 506 Pa. 383, 391 (1984). Moreover, Plaintiff has not pleaded an explicit undertaking by Villanova to provide a security apparatus on campus or how Villanova failed to carry out that apparatus. Therefore, a landlord-tenant relationship

could be triggered if Villanova had actual or constructive knowledge of criminal conduct by third parties.[2]  Restatement (Second) of Torts § 343 (1965); *Est. of Swift v. Ne. Hosp. of Philadelphia*, 456 Pa. Super. 330, 336 (1997).  This introduces a factual question.  Plaintiff argued that the following pieces of evidence indicate that Villanova did plausibly have actual or constructive knowledge that there would be higher incidences of sexual assault on sylly night due to excessive drinking: (i) Defendant Villanova's "Annual Security and Fire Safety Report" of 2023; (ii) The Villanovan's article "Community Tightens Around the Future of College Hall"; (iii) Right-To-Know-Law requests to the Montgomery County Emergency Communications Division (9-1-1 Center) reflecting calls for service to The Courts between March 6, 2021 and March 6, 2024; (iv) Over 50 documents between law enforcement and Villanova and/or The Courts.

The facts alleged are sufficient to demonstrate that Villanova plausibly had at least constructive knowledge that heavy student drinking, and consequently sexual assault in the residential halls, were a higher likelihood on sylly night.  The facts in discovery may confirm or deny this; in which case, Villanova's duty will rise or fall on the facts born out.  At this stage, however, Plaintiff has adequately alleged that Villanova had at least constructive knowledge of the heightened risk of sexual assault in its residential halls during sylly night.

---

is not a basis for a duty in this case.  *Doe v. Moravian Coll.*, No. 5:20-CV-00377-JMG, 2023 WL 144436, at *11 (E.D. Pa. Jan. 10, 2023).

[2]    Villanova did not contest that Plaintiff was an invitee on its dorm property.  ECF No. 25 at 17 [hereinafter Villanova Mot.].  Rather, it jumped directly into an argument that, assuming Plaintiff is an invitee, she was not owed a duty because Villanova had no constructive knowledge of criminal conduct by a third-party.  *Id.* ("even if Plaintiff is adequately pled to have been an invitee, the University's obligations to her as an invitee were not triggered until the [University] has actual or constructive knowledge of such conduct by third-parties.") (internal quotations omitted).  Because Villanova briefed no argument to the contrary, Villanova is deemed to have accepted Plaintiff's invitee status and this Court proceeds with the invitee analysis.

It is pertinent, though, to limit the extent of Villanova's duty to Plaintiff as an invitee. Plaintiff averred that Villanova had a duty to "discover that underage alcohol consumption, drug abuse and sexual abuse and misconduct (including rape) was occurring on- and off-campus" during sylly night and to "enable its visitors and students, including C.A., to avoid harm or otherwise protect them from harm." *Id.* ¶¶ 85-86, 91. Essentially, Plaintiff advocated that Villanova had a duty to warn and to protect. Under the duty to warn, Villanova allegedly failed to warn its students about illicit and underage use of alcohol on campus and at The Courts on sylly night, rape on campus, and how alcohol may lower inhibitions and prevent students from protecting themselves from rape. *Id.* ¶ 91. Under the duty to protect, Villanova allegedly failed to cooperate with The Courts and police regarding security at The Courts on sylly night, provide security in the dorms on sylly night, and train Resident Advisors/Assistants (RA) and require them to monitor students returning from sylly night for signs of intoxication. *Id.* ¶ 91. Villanova's duty shall not extend to any actions or omissions made by The Courts because it is an off-campus residence complex over which Villanova has no authority. Villanova's duty shall be limited to potential warnings and protections it could have made within the confines of its own campus, though these actions may be related to known activities at The Courts.

Accordingly, Villanova had a duty to Plaintiff as an invitee. Plaintiff demonstrated that Villanova plausibly had at least constructive knowledge of higher incidences of sexual assault on-campus due to excessive drinking at The Courts on sylly night.

### ii.    Plaintiff adequately alleged proximate cause.

Proximate cause is established if Plaintiff can "demonstrate the causal connection between the breach of a duty of care and the harm alleged: that the increased risk was a substantial factor in bringing about the resultant harm." *Scampone v. Highland Park Care Ctr.*,

8

LLC, 618 Pa. 363, 387 (2012).  Unlike factual cause, proximate cause is a legal question used to devise a policy partition when injuries are too remote from an alleged breach.  *Heeter v. Honeywell Int'l, Inc.*, 195 F. Supp. 3d 753, 758 (E.D. Pa. 2016).  A court must determine if an "injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of."  *Reilly v. Tiergarten Inc.*, 430 Pa. Super. 10, 15 (1993).  An intervening act by another party may sever the causal chain; however, "[w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct."  Restatement (Second) of Torts § 442B; *Abdallah v. Caribbean Sec. Agency*, 557 F.2d 61, 63 (3d Cir. 1977).

Although Katzenell's sexual assault of Plaintiff was a superseding criminal act, Villanova's failure to provide warnings and heightened protections at the residential halls on sylly night was a concurring cause of Plaintiff's sexual assault.  It is reasonably foreseeable to Villanova, based on its constructive knowledge of the risks of sylly night, that students would be at an increased risk of sexual assault on sylly night.  Therefore, Villanova's alleged breach was a substantial factor that contributed to the circumstances of Plaintiff's sexual assault.

### b.  Negligent Infliction of Emotional Distress

Paired with Plaintiff's negligence claim against Villanova is a negligent infliction of emotional distress ("NIED") claim.  NIED is predicated on an underlying negligence claim.  *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000).  The predicate negligence claim against Villanova proceeds, and so may an analysis of Plaintiff's NIED claim.

9

Pennsylvania law recognizes a claim for NIED in four factual scenarios: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011) (citation omitted); *Wardlaw v. City of Philadelphia St.'s Dep't*, 378 F. App'x 222, 225 (3d Cir. 2010).

Villanova cited incorrect law for its argument to dismiss the NIED claim. It briefed argument and cited cases about whether its conduct was "extreme and outrageous"; however, this is an element for *intentional* infliction of emotional distress. *Dehart v. HomEq Servicing Corp.*, 679 F. App'x 184, 190 (3d Cir. 2017); Villanova Mot. at 22-24. Making a claim for negligent infliction of emotional distress is a lesser burden. Plaintiff's response does not explicitly correct Villanova's mistake. ECF No. 40 at 29-30 [hereinafter Pl.'s Resp., Villanova]. In Plaintiff's response, she cited *Sinn v. Burd* for the factors of bystander recovery in a NIED claim but still advocated, incorrectly, that Villanova's conduct was in fact outrageous—although such a conclusion is irrelevant to an NIED claim. Pl.'s Resp., Villanova at 30 ("The outrageous nature of the act is clear").

Local Rule of Civil Procedure 7.1(c) states that a motion "shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion . . . [t]he Court may require or permit additional briefs or submissions if the Court deems them necessary." The Court denies Villanova's request to dismiss Plaintiff's NIED claim because it rests on an argument that its conduct was not "extreme and outrageous,"

an inapplicable legal element. Additional briefing is unnecessary at this stage, as Villanova will have another opportunity to dismiss this claim at summary judgement.

### B. THE COURTS

Plaintiff asserted that The Courts owed her a duty under two different theories: she was an invitee and The Courts acted as a landlord. Compl. ¶¶ 122-26; ECF No. 54 at 10-17 [hereinafter Pl.'s Resp., The Courts]. The negligence claim against The Courts fails at the first step: duty.

First, Plaintiff did not have public or business invitee status while at The Courts during sylly night. "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *Updyke v. BP Oil Co.*, 717 A.2d 546, 549 (Pa. Super. Ct. 1998) (citing Restatement (Second) of Torts § 332). "A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Restatement (Second) of Torts § 332. Plaintiff asserted that she had invitee status because she could move freely between the residences at The Courts to drink alcohol for no charge, and The Courts ostensibly knew about this conduct occurring on sylly night. Compl. ¶¶ 57-64, 110-15. Such knowledge transformed The Courts into grounds open to the public, Plaintiff argued. Pl.'s Resp., The Courts at 13. However, The Courts is a private residential building that mostly rents to Villanova students; it was not held open to the public on sylly night or held open for the purposes of business. *See Feld v. Merriam*, 506 Pa. 383, 391 (1984) ("An apartment building is not a place of public resort where one who profits from the very public it invites must bear what losses that public may create."); *cf. Rabutino v. Freedom State Realty Co.* 809 A.2d 933 (Pa. Super. 2002) (imposing a duty on owner and operator of a *hotel* to business invitees on the premises).

11

Although not pleaded, the facts in the Complaint indicate a licensee relationship between Plaintiff and The Courts because she was a visitor attending a party for sylly night. Restatement (Second) of Torts § 342. However, the facts do not state a claim for relief under a licensee theory either.

Second, The Courts do not owe a duty to Plaintiff as a landlord or possessor of land. Plaintiff argued that The Courts had a duty to provide a security program in a non-negligent manner. Pl.'s Resp., The Courts at 14. Under Pennsylvania law, landlords who provide a security program against third-party criminal conduct may be liable to tenants if the program is negligently carried out. *Doe v. Moravian Coll.*, No. 5:20-CV-00377-JMG, 2023 WL 144436, at *11 (E.D. Pa. Jan. 10, 2023) (citing *Feld*, 506 Pa. 383, 393-94 (1984)). Importantly here, Plaintiff was not a tenant at The Courts, so they had no duty to provide a non-negligent program of security for Plaintiff's benefit. In addition, a duty does not attach merely because underage drinking was occurring at The Courts. The Courts correctly argued that it did not have a duty to police underage alcohol consumption on its premises absent a showing that The Courts "knowingly furbished" alcohol to minors. *See e.g.*, *Kapres v. Heller*, 417 Pa. Super. 371, 381-82 (1992), *aff'd*, 536 Pa. 551 (1994) ("There is no Pennsylvania law which makes it incumbent upon landlords to police the activities, legal or otherwise, of their tenants."). Plaintiff claimed that she imbibed free alcohol at multiple apartments at The Courts on sylly night, but she alleged no facts that The Courts knowingly furbished the alcohol. Compl. ¶¶ 36, 61-65.

Therefore, The Courts owed no duty to Plaintiff. Consequently, Plaintiff's NIED claim against The Courts also fails for lack of a predicate tort claim.

### C. ELIJAH KATZENELL

Katzenell seeks only to dismiss one count against him—Count V for rape, sexual assault, and indecent assault pursuant to Pennsylvania's penal code. 18 Pa.C.S. §3126 §§ A4; 18 Pa.C.S. § 3126 §§ A1; 18 Pa.C.S. § 3121 §§ A3; 18 Pa.C.S. §3124.1. To bring a claim for violation of a statute, a private cause of action must be expressly or impliedly given. *Estate of Witthoeft v. Kiskaddon*, 557 Pa. 340, 345 (1999). Rather than argue an implicit right to sue under the Pennsylvania criminal statutes, Plaintiff argued that Count V is subsumed by her assault and battery claims against Katzenell. ECF No. 48 at 10. She stated that "[t]he instant motion's questions as to whether rape and sexual assault are independent torts or subsumed by the torts of assault and battery is truly immaterial to the heart of Plaintiff C.A.'s causes of action against Defendant Katzenell." *Id*. at 10-11. This Court does not agree. Although Plaintiff's sexual assault, assault, and battery all arise out of the same grisly facts, that does not mean she may litigate Count V without a private cause of action. Certainly, what occurred to Plaintiff could be called sexual assault, assault, or battery in common parlance, but that does not mean all can be pled in a civil lawsuit. Therefore, Count V is dismissed for lack of a private cause of action.

### D. JUAN EGUIGUREN.

#### a. Negligence.

Plaintiff contended that Eguiguren failed to take any action to prevent Katzenell from sexually assaulting her, and such failure violated a duty of care owed to her. Compl. ¶¶ 185-86, 192. She posited that this Court should, as a matter of public policy, conceive a novel duty using factors set out in *Althaus ex rel. Althaus v. Cohen*. 562 Pa. 547, 553 (2000); *see also Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.*, 630 Pa. 45, 66 (2014) (explaining that the *Althaus* factors are "more relevant to the creation of new duties than to the vindication of existing ones").

13

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Althaus*, 562 Pa. 547, 553 (2000).  No one factor is dispositive.  *Phillips v. Cricket Lighters*, 576 Pa. 644, 659 (2003).  Finding a duty of care is a public policy determination, which may include "our perception of history, morals, justice and society." *Berrier*, 563 F.3d at 62. Pennsylvania courts find "existing expressions of public policy manifest in the governing . . . statues and regulation, and the priorities they reflect" instructive in ascertaining a duty of care. *Nace v. Pennridge Sch. Dist.*, 744 F. App'x 58, 65-66 (3d Cir. 2018) (declining to impose a reporting duty that is broader than the Pennsylvania legislature's existing reporting requirements under the Child Protective Services Law) (citing *Walters v. UPMC Presbyterian Shadyside*, 646 Pa. 746, 789 (2018)).  Given that a tort duty is grounded in state common law, this Court's task is to apply the state law, or, if the highest state court has not yet addressed the legal issue, to "predict how [Pennsylvania law] would resolve the issue." *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012); *Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967). The Supreme Court of Pennsylvania has cautioned courts not to "enter into the creation of new common law duties lightly because the adjudicatory process does not translate readily into the field of broad-scale policymaking." *Feleccia v. Lackawanna Coll.*, 654 Pa. 324, 340 (2019) (internal quotations omitted).

Here, Plaintiff argued that Eguiguren had a bystander duty under *Althaus* to intervene to prevent or stop her sexual assault. ECF No. 61 at 11 [hereinafter Pl.s' Resp., Eguiguren].  The first *Althaus* factor, the relationship between the parties, does not weigh in Plaintiff's favor. Pennsylvania courts do not recognize an actor's general duty to rescue another that is in

14

perceived danger. *Wenrick v. Schloemann-Siemag Aktiengesellschaft*, 564 A.2d 1244, 1248 (Pa.

1989) ("Anglo-American common law has for centuries accepted the fundamental premise that

mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not

sufficient to create a duty to act."); *see also Feld v. Merriam*, 506 Pa. 383, 392 (1984) ("there is a

general rule against holding a person liable for the criminal conduct of another absent a

preexisting duty"). Even if an actor could intervene for the benefit of an endangered person, they

are not legally obligated to do so. *Id*.

In addition to Pennsylvania case law, the Pennsylvania legislature has not moved forward

with imposing a general duty to intervene on bystanders. On October 19, 2021, following

reports that bystanders did not contact 911 during a sexual assault on a SEPTA commuter train,

Pennsylvania State Senator James R. Brewster authored a co-sponsor Memorandum for

legislation seeking to impose an affirmative duty to assist victims of physical harm. *See* Senate

Co-Sponsorship Memo by Sen. James R. Brewster (Oct. 10, 2021). On January 25, 2022, Sen.

Brewster introduced Senate Bill No. 1033 in the 2022 Session of the General Assembly aimed at

imposing a duty to assist victims of crime and the Bill was referred to the judiciary committee.

GA of Pa., S. Bill 1033, (2022). Senate Bill No. 1033 was not voted upon in committee or on the

floor. *See* Pennsylvania General Assembly website at Bill Information. Thus, in the absence of

a general duty to rescue, Plaintiff must establish a special relationship with Eguiguren to justify

the imposition of such duty.

Plaintiff maintained that Villanova's Student Handbook is a basis to find a special

relationship. Restatement (Second) of Torts §§ 316-25. The Student Handbook discourages

mixing alcohol and sexual conduct because of the risk of sexual misconduct and encourages

bystander intervention to prevent sexual misconduct. Pl.'s Resp., Eguiguren at 11-12, 14.

15

Moreover, the Handbook includes resources for sexual assault. *Id*. at 12. Plaintiff argued that these references to sexual assault in the Handbook serve as a basis to impose a duty on Eguiguren because he "swore to uphold the principles and bylaws of a Code of Conduct and a Student Handbook." *Id*. at 15-16. However, Plaintiff cited no case law to hold that *guidance* in a university student handbook manifests an affirmative duty in tort law. *See Humphries v. Pennsylvania State Univ.*, No. 4:20-CV-00064, 2021 WL 4355352, at *9-10 (M.D. Pa. Sept. 24, 2021), *appeal filed Isaiah Humphries v. Pennsylvania State University, et al*, 3rd Cir., June 17, 2025 (declining to find that a university's student code of conduct and administrative policies imposed on a collegiate football coach a duty to student player who was sexually harassed by other team members). Therefore, no relationship existed. *Citizens Bank of Pennsylvania v. Reimbursement Techs., Inc.*, 609 F. App'x 88, 92 (3d Cir. 2015) (the lack of relationship between the parties is a "significant factor that weighs against the existence of a duty").

The second and third *Althaus* factors, however, weigh in Plaintiff's favor. There is social utility in imposing a duty on Eguiguren. The circumstances here indicate that Eguiguren, without apparent physical risk to himself, could have tried to stop Katzenell from sexually assaulting Plaintiff while she was unconscious. Moreover, Eguiguren could have refrained from encouraging Katzenell's sexual assault of Plaintiff via videorecording the act. In addition, the harm to Plaintiff was clearly foreseeable. Plaintiff was unconscious while Kateznell sexually assaulted her. Eguiguren videorecorded the event. There is no rational argument that the risk of harm to Plaintiff was not foreseeable in that moment. Eguiguren argued that he is presumed incompetent regarding the effects of alcohol, and so the harm against Plaintiff could not, legally, have been foreseeable to him. ECF No. 62 at 9. But Eguiguren's purported duty is not preventing underage alcohol consumption; it is intervening in Katzenell's sexual assault of

Plaintiff and refraining from encouraging the act via videorecording. When determining

foreseeable harm to Plaintiff, it is beside the point whether Plaintiff was unconscious from the

effects of alcohol or something else while Katzenell was sexually assaulting her. Relevant here,

there is foreseeable harm to an unconscious person being sexually assaulted without their

knowledge.

 The fourth and fifth factor weigh against imposing a duty on Eguiguren. Pennsylvania

courts and the legislature are against imposing a bystander duty to rescue or intervene. This

Court concurs with Plaintiff in taking great offense at Eguiguren's morally dubious conduct, but

an actor's moral deficiency may not always translate into a cause of action in our U.S. legal

system. Consequently, balancing all the *Althaus* factors, Count XII against Eguiguren is

dismissed for lack of a duty.

### b. Civil Conspiracy.

 Plaintiff alleged civil conspiracy against Eguiguren, claiming that he acted in concert with

Katzenell so that Katzenell could sexually assault Plaintiff. Compl. ¶¶ 175-90. A civil

conspiracy claim must demonstrate the following: "(1) the persons combine with a common

purpose to do an unlawful act or to do a lawful act by unlawful means or unlawful purpose, (2)

that an overt act in furtherance of the common purpose has occurred, and (3) the plaintiff has

incurred actual legal damage[,]" and (4) proof of malice with the sole intent of injuring the

plaintiff. *Com. ex rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1140 (Pa. Commw.

Ct. 2005); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 221 (1979). Eguiguren asserted

that Plaintiff's Complaint did not adequately allege the planning or execution of a conspiracy or

malice. ECF No. 45 at 22 [hereinafter Eguiguren Mot.].

Although Count XI contains numerous legally conclusory statements, *see* Compl. ¶¶ 183, 189-90, Plaintiff conveniently included a catch all to encompass alleged facts presented elsewhere in the Complaint. *See* Compl. ¶ 175 ("Plaintiff C.A. incorporates the above paragraphs as though set forth at length herein."). A motion to dismiss is not an assessment of clean pleadings, but it is incumbent upon a plaintiff to present specific facts—not merely conclusory allegations—in the appropriate section. This Court's role is not bloodhound for this motion to dismiss, searching for consequential facts in this 36-page Complaint to nudge a specific legal claim into the realm of plausible. Nevertheless, this Court finds that Plaintiff has plausibly alleged a claim of civil conspiracy against Eguiguren.

For Count XI, Plaintiff pleaded that Eguiguren did not take any action to stop Katzenell, and, in fact, video recorded Plaintiff's sexual assault while she was unconscious. Compl. ¶¶ 182, 185. Eguiguren did not immediately surrender this video until the authorities searched his phone. *Id.* ¶ 75. Elsewhere in the Complaint, Plaintiff alleged that Eguiguren admitted to helping transport Plaintiff from his dorm room on the second floor to the first-floor bathroom at approximately 2:30 a.m. *Id.* ¶ 77. Moreover, he contacted Plaintiff's roommate to come to the bathroom to assist Plaintiff. *Id.* Based on these facts, Plaintiff has stated a plausible claim that Eguiguren engaged in a civil conspiracy with Katzenell.

## IV.    CONCULSION

For the forgoing reasons, Counts III, IV, V, and XII, with respect to Eguiguren, are dismissed with prejudice.

18

BY THE COURT:

THE HONORABLE KAI N. SCOTT
U.S. DISTRICT COURT JUDGE