## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **C.A.** | |
| Plaintiff, | **No.:  2:24-cv-04434-KNS** |
| v. | |
| **VILLANOVA UNIVERSITY, et al.** | Electronically Filed |
| Defendants. | |

## ORDER

**AND NOW**, this _____day of _____, 2025, upon consideration of Plaintiff's Motion for Reconsideration of the Dismissal of Defendants, College Hall Associates, LP, College Hall, GP, and Marks & Co., Inc., and any response thereto, it is hereby **ORDERED** that Plaintiff's Motion for Reconsideration is **GRANTED** and Defendants' Motion to Dismiss is **DENIED**.

It is **ORDERED** that Defendant Defendants, College Hall Associates, LP, College Hall, GP, and Marks & Co., Inc., shall file a responsive pleading to Plaintiff's Second Amended Complaint by _____, 2025.

**BY THE COURT:**

_____
Honorable Kai N. Scott

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **C.A.** | |
| Plaintiff, | **No.:  2:24-cv-04434-KNS** |
| v. | |
| **VILLANOVA UNIVERSITY, et al.** | Electronically Filed |
| Defendants. | |

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER DISMISSING DEFENDANTS, COLLEGE HALL ASSOCIATES, LP, COLLEGE HALL, GP, AND MARKS & CO., INC.

For the reasons set forth in the Memorandum of Law filed concurrently with this Motion, Plaintiff, C.A., by and through her attorneys, Jay L. Edelstein, Esquire, Stephen J. Pokiniewski, Esquire, and Edelstein Law, LLC, respectfully submit this Motion for Reconsideration of this Court's September 8, 2025 Order dismissing Defendants, College Hall Associates, LP, College Hall, GP, and Marks & Co., Inc.

Respectfully Submitted,

**EDELSTEIN LAW, LLP**

BY: _____
JAY L. EDELSTEIN, ESQUIRE
230 S. Broad Street, Suite 900
Philadelphia, PA 19102
215-893-9311
jedelstein@edelsteinlaw.com
*Attorney for Plaintiff*

Date: October 8, 2025

1

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

I.    Factual Summary and Procedural History ....................................................... 1

      A.    The Mutually Dangerous History of Defendant Villanova,
            College Hall Defendants, and The Courts ..............................................1

      B.    Procedural History ................................................................................. 2

II.   Legal Standard .................................................................................................. 3

III.  Argument .......................................................................................................... 4

      A.    College Hall Defendants Owed C.A. a
            Duty of Care ............................................................................................ 5

            1. C.A. Was a "Business Visitor" of College Hall Defendants ......................... 6

            2. Liability Under Restatement § 344 .................................................. 10

            3. Invitee Status as Jury Question .................................................... 12

            4. C.A. Entitled to Highest Duty of Care .......................................... 13

            5. Defendants Knew "Sylly Night" Was Dangerous ........................... 14

            6. College Hall Defendants Breached Their Duty to C.A. ................... 15

      B.    Plaintiff Properly Set Forth Factual Allegations
            Demonstrating Proximate Cause .......................................................... 17

IV.   Conclusion ...................................................................................................... 22

# TABLE OF AUTHORITIES

Abdallah v. Caribbean Sec. Agency,
    557 F.2d 61 (3d Cir. 1977) ..................................................................... 20

Baraka v. McGreevey,
    481 F.3d 187 (3d Cir. 2007) ..................................................................... 4

Beebe v. Moses,
    113 Wash. App. 464, 54 P.3d 188 (2002) ....................................................... 13

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) .......................................................................... 4, 13

Chacko v. Com., Dep't of Transp.,
    148 Pa. Cmwlth. 494, 611 A.2d 1346 (1992) ................................................... 20

Clevenstein v. Rizzuto,
    439 Pa. 397, 266 A.2d 623 (1970) .............................................................. 21

Collins v. Phila. Suburban Dev. Corp.,
    179 A.3d 69 (Pa. Super. Ct. 2018) ............................................................. 5

Crawford v. SugarHouse HSP Gaming, LP,
    2018 WL 11650499 (Pa. Com. Pl. Aug. 7, 2018) .............................................. 14

Crowell v. City of Philadelphia,
    531 Pa. 400, 613 A.2d 1178 (1992) ............................................................ 21

E.J. Stewart, Inc. v. Aitken Prods., Inc.,
607 F. Supp. 883 (E.D. Pa. 1985), aff'd, 779 F.2d 42 (3d Cir. 1986) ......................... 18
Emge v. Hagosky,
    712 A.2d 315 (Pa. Super. Ct. 1998) ........................................................... 14

Farnham v. Inland Sea Resort Props., Inc.,
    175 Vt. 500, 824 A.2d 554 (2003) ............................................................. 13

Feld v. Merriam,
    506 Pa. 383 (1984) ............................................................................ 5

Galullo v. Fed. Exp. Corp.,
    937 F. Supp. 392 (E.D. Pa. 1996) ............................................................. 17

Harsco Corp. v. Zlotnicki,
779 F.2d 906 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986)………………….………...... 2
Herman v. Welland Chem.,
    Ltd., 580 F. Supp. 823 (M.D. Pa. 1984) ....................................................... 17

Holocheck v. Luzerne Cty. Head Start, Inc.,
    385 F. Supp. 2d 491 (M.D. Pa. 2005) .......................................................... 4

Johnsrud v. Carter,
    620 F.2d 29 (3d Cir. 1980) .................................................................... 4

Karr v. Castle,
    768 F. Supp. 1087 (D. Del. 1991), aff'd sub nom.

U.S. v. Carper, 22 F.3d 303 (3d Cir. 1994),
    cert. denied, 513 U.S. 1084 (1995) ............................................................... 3

Kehr Packages, Inc. v. Fidelcor, Inc.,
    926 F.2d 1406 (3d Cir. 1991) ........................................................................ 4

Leedy v. Hartnett,
510 F. Supp. 1125 (M.D. Pa. 1981), aff'd, 676 F.2d 686 (3d Cir. 1982) ........... 5
Martin v. City of Philadelphia,
    2016 WL 817288 (Pa. Commw. Ct. Mar. 2, 2016) ..................................... 21

Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,
    176 F.3d 669 (3d Cir. 1999) ......................................................................... 2

Merlini ex rel. Merlini v. Gallitzin Water Auth.,
    602 Pa. 346, 980 A.2d 502 (2009) ............................................................... 5

Morrow v. Balaski,
    719 F.3d 160 (3d Cir. 2013) ........................................................................ 4

N. River Ins. Co. v. CIGNA Reins. Co.,
    52 F.3d 1194 (3d Cir. 1995) ........................................................................ 2

Paliometros v. Loyola,
    932 A.2d 128 (Pa. Super. Ct. 2007) ........................................................... 11

Palange v. Philadelphia Law Dep't,
    433 Pa. Super. 373, 640 A.2d 1305 (1994) ................................................. 5

Pearson v. Philadelphia Eagles, LLC,
    220 A.3d 1154 (Pa. Super. Ct. 2019) ......................................................... 14

Powell v. Drumheller,
    539 Pa. 484, 653 A.2d 619 (1995) ............................................................. 21

Rabutino v. Freedom State Realty Co.,
    809 A.2d 933 (Pa. Super. Ct. 2002) ...................................................... 5, 10

Redland Soccer Club, Inc. v. Dep't of Army,
    55 F.3d 827 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996) ................. 17

Robertson v. Allied Signal, Inc.,
    914 F.2d 360 (3d Cir. 1990) ...................................................................... 17

Updyke v. BP Oil Co.,
    717 A.2d 546 (Pa. Super. Ct. 1998) ......................................................... 3, 5

Walker v. Drexel Univ.,
    917 A.2d 521 (Pa. Super. Ct. 2009) ........................................................... 14

Warren Gen. Hosp. v. Amgen, Inc.,
    643 F.3d 77 (3d Cir. 2011) ..................................................................... 4, 13

Wisniewski v. Great Atl. & Pac. Tea Co.,
    226 Pa. Super. 574, 323 A.2d 744 (1974) ................................................. 18

**Secondary Authorities**

57 Am. Jur. 2d Negligence § 554 ...................................................................... 20

Restatement (Second) of Torts § 328B (1965) ................................................... 5

Restatement (Second) of Torts § 329 (1965) ..................................................... 5

Restatement (Second) of Torts § 330 (1965) ..................................................... 6

Restatement (Second) of Torts § 332 (1965) ............................................. 3, 5–13

Restatement (Second) of Torts § 344 (1965) .............................................. 10–14

Restatement (Second) of Torts § 431 (1965) ................................................... 18

Restatement (Second) of Torts § 434 (1965) ................................................... 20

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 4

**INTRODUCTION**

Plaintiff brings this Motion for Reconsideration in light of this Court's decision to absolve College Hall Defendants of any legal duty owed to Plaintiff C.A. The Cour found this so, despite the fact that year after year, the College Hall Defendants rent to fraternity boys and tolerate debaucherous, under-age alcohol-fueled parties at The Courts. Year after year, it is those fraternity boys who seek out young, often under-age, women to join their Sylly Night/Week debauchery. Sylly Night/Week brings danger to young women, while College Hall Defendants sit idly by, tacitly permitting the danger to continue on their premises and on their watch. Plaintiff respectfully asks that this Court revisit the legal duties owed by College Hall Defendants as she was a "business visitor," and thus, an invitee under Pennsylvania law.

**I.    FACTUAL SUMMARY AND PROCEDURAL HISTORY**

**A.    THE MUTUALLY DANGEROUS HISTORY OF DEFENDANT VILLANOVA, COLLEGE HALL DEFENDANTS, AND THE COURTS** [1]

For decades, Defendant Villanova and the College Hall Defendants have cultivated a dangerous ecosystem in which The Courts functioned as a de facto fraternity house. College Hall Defendants, acting as lessors to more than 100 Villanova students annually, knew their property was not merely residential but a hub for student partying. By permitting such use year after year despite complaints, citations, and public notoriety, they extended a permissive invitation to Villanova students to use College Hall as a venue for intoxication and misconduct.

The evidence is overwhelming. Villanova's Annual Security Reports show rising incidents of rape, sexual assault, stalking, dating violence, and hundreds of alcohol and drug violations

---

[1] In lieu of a more thorough recitation of the averments of the Complaint, Plaintiff offers this factual summary, and incorporates by reference Plaintiff's Brief in Opposition to College Hall Defendants' Motion to Dismiss (ECF 55) as though it were set forth fully herein.

1

between 2020 and 2022. Local police described College Hall as "its own animal," with escalating complaints—184 calls for service in three years, including overdoses, unconscious students, and head injuries. Municipal records dating back to 1993 show decades of warnings and citations to College Hall's owners regarding overcrowding, disorder, and nuisance conditions. Still, the Defendants knowingly leased to student groups, turning College Hall into a fraternity-like enterprise. Their silence and continued leasing operated as a standing permissive invitation to Villanova students to gather, drink, and risk harm.

Within this culture, "sylly week"—the first week of classes—was institutionalized as the launch of the party season, and "sylly night" was worse. On August 24, 2022, College Hall Defendants once again allowed their property to serve this role. There was no security, no police presence, and no limits on access. Doors were open, hallways packed, liquor plainly displayed.

The message was unmistakable: College Hall was available to all Villanova students. By maintaining the property as a fraternity-style social hub, the lessors issued an open invitation for underage and binge drinking. The lack of oversight was itself an inducement, signaling that chaos was expected, tolerated, and encouraged.

Plaintiff C.A., like many of her peers, accepted that invitation. She attended "sylly night," became highly intoxicated, and returned to her dormitory impaired—conditions that left her vulnerable to the sexual assault that followed.

### B.    PROCEDURAL HISTORY

This action was initiated with a Complaint filed on August 22, 2024, in the Philadelphia Court of Common Pleas. Defendant Villanova University removed this action on August 23, 2024 (ECF Doc. 1). A Second Amended Complaint was filed on November 12, 2024 (ECF Doc. 21). On or about December 12, 2024, College Hall Defendants filed a Motion to Dismiss Plaintiff's

Second Amended Complaint (ECF Doc. 30). By stipulation, the parties agreed that Plaintiff must file any response by January 24, 2025 (ECF Doc. 52).

On January 24, 2025, Plaintiff filed a Response in Opposition to College Hall Defendants Motion to Dismiss (ECF 55), which is incorporated by reference herein as if set forth in full. On February 7, 2025, College Hall Defendants filed a Reply to Plaintiff's Opposition.

On July 29, 2025, oral argument was held before this Honorable Court on all pending Motions to Dismiss. On September 9, 2025, this Honorable Court issued a Memorandum Opinion (ECF 70) and an Order (ECF 71) dismissing Plaintiff's claims against College Hall Defendants.

## II.    **LEGAL STANDARD**

A motion for reconsideration has two primary purposes: "to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985) cert. denied, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). The motion should be granted "if the party seeking reconsideration shows at least one of the following grounds:

(1) an intervening change in controlling law;

(2) the availability of new evidence; or

**(3) the need to correct an error of law or prevent a manifest injustice.**

Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999) (citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir.1995)).

"[I]n ruling on a motion to reconsider, the court should keep an open mind, and should not hesitate to grant the motion if necessary to prevent manifest injustice or clear error." Karr v. Castle, 768 F.Supp. 1087, 1093 (D.Del.1991), *67 aff'd sub nom., U.S. v. Carper, 22 F.3d 303 (3d Cir.1994), cert. denied, 513 U.S. 1084, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995).

Rule 12 (b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief is granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (quoting Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)). Under Rule 12(b)(6), moving defendant has the burden of showing that no claim has been stated. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991); Johnsrud v. Carter, 620 F.2d 29, 32-33 (3d Cir. 1980); Holocheck v. Luzerne Cty. Head Start, Inc., 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005).

## III.   ARGUMENT

Plaintiff respectfully submits that this Honorable Court made an error of law in its Memorandum Opinion when it held:

> First, Plaintiff did not have public or business invitee status while at The Courts during sylly night. "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." Updyke v. BP Oil Co., 717 A.2d 546, 549 (Pa. Super. Ct. 1998) (citing Restatement (Second) of Torts § 332). "A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Restatement (Second) of Torts§ 332. Plaintiff asserted that she had invitee status because she could move freely between the residences at The Courts to drink alcohol for no charge, and The Courts ostensibly knew about this conduct occurring on sylly night. Comp!. ,i,i 57-64, 110-15. Such knowledge transformed The Courts into grounds open to the public, Plaintiff argued. Pl.'s Resp., The Courts at 13. However, The

> Courts is a private residential building that mostly rents to Villanova students; it was not held open to the public on sylly night or held open for the purposes of business. See Feldv. Merriam, 506 Pa. 383,391 (1984) ("An apartment building is not a place of public resort where one who profits from the very public it invites must bear what losses that public may create."); cf Rabutino v. Freedom State Realty Co. 809 A.2d 933 (Pa. Super. 2002) (imposing a duty on owner and operator of a hotel to business invitees on the premises)

(ECF 70). In reconsideration, Plaintiff was indeed an invitee—specifically a business visitor—under Pennsylvania law, as demonstrated by the precedent and discussion below. Thus, in order to prevent manifest injustice, College Hall Defendants' Motion to Dismiss must be denied.

### A.    COLLEGE HALL DEFENDANTS OWED C.A. A DUTY OF CARE, AS THE OWNERS/MANAGERS OF "THE COURTS"

To establish a claim of negligence under Pennsylvania law, a plaintiff must show that "(1) the defendant owed the plaintiff a duty of care, (2) that duty was breached, (3) the breach resulted in the plaintiff's injuries, and (4) the plaintiff suffered an actual loss or damages." Collins v. Phila. Suburban Development Corp., 179 A.3d 69, 73 (Pa. Super. 2018) (quoting Merlini ex rel. Merlini v. Gallitzin Water Authority, 602 Pa. 346, 980 A.2d 502, 506 (Pa. 2009)).

Whether a defendant owes a duty of care to a plaintiff is a question of law. See Restatement (Second) of Torts § 328(B) (1965) (court determines whether facts give rise to any legal duty on part of defendant); accord Leedy v. Hartnett, 510 F.Supp. 1125 (M.D.Pa.1981), aff'd, 676 F.2d 686 (3d Cir.1982).

The duty of a possessor of land toward a third party entering the land depends upon whether the entrant is a trespasser, licensee, or invitee. Palange v. Philadelphia Law Dept., 433 Pa.Super. 373, 375–77, 640 A.2d 1305, 1307 (1994). The Restatement (Second) of Torts defines a trespasser as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts § 329;

<u>Palange</u>, 433 Pa. Super. at 375–77, 640 A.2d at 1307. "A licensee is a person who is privileged to enter or remain on the land only by virtue of the possessor's consent." Restatement (Second) of Torts § 330; <u>Palange</u>, 433 Pa. Super. at 377–79, 640 A.2d at 1308. The status of invitee is defined as follows:

> (1)    An invitee is either a public invitee or a business visitor.
>
> (2)    A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> **(3)    A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.**

Restatement (Second) of Torts § 332 (emphasis added); <u>Palange</u>, 433 Pa.Super. at 375–77, 640 A.2d at 1307; <u>Updyke v. BP Oil Co.</u>, 717 A.2d 546, 549 (Pa. Super. Ct. 1998).

### 1.    <u>C.A. Was a "Business Visitor" of College Hall Defendants and The Courts Under Restatement § 332 and its Comments</u>

The comments to Restatement ("REST") § 332 (1965) set forth a series of explanations and illustrations that prove that C.A. must be considered a <u>business visitor</u> of College Hall Defendants. C.A. she was invited—either expressly or impliedly—to head to, enter, and remain at The Courts by College Hall Defendants' tenants, who were known Villanova students and fraternity members who annually hosted debaucherous parties fueled by under-age drinking and the pursuit of young, susceptible, and vulnerable women.

<u>Comment (e) – Two Classes of Business Visitors</u>. College Hall Defendants cannot escape the following Section 332 provides the following comment on business visitors:

> *e. Two classes of business visitors*. Business visitors fall into two classes. The first class includes persons who are invited to come upon the land for a purpose connected with the business for which the land is held open to the public, as where a person enters a shop to make a purchase, or to look at goods on display…

> The second class includes those who come upon land not open to the public, for a purpose connected with business which the possessor conducts upon the land, or for a purpose connected with their own business which is connected with any purpose, business or otherwise, for which the possessor uses the land. Thus a truck driver from a provision store who enters to deliver goods to a private residence is a business visitor; and so is a workman who comes to make alterations or repairs on land used for residence purposes.

Restatement (Second) of Torts § 332 (1965) cmt. (e).

Here, The Courts was, for all practical purposes, "held open" to Villanova students as the locus of recurring, large-scale parties that were tolerated and well-known to the College Hall Defendants, Villanova University, and local law enforcement. C.A., invited into the sylly night party by Villanova students, fits squarely within the first class: a "patron" on premises consistently used for the very kind of activity she attended. Alternatively, she certainly satisfies the second class, because her entry was connected to the landlord's business of leasing apartments to Villanova students and reaping the economic benefits of the property's reputation as a party destination.

Comment (f) – Indirect or Future Benefit. The comments to REST § 332 continue with a discussion of the purpose of the visitor's entry onto the premises:

> f. It is not necessary that the visitor's purpose be to enter into immediate business dealings with the possessor. The benefit to the possessor may be indirect and in the future. Thus, those who enter a shop with no present purpose of buying but merely to look at the goods displayed, are business visitors of the shop, and one who comes to a residence merely to inquire about an automobile advertised for sale is a business visitor of the possessor. It is not necessary that the particular visit shall offer the possibility of business dealings, or of benefit to the possessor. It is enough that it has reasonable connection with another visit which does. Thus one who comes to return goods purchased and to demand his money back is still a business visitor.

Restatement (Second) of Torts § 332 (1965) cmt. (f).

College Hall Defendants benefitted financially from a steady stream of Villanova student-

tenants drawn by The Courts' reputation for unregulated fraternity parties. C.A.'s presence, though not a direct transaction with College Hall Defendants, was reasonably connected to the business purposes for which the property was used—to attract and house Villanova students whose demand for off-campus housing was fueled by this frat-party culture.

 Comment (g) – Visits Incidental to Business Relations of Others. The comments specifically state that ***social guests*** are included within the definition of a "business visitor":

> *g. Visits incidental to business relations of possessor and third persons.* It is not necessary that the visitor shall himself be upon the land for the purposes of the possessor's business. The visit may be for the convenience or arise out of the necessities of others who are themselves upon the land for such a purpose. **Thus those who go to a hotel to pay social calls upon the guests or to a railway station to meet passengers or bid them farewell, are business visitors, since it is part of the business of the hotelkeeper and railway to afford the guest and passengers such conveniences.** So too, a child taken by a mother or nurse to a shop is a business visitor; and this is true irrespective of whether it is necessary for the customer to take the child with her in order to visit the shop.

Restatement (Second) of Torts § 332 (1965) cmt (g) (emphasis added).

 Comment (g) clarifies that invitee status extends to those who visit premises incident to the business relations of others. A person who visits a hotel guest or greets a train passenger is deemed a business visitor. Id. cmt. (g). Likewise, C.A.'s presence as the social guest of Villanova tenants places her within the class of business visitors because College Hall Defendants' leasing business necessarily includes affording tenants the right to host guests. College Hall Defendants' own use of the land, in leasing apartments to students, directly contemplated and encouraged this very type of visitation.

 Comment (k) – Social Guests of Tenants. The comments specifically state that s***ocial guests of tenants*** are included within the definition of a business visitor as it pertains to landlords, like College Hall Defendants:

k. **A person may be a business visitor of a lessor of land although he is merely a gratuitous licensee of the lessee.** Thus, a lessor of an apartment in an apartment house or of an office in an office building, who retains the control of the halls, stairways, and other approaches to the apartment or office, holds such parts of the premises open to any person whom his lessee may choose to admit, irrespective of whether the visit of such a person is for his own or the lessee's business purpose or whether he comes as a mere social guest or other licensee of the tenant.

Restatement (Second) of Torts § 332 (1965) cmt (k) (emphasis added).

Based on this comment, a landlord who retains control of common areas holds those spaces open to all persons whom tenants may choose to admit, regardless of whether such guests come for business or social purposes. Here, it would be reasonable to infer that College Hall Defendants retained control over The Courts' common areas—entrances, stairways, and hallways—and knowingly allowed them to be used for mass gatherings. C.A., admitted by tenants into The Courts during sylly night, was therefore a business visitor as to College Hall Defendants, regardless of whether her visit advanced her own purpose or the tenants' purpose.

<u>Comment (l) – Scope of Invitation</u>. Comment (l) provides that "The possessor of land is subject to liability to another as an invitee only for harm sustained while he is on the land within the scope of his invitation. Thus an invitee ceases to be an invitee after the expiration of a reasonable time within which to accomplish the purpose for which he is invited to enter, or to remain." Restatement (Second) of Torts § 332 (1965).

Here, C.A. was invited—impliedly and ostensibly, if not directly—by The Courts through its lessor/host fraternities at The Courts. She entered The Courts during a widely known, tolerated, and expected party for Villanova students. She did not overstay, intrude into forbidden areas, or diverge from the use Defendants had permitted for years. To the contrary, she was ultimately harmed as a result of precisely the circumstances College Hall Defendants had long permitted on

9

their property—large-scale student parties fueled by underage drinking. Her harm therefore occurred well within the scope of Defendants' invitation.

> 2.    **The Owner of a Property Knowingly Rented to a Fraternity for a Intended Party Has Been Found Liable for a Sexual Assault under REST § 344.**

Section 344 of the Restatement provides:

> § 344. Business Premises Open to Public: Acts of Third Persons or Animals
>
> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344); Rabutino v. Freedom State Realty Co., 2002 PA Super 318, 809 A.2d 933 (2002) (holding that a hotel owner breached its duty to respond reasonably to readily apparent drunken and rowdy behavior as it developed during a New Year's Eve partyso as to prevent foreseeable harm from befalling the group of hotel invitees to which the plaintiff belonged). "In limited circumstances, this principle imposes upon a possessor of land the duty to police the premises." Id. The duty to police is articulated in comment f:

> f. Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

10

Restatement (Second) of Torts § 344. Comment (f).

In <u>Paliometros v. Loyola</u>, the appellee-plaintiff brought a claim arising from a sexual assault that was committed upon her by the individual defendant Loyola on the premises of the appellants' motor lodge/motel. <u>Paliometros v. Loyola</u>, 932 A.2d 128, 130-31 (Pa. Super. 2007). The court summarized the following facts:

- Sigma Tau Gamma, Inc., a college fraternity, rented two (2) rooms at the motel for the purpose of giving a party.

- The party started on October 16, 1998, and continued into the early morning hours of October 17, 1998.

- Appellee was invited to the party by a fraternity member.

- Despite the fact that most of the guests at the party were under the age of twenty-one (21) years, alcoholic beverages were served to the invited guests by the Defendant fraternity.

- Between the time of Appellee's arrival at the party, on the evening of October 16, 1998, and the time of the sexual assault in the early morning hours of October 17, 1998, Appellee had consumed four (4) mixed drinks containing alcohol.

- Individual Defendant Loyola, who was not previously known to Appellee, was also a guest at the party.

- The only actual employee of the Appellant motel left the motel on the evening of October 16, 1998, before any guests had arrived at the fraternity party, and did not return to the motel until after he was notified by the police that the sexual assault had occurred.

<u>Paliometros</u>, 932 A.2d at 131.

The sexual assault survivor's testimony was summarized as follows:

Appellee testified that while she was not intoxicated, she was otherwise not feeling well and, therefore, entered into an unoccupied room that had been rented from Appellants by the Defendant fraternity and sat on the edge of the bed. Shortly thereafter, she "passed out." Upon regaining consciousness, she saw a person (whom she later identified as Individual Defendant Loyola) in the bed with her, who was kissing her face and neck. He was also removing her skirt. She attempted to resist physically and verbally but lost

consciousness again. When she regained consciousness, she was naked. She had not removed her own clothes. Defendant Loyola was attempting to have sexual relations with her and, again, Appellee "passed out." Upon awakening, she saw Defendant Loyola putting his clothes on. She quickly dressed herself and left the room. She found her escort, who took her home.

Id. The individual defendant pleaded guilty to indecent assault. Id.

During the course of the trial, the Paliometros parties agreed that Rabutino v. Freedom State Realty Co., 2002 PA Super 318, 809 A.2d 933 (2002) established the existence of a special relationship between a possessor of land (an innkeeper in that case) who holds it open to the public and the members of the public who enter in response to the invitation. Paliometros, 932 A.2d at 133 (quoting Rabutino "It follows, then, that [property owner] owed [the plaintiff] a duty owed to any business invitee, namely, that it would take reasonable precaution against harmful third party conduct that might be reasonably anticipated").

In Paliometros, the co-owner and only employee of the property "knew that he was renting rooms to a fraternity for the purpose of the fraternity's holding a party with invited guests, most of whom were under the age of twenty-one (21)." Id. at 134. The court then stated:

> Notwithstanding such knowledge, Appellant Parsons, as a co-owner and the only employee of Appellants, left the premises prior to the arrival of any of the fraternity party guests at the motor lodge, leaving the entire premises totally unsupervised by any personnel…

Id. The Paliometros court held, "we see no significant difference between the evidence in the case at Bar and that which we addressed in the Rabutino case. We similarly find that there was no intervening force or superseding cause preventing the application of Section 344 of the Restatement (Second) of Torts to the instant matter." Id.

### 3.    Any Dispute as to C.A.'s Status as a Business Visitor, i.e., Invitee, Presents a Question of Fact for The Jury.

On a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and are viewed in the light most favorable to the plaintiff. Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d

77, 84 (3d Cir. 2011) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007)). As demonstrated above, Plaintiff has met her pleading burden. At best, College Hall Defendants' Motion to Dismiss raises issues that might be proper for summary judgment analysis as to whether genuine issues of material fact require the case to go forward—and their arguments would still fall short. Indeed, the final comment to REST § 332 states:

> Since the status of the visitor as an invitee may depend upon whether the possessor should have known that the visitor would be led to believe that a particular part of the premises is held open to him, the question is often one of fact for the jury, subject to the normal control which the court exercises over the jury's function in such matters.

Restatement (Second) of Torts § 332 (1965) at p. 6.

College Hall Defendants' Motion to Dismiss improperly asks this Honorable Court to resolve, as a matter of law, factual disputes concerning Plaintiff C.A.'s status on the premises. REST § 332 itself makes clear that "the status of the visitor as an invitee may depend upon whether the possessor should have known that the visitor would be led to believe that a particular part of the premises is held open to him," and thus "the question is often one of fact for the jury." Restatement (Second) of Torts § 332 cmt. l (1965). Courts applying this principle have consistently held that whether a visitor is an invitee or licensee turns on disputed facts reserved for the factfinder. <u>See</u> <u>Farnham v. Inland Sea Resort Props., Inc.</u>, 175 Vt. 500, 502, 824 A.2d 554, 558 (2003) (holding that guest's invitee status raised a "genuine issue" for the jury where premises were open to visitors of tenants); <u>Beebe v. Moses</u>, 113 Wash. App. 464, 467, 54 P.3d 188, 189 (2002) (status is a jury question where factual disputes exist). Here, the scope of Defendants' invitation, their long-standing acquiescence to sylly night/week parties, and Plaintiff's admission as a guest of tenants all raise disputed factual issues precluding dismissal at this pleading stage.

    4.    **<u>As a Business Visitor of College Hall Defendants, C.A. was Entitled to the Highest Duty Of Care</u>.**

College Hall Defendants owed C.A. a duty of reasonable care because they were ultimately responsible for the events that took place on their premises during "Sylly Night" and C.A. was their business visitor.

A landowner is under an ***affirmative*** duty to protect business visitors not only against dangers it knows, but also against those which with reasonable care the landowner might discover. <u>Crawford v. SugarHouse HSP Gaming, LP</u>, 2018 WL 11650499, at \*2 (Pa. Com. Pl. Aug. 7, 2018) (citing <u>Walker v. Drexel University</u>, 917 A.2d 521 (Pa. Super. 2009); <u>Emge v. Hagosky</u>, 712 A.2d 315 (Pa. Superior Ct. 1998). In <u>Pearson v. Philadelphia Eagles, LLC</u>, the Superior Court noted:

> <u>Feld</u> instructs that property owners are liable to business invitees for harm caused by the foreseeable criminal actions of third parties only if the property owner agreed to undertake or voluntarily undertook a duty to provide such protection. In such situations, an invitee "can only expect the benefits reasonably expected of the program as offered and that that program will be conducted with reasonable care."
>
> **Where a property owner knows or has reason to know, from past experience, that there is a likelihood of conduct on the part of third persons that would harm invitees, the property owner "may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."**

<u>Pearson v. Philadelphia Eagles, LLC</u>, 2019 PA Super 304, 220 A.3d 1154, 1166 (2019) (citing <u>Feld</u>, <u>supra</u>; Restatement (Second) of Torts § 344, Comment (f)) (emphasis added).

    5.    **<u>Under The Legal Duties Above, College Hall Knew That "Sylly Night" Was A Dangerous Event</u>.**

College Hall Defendants had ***every reason to know*** that The Courts were a breeding ground for illicit activities by Defendant Villanova students. As averred in the Second Amended Complaint, College Hall Defendants knew, or should have known, that the College Hall Apartments were primarily rented to Villanova students and had a longstanding history of

14

complaints from the community and repeated responses from police, fire, and EMS. They were aware that tenants routinely hosted large parties, often drawing hundreds of non-residents, where alcohol was openly served to underage individuals, just like C.A.. Defendants also knew that "Sylly Week," during the first week of Villanova classes each year, and "Sylly Night," reliably brought hundreds of underage students to the premises to drink. Moreover, they permitted tenants to host such gatherings, keep doors open for easy access, allow attendees to congregate in hallways and outside areas, and enable widespread, unrestrained alcohol consumption. See SAC ¶ 107-113.

College Hall Defendants' collective knowledge, willful blindness, or condoning of this pattern of reckless behavior is further illuminated by:

- Defendant Villanova's "Annual Security and Fire Safety Report" of 2023 (SAC ¶ 38);

- The Villanovan's publication of "Community Tightens Around the Future of College Hall" (SAC ¶ 40-41);

- Right-To-Know-Law (RTKL) request to the Montgomery County Emergency Communications Division (9-1-1 Center), the following data reflecting calls for service to 801 Montgomery Avenue, Lower Merion Township (The Courts) between March 6, 2021 and March 6, 2024 (3 years) (SAC ¶ 47-49);

- Over 50 documents between law enforcement and Defendant Villanova and/or College Hall Defendants (SAC ¶¶ 50-51).

College Hall Defendants had the advantage of previous knowledge of "Sylly Night" – generational knowledge, in fact. Yet, College Hall Defendants abdicated their duties and disregarded their responsibilities to visitors, like Plaintiff, C.A.

### 6.    College Hall Defendants Failed To Meet Their Legal Duties To Plaintiff C.A.

The well-pleaded Second Amended Complaint avers the breaches of College Hall Defendants' duties to Plaintiff C.A.. Their breaches included failing to warn invitees of the known dangers on the property, such as rampant underage drinking, drug use, and illicit activities that

heightened risks of sexual assault; failing to coordinate with Villanova and local police regarding security and law enforcement; failing to provide adequate supervision, security, or emergency medical assistance to protect intoxicated and underage students; and permitting unsafe conditions to persist in the apartments, hallways, and surrounding areas, thereby exposing C.A. to foreseeable harm. See SAC. ¶ 127.

College Hall Defendants owed C.A. a duty to exercise reasonable care to prevent the harmful and humiliating rape and sexual assault that occurred on August 25, 2023. But for the events at The Courts, C.A. would not have become so intoxicated and her judgment would not have been impaired to the drastic and desperate level that it was prior to returning to Defendant Villanova's campus. But for the negligence of College Hall Defendants, C.A. would not have had diminished decision-making capacity; but rather, she would have been aware of the dangers posed by her assailant.

Any suggestion by College Hall Defendants that the consequences of their breach of duties Plaintiff C.A. do not extend beyond the apartment complex itself are disingenuous. Pennsylvania law recognizes that a defendant may be held liable for negligent conduct at one place and time even though the injury or harm occurs at another place and time. Of the countless examples Plaintiff could delineate here, this Honorable Court is well-familiar with:

(i)    negligent entrustment cases, e.g. parents entrust a vehicle to a teenager with insufficient training and experience to operate a vehicle and the teenager causes an accident outside of the home later in the day;

(ii)   negligent hiring/retention cases, e.g., a truck driver with a suspect driving history is permitted to operate a tractor-trailer on the company's behalf and causes an accident hundreds or thousands of miles away, many days or weeks later;

(iii)  dram shop cases, e.g., where a bar overserves a visibly intoxicated person, and that person drives under the influence and causes injuries or death to himself or others; and

(iv)    product liability cases, e.g., where a negligently designed or manufactured children's toy or baby crib is placed into the stream of commerce, and months or years later that product injures or kills a child.

Contrary to College Hall Defendants' Motion to Dismiss, their duty as possessors of land was not limited to their tenant/lessees, nor was it constrained to the walls of its apartment building or the property upon which the complex rests. No, College Hall Defendants' duty of care extended to anyone who set foot on their property and participated in the dangerous events that had been annually condoned by College Hall Defendants for generations. Thus, it would be premature at this stage to find that College Hall Defendants did not owe C.A. a duty of reasonable care.

### B.    PLAINTIFF HAS PROPERLY SET FORTH FACTUAL ALLEGATIONS THAT, IF PROVEN, DEMONSTRATE PROXIMATE CAUSE.[2]

Under Pennsylvania law, causation involves *both* cause in fact (or physical cause) and proximate (or legal) cause. There is much confusion regarding the concept of causation because the term "proximate cause" is often used to embody both cause in fact and legal cause. However, cause in fact and proximate cause are separate and distinct concepts and both must be proved by a plaintiff. Galullo v. Fed. Exp. Corp., 937 F. Supp. 392, 394–95 (E.D. Pa. 1996) (citing Redland Soccer Club, Inc. v. Department of Army, 55 F.3d 827, 851 (3d Cir. 1995), *cert. denied,* 516 U.S. 1071, 116 S.Ct. 772, 133 L.Ed.2d 725 (1996); Estate of Flickinger v. Ritsky, 452 Pa. 69, 305 A.2d 40, 42–43 (1973). Cause in fact, or "but for" causation, requires proof that the alleged injury would not have occurred but for the negligent conduct of the defendant. Robertson v. Allied Signal, Inc., 914 F.2d 360, 366 (3d Cir.1990). The question of whether cause in fact has been shown involves "a *de minimis* standard of causation under which even the most remote and insignificant force may be considered the cause of an occurrence." Herman v. Welland Chem., Ltd., 580 F.Supp. 823, 827

---

[2] As this Court did not reach the issue of proximate cause as it pertains to College Hall Defendants, Plaintiff restates its previous argument for convenience of review.

(M.D.Pa.1984) (quoting <u>Takach v. B.M. Root, Co.</u>, 279 Pa. Super. 167, 420 A.2d 1084 (1980)).

Proximate cause, on the other hand, assumes the presence of cause in fact and serves as a means by which courts are able to place practical limits on liability as a matter of policy. <u>Wisniewski v. Great Atl. & Pac. Tea Co.</u>, 226 Pa. Super. 574, 323 A.2d 744 (1974). It involves a determination that the nexus between a defendant's wrongful acts or omissions and the injury sustained is of such a nature that it is socially and economically desirable to hold that defendant liable.[6] In determining whether a defendant's negligence is the proximate cause of a plaintiff's injury, Pennsylvania has adopted the "substantial factor" test set forth in Section 431 of the Restatement (Second) of Torts (1965). Under this test, a defendant's negligent conduct is not the proximate cause of plaintiff's injury unless "the alleged wrongful acts were a substantial factor in bringing about the plaintiff's harm." <u>E.J. Stewart, Inc. v. Aitken Prods., Inc.</u>, 607 F. Supp. 883, 889 (E.D.Pa. 1985), <u>aff'd</u>, 779 F.2d 42 (3d Cir. 1986).

College Hall Defendants' argument that an owner/possessor of land may only be held liable for defects "on the property" is belied by the facts and holding of <u>Rabutino v. Freedom State Realty Co.</u>, 809 A.2d 933 (2002), and merits no further attention here unless the Court so requests.

College Hall Defendants also rely upon the argument that their alleged acts and omissions were not the legal cause of C.A.'s harm because there is no link between their conduct and the criminal acts perpetrated by Defendants Katzenell, Polun, and Eguiguren. <u>See</u> Def. Brief p. 12. This argument fails, because the causal connection between "Sylly Night" events at The Courts, and the conduct of Defendants Katzenell, Polun, and Eguiguren is substantially interwoven and interconnected.

This Honorable Court must examine College Hall Defendants' apparent notice and knowledge of all the harms taking place on its grounds every year with every start of Villanova University's Fall Semester.

The Villanovan published an article identifying the havoc that College Hall Defendants knowingly allowed amongst the two institutions, stating:

    a.   "College Hall is home to more than 100 Villanova students."

    b.   "College Hall has been the recent recipient of a concerted effort by both the Lower Merion Police Department (LMPD) and the University to crack down on residents' behavior and conduct."

    c.   "College Hall is its own animal," Lieutenant Edward Sarama of the LMPD said. "It's an echo chamber."

    d.   "Police reports from the first two weeks of the Fall 2022 semester indicated that the LMPD received three SAC calls from community members related to College Hall. However, the same reports from the first two weeks of the Fall 2023 semester indicate that the LMPD received 10 complaint calls from the community related to College Hall."

    e.   "We receive referrals [to the Dean of Students office] from Lower Merion, not from Marks, and we are made aware that a student was cited," Tom DeMarco, Associate Vice President for Student Life/Dean of Students, said. "Then, we do a follow up."

    f.   "Traditional itself, this cycle of consequences appears to be a norm for the University."

See SAC ¶ 40-41. The situation has been so bad for so long that Lower Merion Township authorities are involved in a concerted effort to reduce the risk of harm to Defendant Villanova's own students. See SAC ¶¶ 47-53.

With this history as a backdrop, consider the generations-long tradition of "Sylly Week" and "Sylly Night" which was condoned by Defendant Villanova and College Hall Defendants.

    ▪   There was no security and no police on location. See SAC ¶ 56.

- ▪ Students had unfettered access to the hallways and apartments of The Courts. See SAC ¶ 57.

- ▪ There were multiple rooms with open doors and large masses of Defendant Villanova students, many of whom C.A. believed to be under the age of 21, roaming the hallways and entering and leaving multiple rooms. See SAC ¶ 58.

- ▪ Innumerable amounts of bottles of liquor and beer were in plain view. See SAC ¶ 59.

Here, College Hall Defendants had plenty of time to respond to the dangerous condition that it knew existed on its premises.

Fittingly, College Hall Defendants are following their accomplices-in-wrongdoing with Villanova University's audacious suggestion that the misconduct of Defendants Katzenell, Polun, and Eguiguren was a superseding cause that requires the automatic dismissal of C.A.'s case. Defendants' position could not be more wrong.

In general, the issue of whether a given force is a superseding or intervening cause is a question to be resolved by the fact finder. Chacko v. Com., Dep't of Transp., 148 Pa. Cmwlth. 494, 500, 611 A.2d 1346, 1350 (1992) (citing Restatement 2d § 434). "In determining issues of legal or proximate cause, an intervening cause has been said to be material only in so far as it supersedes a prior wrong as the proximate cause of an injury, while the concept of concurring cause is characterized by the fact that two or more of such causes may contribute to, and thus be legal or proximate causes of, an injury for the purposes of imposing liability." See 57 Am.Jur.2d Negligence § 554.

In Abdallah v. Caribbean Sec. Agency, the Third Circuit explained:

> "…while an intervening criminal act usually breaks the chain of causation and thereby negates liability based on negligence, **where an intervening act is foreseeable, the original actor's negligence may be considered the proximate cause of the loss and he may be liable notwithstanding the intervening criminal act.**

Abdallah v. Caribbean Sec. Agency, 557 F.2d 61, 63 (3d Cir. 1977) (emphasis added).

Contrary to College Hall Defendants' contention, no, criminal acts do not automatically constitute a superseding cause sufficient to warrant an instantaneous elimination of proximate cause. In Crowell v. City of Philadelphia, the Pennsylvania Supreme Court addressed the issue of superseding cause. In a footnote, the Supreme Court explained that the criminal conviction of the intoxicated driver did not "rise to the level" of a superseding cause so as to protect the City from the imposition of liability, because the driver's actions were "foreseeable." Crowell v. City of Philadelphia, 531 Pa. 400, 613 A.2d 1178, 1185 n. 2 (1992).

In Martin v. City of Philadelphia, the Pennsylvania Commonwealth court noted that:

> The Supreme Court expanded upon this principle three years later in Powell v. Drumheller, 539 Pa. 484, 653 A.2d 619 (1995). There, **in deciding whether the criminal acts of an intoxicated driver were, as a matter of law, a superseding cause that would relieve the Pennsylvania Department of Transportation of liability for an alleged defect in the design of a highway, the Supreme Court explained that "the proper focus is not on the criminal nature of the negligent act, but instead on whether the act was so extraordinary as not to be reasonably foreseeable."** Powell, 653 A.2d at 624. Although such a determination is usually a question for the jury, the Supreme Court noted that the undisputed facts of a matter may demonstrate that certain conduct is "so 'extraordinary' as to constitute a superseding cause as a matter of law." Id. **The Supreme Court was unable to determine from the facts of Powell whether the driver's conduct was sufficiently extraordinary as a matter of law, and, therefore, the issue of superseding cause was a question for the jury to decide**.

Martin v. City of Philadelphia, 2016 WL 817288, at *5 (Pa. Commw. Ct. Mar. 2, 2016) (emphasis added).

Generally, the question of superseding cause is a question of fact. See Clevenstein v. Rizzuto, 439 Pa. 397, 401–02, 266 A.2d 623, 625 (1970) (The more difficult inquiry is whether or not Rizzuto's conduct constituted a 'superseding cause' which relieved Williams of liability even if he were negligent. Generally, this question is for the fact-finding tribunal … at this point in the

instant case, we are not persuaded that the remoteness of the causal connection is so clear as to permit it to be determined as a matter of law) (citing Bleman v. Gold, 431 Pa. 348, 246 P.2d 376 (1968)).

Yes, Defendants Katzenell, Polun, and Eguiguren are individual actors. All three were also individual students enrolled at Defendant Villanova, living on-campus at Defendant Villanova, and apparently a part of the reckless abandon of "Sylly Night" at the time in question.

Defendants' attempts to invoke a public policy argument, while ignoring the public policy interest in holding institutions responsible for knowingly failing their own in an unsafe environment that they create, facilitate, or knowingly allow to occur.

Make no mistake, "Sylly Night" was premeditated and illicit anarchy. Given College Hall Defendants' awareness of it, explicit or implicit approval of it, and purposeful failure to do anything to protect its own students – as a matter of public policy – College Hall Defendants and Defendant Villanova must own it, and own responsibility for it. It would be premature at this stage of litigation to let Defendants off the hook, knowing what they knew, and when they knew it.

## IV.    <u>CONCLUSION</u>

For the forgoing reasons, Plaintiff respectfully requests that the Court deny the instant Motion to Dismiss, and allow Plaintiff to move forward with the discovery process against all defendants.

Respectfully Submitted,

**EDELSTEIN LAW, LLP**

BY: _____

JAY L. EDELSTEIN, ESQUIRE
*Attorney for Plaintiff*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that the foregoing was served on October 8, 2025 by this Court's Electronic

Filing System and/or electronic mail upon the following:

James A. Keller, Esquire
Jesse Krohn
Saul Ewing Arnstein & Lehr, LLP
1500 Market Street, 38th Floor West
Philadelphia, PA 19102
***E-Mail:*** *jesse.krohn@saul.com*
***E-Mail:*** *james.keller@saul.com*
*Attorneys for Villanova University*

Lisa Ingram, Esquire
Kristin Shicora, Esquire
Campbell Conroy & Oneil
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
***E-Mail:*** lingram@campbell-trial-lawyers.com
***E-Mail:*** keshicora@campbell-trial-laweyrs.com
*Attorneys for College Hall Assso. & College Hall GP*

D. Scott Bonebrake, Esquire
Noel & Bonebrake
23 E. Second Street
Media, PA 19063
***E-Mail:*** *sbonebrake@noelandbonebrake.com*
*Attorney for Elijah Joseph Katzenell*

Brian J. McMonagle, Esquire
McMonagle Perri McHugh Mischak and Davis
1845 Walnut Street, 19th Floor
Philadelphia, PA 19103
***E-Mail:*** *bmcmonagle@mpmpc.com*
*Attorney for Andrew Polun*

Douglas C. Maute, Esquire
Maute Law LLC
141 Pleasant Valley Avenue
Moorestown, NJ 08057
***E-Mail:*** dcm@mautelaw.com
*Attorney for Juan Eguirguren*

Respectfully Submitted,

**EDELSTEIN LAW, LLP**

BY: _____

JAY L. EDELSTEIN, ESQUIRE
*Attorney for Plaintiff*

24