## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C.A., | Case No. 2:24-cv-04434-KNS |
| Plaintiff, | |
| v. | |
| Villanova University, et al., | Electronically Filed |
| Defendants. | |

## DEFENDANT VILLANOVA UNIVERSITY'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

For the reasons set forth in the Memorandum of Law filed concurrently with this Motion, Defendant Villanova University moves for judgment on the pleadings, and that this Court dismiss with prejudice Plaintiff C.A.'s Second Amended Complaint as to Defendant Villanova University pursuant to Federal Rule of Civil Procedure 12(c) for failure to state a claim upon which relief may be granted.

Respectfully submitted,

/s/ James A. Keller
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

Date: January 5, 2025

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| C.A., | Case No. 2:24-cv-04434-KNS |
| Plaintiff, | |
| v. | |
| Villanova University, et al., | Electronically Filed |
| Defendants. | |

## DEFENDANT VILLANOVA UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................... 1

PROCEDURAL HISTORY............................................................................................. 2

STATEMENT OF ALLEGED FACTS........................................................................... 2

QUESTION PRESENTED............................................................................................. 4

LEGAL STANDARD..................................................................................................... 4

ARGUMENT .................................................................................................................. 5

   A.   The University had no knowledge of a higher likelihood of sexual assault in the residential halls on "Sylly Night," and therefore owed no duty................................. 5

      1.   The University had no notice of prior "sylly night" sexual assaults in its residence halls. 5

      2.   Knowledge of off-campus drinking is not knowledge of a higher likelihood of sexual assault in campus dorms. ...................................................................... 8

   B.   Even if a duty existed, the pleadings establish that the University satisfied its limited duties to warn and protect. ..................................................................................... 10

      1.   The University did warn students about the use of alcohol and drugs, particularly at the beginning of the academic year, including by requiring Resident Assistants to meet with residents to discuss drug and alcohol use. ................................................ 10

      2.   The University did warn students about sexual misconduct on-campus, including by requiring Resident Assistants to meet with residents at the beginning of the academic year to discuss sexual misconduct. .............................................................................. 12

      3.   The University did warn students that alcohol and drug use may increase risk of sexual assault. ......................................................................................................... 14

      4.   The University did provide security in the dormitories and make emotional support and/or medical assistance available to all students, including underaged students who were intoxicated. ........................................................................................................... 15

      5.   Plaintiff's conclusory allegations cannot be squared with the documents upon which her claims rest. .......................................................................................................... 16

   C.   Villanova's alleged acts or omissions were not the legal cause of Plaintiff's damages. 17

CONCLUSION.............................................................................................................. 18

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................4

*Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591 (E.D. Pa. 2010)...........................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................4

*Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F. App'x 832 (3d Cir. 2003) ............................5

*Doe v. Brown Univ.*, 304 F. Supp. 3d 252 (D.R.I. 2018)...................................................7

*Doherty v. Emerson Coll.*, No. 1:14-CV-13281-LTS, 2017 WL 4364406 (D. Mass. Sept. 29, 2017) ............................................................................................................9

*Facchetti v. Bridgewater Coll.*, 175 F.Supp.3d 627 (W.D. Va. 2016) .....................................7, 19

*Freeman v. Busch*, 150 F.Supp.2d 995 (S.D. Iowa 2001) .................................................8

*In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125 (3d Cir. 2016) .....................................4

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) .....................................................5

*Murrell v. Mount St. Clare Coll.*, No. 3:00-CV-90204, 2001 WL 1678766 (S.D. Iowa Sept. 10, 2001) ..........................................................................................................18

*Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197 (3d Cir. 2006) ..........................................19

*Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128 (3d Cir. 2010) ........................................4

*Westport Ins. Corp. v. McClellan*, 475 F.Supp.3d 447 (E.D.Pa. 2020)...........................................5

*Wolfington v. Reconstructive Orthopaedic Assoc. II PC*, 935 F.3d 187 (3d Cir. 2019).................4

**STATE CASES**

*Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36 (Pa. Super. Ct. 2000) ...............................19

*Regents of Univ. of California v. Sup. Ct.,* 413 P.3d 656 (Cal. 2018) ............................................9

*Roe v. Northeastern Univ.*, No. 16-03335-C, 2019 WL 1141291 (Sup. Ct. Mass. Mar. 8, 2019) ..9

*Shrivers v. Univ. of Cincinnati*, No. 06AP–209, 2006 WL 3008478 (Ohio Ct. App. Oct. 24, 2006) ..........................................................................................................7

*Tanja H. v. Regents of Univ. of California*, 228 Cal. App. 3d 434 (Cal. Ct. App. 1991) .........9, 18

*Wittrien v. Burkholder*, 965 A.2d 1229 (Pa. Super. Ct. 2009).......................................................19

**FEDERAL STATUTES**

Fed. R. Civ. P. 12(b)(6)...................................................................................................................4

Fed. R. Civ. P. 12(c) ...............................................................................................1, 4, 11, 19

Fed. R. Civ. P. 56...........................................................................................................................5

Jeanne Clery Campus Safety Act, 34 C.F.R. § 668.46 .........................................................5, 6, 7

**OTHER AUTHORITIES**

Johns Hopkins Center for Injury Research and Policy, Reducing Alcohol-related Sexual Assault
     on College Campuses: A Public Health Approach (2020),
     https://publichealth.jhu.edu/sites/default/files/2023-03/jhsph-cirp-reducing-alcohol-related-
     sexual-assult.pdf....................................................................................................................9, 10

National Institute on Drug Abuse and Alcoholism, Sexual Assault and Alcohol: What the
     Research Tells Us (2019),
     https://www.niaaa.nih.gov/sites/default/files/publications/NIAAA_BacktoCollege_Fact_shee
     t.pdf.............................................................................................................................................10

## INTRODUCTION

Behind a closed door, Defendant Joseph Katzenell ("Katzenell") sexually assaulted Plaintiff C.A., allegedly assisted by Defendants Juan Eguiguren ("Eguiguren") and Andrew Polun ("Polun"). The actions of these Defendants were reprehensible, and Katzenell has been arrested, arraigned, and detained. With the pleadings now closed, it is equally apparent that there is no legal basis for Defendant Villanova University ("Villanova") to remain in this case. This Motion for Judgment on the Pleadings should be granted.

In its Memorandum Opinion ("Mem. Op.," Doc. 70) on Villanova's Motion to Dismiss (Doc. 25), this Court held that Villanova would owe Plaintiff a duty of care only if it had actual or constructive knowledge of a higher likelihood of sexual assault in its residential halls on "sylly night."[1] Mem. Op. at 7. Because it is clear from the pleadings that Villanova had no such knowledge, it had no such duty.

The Court further limited the scope of any potential breach of duty to (1) a "duty to warn," with Villanova having "allegedly failed to warn its students about illicit and underage use of alcohol on campus and at The Courts on sylly night, rape on campus, and how alcohol may lower inhibitions and prevent students from protecting themselves from rape," and (2) a "duty to protect," with Villanova having allegedly failed to "provide security in the dorms on sylly night, and train Resident Advisors/Assistants (RA) and require them to monitor students returning from sylly night for signs of intoxication."[2] *Id.* at 8. Because the pleadings show that Villanova *did* warn and protect its students, there was no such breach, and no causation of any harm to Plaintiff.

---

[1] "Sylly night" is the term Plaintiff uses to refer to the evening of the first day of classes; in 2022, this was August 24, the day before Plaintiff was sexually assaulted in the early morning hours.

[2] Plaintiff also asserted that Villanova failed to "cooperate with The Courts and police regarding security at The Courts on sylly night," but the Court concluded that "Villanova's duty shall not extend to any actions or omissions made by The Courts because it is an off-campus residence

It is understandable that Plaintiff seeks accountability for the harm she sustained. She has the correct parties to hold accountable in the case: Katzenell, Eguiguren, and Polun.  By contrast, her theories of liability against the University cannot plausibly be sustained.

Based on the pleadings in this case, Counts I and II should be dismissed, with prejudice.

## PROCEDURAL HISTORY

Plaintiff filed a "Civil Action Complaint" in the Court of Common Pleas of Philadelphia County, Pennsylvania, Case ID. No. 240802790, on August 22, 2024 (Doc. 1, Ex. A).  On August 23, 2024, the University filed a Notice of Removal (Doc. 1). Plaintiff thereafter filed her First Amended Complaint in this Court on September 11, 2024 (Doc. 5), and a Second Amended Complaint on November 12, 2024 (Doc. 21). The University moved to dismiss on November 26, 2024 (Doc. 25). On September 8, 2025, the Court denied the University's motion (Memorandum Opinion, Doc. 70; Order, Doc. 71). The University thereafter filed its Answer on October 6, 2025 (Doc. 77).

## STATEMENT OF ALLEGED FACTS

In August 2022, Plaintiff returned to Villanova for her sophomore year, residing in Sheehan Hall on Villanova's campus. SAC ¶¶ 18-20. Plaintiff avers that the University did not provide orientation to returning students, nor "instruction or guidance" regarding on- or off-campus alcohol use, drug use, or sexual/abuse misconduct. *Id.* ¶¶ 21-23. Plaintiff also avers that the University does provide orientation to first year students, but this orientation also does not provide "instruction or guidance" regarding on- or off-campus alcohol use, drug use, or sexual abuse/misconduct. *Id.* ¶¶ 24-26.

---

complex over which Villanova has no authority." *Id.*  This Court affirmed that Villanova's duty was "limited to potential warnings and protections it could have made within the confines of its own campus, though these actions may be related to known activities at The Courts." *Id.*

Plaintiff also alleges that "some Villanova students" referred to the evening following the first day of classes as "sylly night," a reference to "sylly week," a time when "students review their course syllabi with their professors." *Id.* ¶¶ 29-31. Plaintiff avers that on "sylly night," some students, "including underaged students, attend parties [and] drink alcohol served to them by other students, some of legal age, others not of legal age, causing them to become intoxicated and act in an irrational manner." *Id.* ¶ 32.

Plaintiff alleges that in late August 2022, while underage, she went to a party at off-campus, non-University housing known as The Courts, where she drank alcohol and became intoxicated. *Id.* ¶¶ 34-36, 65. Plaintiff does not allege that she was unaware that alcohol would be available at The Courts when she went there or that anyone pressured or forced her to drink alcohol.

Plaintiff avers that she returned to Sheehan Hall on campus sometime after midnight in the company of her roommate. *Id.* ¶ 66. Instead of returning to her own room, she went to Katzenell's room, which he shared with Eguiguren and where Polun was also present. There, Plaintiff imbibed more alcohol. *Id.* ¶¶ 67, 70. Plaintiff was drinking from a bottle of vodka she brought to Katzenell's room where there was no other liquor present. The three individual defendants had not themselves been drinking on "sylly night," but rather had gone to the gym. *Id.* ¶ 78; ECF No. 77-37 at VU000752, VU000754 (the Affidavit of Probable Cause incorporated into the SAC by reference).[3]

Plaintiff avers that she ultimately "passed out" in Katzenell's room and does not recall anything until awakening at approximately 2:00 p.m. the next day. SAC ¶ 71. Per Plaintiff, Katzenell later "informed her that he had sexual intercourse with her," for which he was arrested

---

[3] Exhibits that Villanova attached to its Answer (ECF No. 77), are pin-cited herein by their Bates numbers in the format VUXXXXXX.

and criminally charged, ultimately pleading guilty to Sexual Assault. *Id*. ¶¶ 72-74. Eguiguren is alleged to have recorded the incident, with Polun captured in the recording. *Id*. ¶¶ 69, 75-76.

## QUESTION PRESENTED

**Question Presented:** Should this Court grant Villanova's Motion for Judgment on the Pleadings and dismiss the SAC with prejudice as against the University because it fails to state a claim upon which relief can be granted?

**Suggested Answer:** Yes.

## LEGAL STANDARD

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." *See* Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic Assoc. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). The court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party," and may not grant the motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* (citing *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016)). The Court need not accept legal conclusions masquerading as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding a motion for judgment on the pleadings, "a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Wolfington*, 935 F. 3d at 195 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). "Merely attaching documents to a Rule 12(c) motion...does not convert it to a motion under Rule 56." *Citisteel USA,*

*Inc. v. Gen. Elec. Co*., 78 F. App'x 832, 835 (3d Cir. 2003). "[A] document is undisputedly authentic where neither party questions its authenticity." *Westport Ins. Corp. v. McClellan*, 475 F.Supp.3d 447, 449 n. 1(E.D.Pa. 2020) (citing *Citisteel*, 78 F. App'x at 835).

## ARGUMENT

**A.**  **The University had no knowledge of a higher likelihood of sexual assault in the residential halls on "Sylly Night," and therefore owed no duty.**

**1.**  **The University had no notice of prior "sylly night" sexual assaults in its residence halls.**

Villanova did not have actual or constructive knowledge of a higher likelihood of sexual assaults in the residence halls on "sylly night."  There are no facts alleged in the SAC suggesting the University knew or should have known that Katzenell, Eguiguren, or Polun posed a risk to Plaintiff or anyone else. Nor are there any facts alleged suggesting there was any past history of sexual assault occurring in connection with "sylly night" in Villanova residence halls. Plaintiff alleges only that there were 3 reports of "rape" on campus in 2020, 13 in 2021, and 10 in 2022 – information gleaned from Villanova's public warnings regarding reported misconduct on campus. SAC ⁋ 38.  Plaintiff pleads no facts indicating that any of these reports related to conduct occurring on "sylly night." Indeed, they did not.

Villanova's Answer explains the legal context of the statistics and reports on which Plaintiff relies. Villanova publishes an Annual Security and Fire Safety Report (an "ASR") in satisfaction of its obligations under the Jeanne Clery Campus Safety Act (the "Clery Act"). Plaintiff incorporated Villanova's 2023 ASR into the SAC by reference. Under the Clery Act, an ASR must contain "crime statistics" summarizing **reports** of certain offenses – including rape – made to "campus security authorities," and which occur within the institution's "geography" during a calendar year, regardless of whether those reports are ever substantiated. *See generally*

34 C.F.R. § 668.46.[4]  All reports must be included, whether verified or not, unless the report is formally "unfounded" by law enforcement.

The term "campus security authority" has a defined, but limited, meaning under the Clery Act. *See* 34 C.F.R § 668.46(a). However, in the interest of providing more protection than the law requires, Villanova mandates that **all** employees (excepting counselors/therapists, priests, and the Faculty Ombudsperson) report any and all incidents of sexual misconduct of which they are aware. This is explained in the ASR – the document on which Plaintiff's case rests – no less than five times. *See* ECF No. 77-2 at VU000011-VU000013. It is also explained in the University's Sexual Misconduct Policy, which is incorporated by reference into the ASR, and which is broadly publicized on the University's webpage and Student Handbook. *See* ECF No. 77 at VU000481-VU000521, (Attachment U). This policy is intended to ensure that all alleged sexual misconduct reports made to a Villanova employee are centrally reported and tracked.

An ASR does not provide the dates of occurrence for the crime reports which make up the aggregate annual statistics. But, the Clery Act separately obligates institutions to maintain daily crime logs, "open to public inspection," which record "[t]he nature, date, time, and general location of each crime." 34 C.F.R. § 668.46(f). Villanova's daily crime logs for calendar years 2020, 2021, and 2022 – public records available to Plaintiff and undisputedly authentic documents on which her claims are based – reflect all reports of "rape" as defined by the Clery Act during those years. *See* ECF No. 77-35 at VU000726-VU000748, (Attachment HH). The logs do **not** show any

---

[4] A copy of the law is appended to the Answer. *See* ECF No. 77-31 at VU000704-VU000719.

incidents of rape reported to have occurred on campus on "sylly night" in 2020 or 2021. The only "sylly night" incident reported in 2022 is the incident involving C.A.[5]

And to be clear, Plaintiff does not dispute the accuracy of the University's crime reporting. To the contrary, she makes Villanova's crime statistics the cornerstone of her effort to show notice on the University's part. Plaintiff identifies *no other facts* – beyond citing the aggregate numbers in the ASR – to suggest a history of sexual assault on "sylly night" which would put the University on notice of a higher likelihood of such assaults in its residence halls.

This is dispositive: without such knowledge, there is no basis to conclude that Villanova should have reasonably anticipated a sexual assault in a private dorm room on "sylly night," as opposed to the unfortunate but generalized risk of crime that exists on all college campuses. *See e.g.*, *Doe v. Brown Univ.*, 304 F. Supp. 3d 252, 262 (D.R.I. 2018) (University's knowledge of five disciplinary infractions in the year prior to Plaintiff's assault not enough to establish foreseeability necessary for premises liability); *Facchetti v. Bridgewater Coll.*, 175 F.Supp.3d 627, 643-4 (W.D. Va. 2016) (Plaintiff did not adequately plead a premises liability cause of action against defendant college by simply pleading that five other sexual assaults had taken place in the calendar year before the plaintiff had been assaulted); *Shrivers v. Univ. of Cincinnati*, No. 06AP–209, 2006 WL 3008478 (Ohio Ct. App. Oct. 24, 2006) (prior rape in a different location on campus did not make the Plaintiff's rape foreseeable). As it is clear from the pleadings that the University had no knowledge of a pattern of incidents on "sylly night," it had no duty to act in anticipation of same.

---

[5] The first day of classes in academic year 2020-2021 was August 24, 2020. In academic year 2021-2022, it was August 23, 2021, and in 2022-2023, it was August 24, 2022. *See* Doc. 77, Attachments EE-GG (VU000720-VU000725). These calendars are publicly available and part of each year's Student Handbook. Plaintiff has sought to introduce the Student Handbook in this matter, *see* Doc. 53, and cannot reasonably dispute its authenticity now.

2.    **Knowledge of off-campus drinking is not knowledge of a higher likelihood of sexual assault in campus dorms.**

To the extent Plaintiff would have the Court conclude that a legal duty arises from allegedly heavier student drinking on "sylly night" – *i.e.*, that knowledge of heightened off-campus alcohol use at The Courts[6] automatically translates into constructive University knowledge of a heightened risk of sexual assault in the dorms – that theory is contradicted by both the facts and the law. Factually, the daily crime logs show no prior on-campus rapes on "sylly night" in the years immediately preceding Plaintiff's assault. None of the three individual defendants in this case is alleged to have participated in "sylly night" drinking at all; the SAC and the Affidavit of Probable Cause instead assert that they spent the evening at the gym and were not intoxicated. SAC ¶ 78; ECF No. 77-37 at VU000752-VU000754, (Aff. of Probable Cause). Further, the SAC contains no specific facts about students being intoxicated or engaging in misconduct *on campus* at all. The SAC is replete with detail about drunken revelry at The Courts, but devoid of similar assertions about this conduct carrying on to University property.

Moreover, and perhaps even more essentially, Plaintiff points to no precedent in this jurisdiction accepting the existence of an inherent causal connection between drinking and sexual assault for the purposes of establishing a legal duty or causation. Courts across the country have confronted the proposition that knowledge of drinking constitutes constructive knowledge of sexual assault, and have found it to be untenable. *See, e.g., Freeman v. Busch*, 150 F.Supp.2d 995, 1003-4 (S.D. Iowa 2001) (even if college breached duty to known intoxicated party guest, it was not liable for her later sexual assault because "[i]njury due to alcohol poisoning may have been reasonably foreseeable, [but] rape, and sexual assault are not"); *Roe v. Northeastern Univ.*, No.

---

[6] To be clear, the University does not concede that there were heightened rates of drinking at The Courts on "sylly night," as the University did not own or control The Courts.

16-03335-C, 2019 WL 1141291, *9-*10 (Sup. Ct. Mass. Mar. 8, 2019) (in connection with the claims of an undergraduate student who became intoxicated at a party and was sexually assaulted by the friend who offered to walk her home, concluding, "The law cannot rationally be stretched so far as to impose liability on colleges to prevent all instances of this sort, merely in consideration of the possibility that one student may sexually assault another"); *Tanja H. v. Regents of Univ. of California*, 228 Cal. App. 3d 434, 438 (Cal. Ct. App. 1991), reversed on other grounds by *Regents of Univ. of California v. Sup. Ct.,* 413 P.3d 656 (Cal. 2018) (sexual assault committed after students consumed alcohol not sufficiently foreseeable in the legal sense such that it gave rise to legal duty); *Doherty v. Emerson Coll.*, No. 1:14-CV-13281-LTS, 2017 WL 4364406, *10 (D. Mass. Sept. 29, 2017) (the law "does not impose a legal duty on colleges or administrators to supervise the social activities of adult students, even though the college may have its own policies prohibiting alcohol or drug abuse," even in Massachusetts, which, unlike Pennsylvania, imposes a duty on colleges "to protect their resident students against the criminal acts of third parties").

The University does not deny that alcohol is commonly involved in campus sexual assaults. In fact, it takes care to educate students that this is so. *See* Section B(3), below. But, alcohol is a facilitator or risk factor, not a direct cause of sexual assault. Perpetrators, not substances, cause assault. "Although alcohol use is a common factor in many sexual assaults, alcohol use does not cause sexual assault and many such assaults occur without alcohol use. Sexual assaults occur as the result of a multitude of personal, relational, cultural, and structural influences. While these influences affect the behavior and experiences of both victims and perpetrators, sexual assault (like other forms of assault) is solely the responsibility of the perpetrators." Johns Hopkins Center for Injury Research and Policy, Reducing Alcohol-related Sexual Assault on College Campuses: A Public Health Approach (2020), https://publichealth.jhu.edu/sites/default/files/2023-03/jhsph-

cirp-reducing-alcohol-related-sexual-assult.pdf. *See also* National Institute on Drug Abuse and Alcoholism, Sexual Assault and Alcohol: What the Research Tells Us (2019), https://www.niaaa.nih.gov/sites/default/files/publications/NIAAA_BacktoCollege_Fact_sheet.pdf ("Alcohol should be seen as a risk factor for – not a cause of – unwanted sexual advances and other forms of sexual assault").

**B.     Even if a duty existed, the pleadings establish that the University satisfied its limited duties to warn and protect.**

As noted, the Court has defined the scope of any potential breach here as (1) a "duty to warn," with Villanova having "allegedly failed to warn its students about illicit and underage use of alcohol on campus and at The Courts on sylly night, rape on campus, and how alcohol may lower inhibitions and prevent students from protecting themselves from rape," and (2) a "duty to protect," with Villanova having allegedly failed to "provide security in the dorms on sylly night, and train Resident Advisors/Assistants (RA) and require them to monitor students returning from sylly night for signs of intoxication." Mem. Op. at 8. However, the documents Plaintiff herself incorporates in her SAC, together with the undisputely authentic materials attached to Villanova's Answer, show that Villanova did exactly what Plaintiff demands. Because the pleadings show that Villanova *did* warn and protect its students, there was no breach, and no causation of any harm.

**1.     The University did warn students about the use of alcohol and drugs, particularly at the beginning of the academic year, including by requiring Resident Assistants to meet with residents to discuss drug and alcohol use.**

Plaintiff's account of the University's alleged failure to warn is contained in paragraph 91 of the SAC, which simply asserts, in conclusory fashion, that Villanova provided no meaningful warnings or protections. Based on the pleadings, her assertions are implausible and unavailing.

The ASR, on which Plaintiff relies, explains that all first year students are "required to satisfactorily complete an online alcohol education program called AlcoholEdu for College." ECF

No. 77-2 at VU000010.  Moreover, all residential students – new and returning – are required to attend mandatory floor meetings with their RAs at the beginning of the academic year to discuss relevant topics, and given an instructional booklet both in-person and electronically which reinforces same. ECF No. 77-2 at VU000020. The University also makes alcohol- and drug-related resources available to all students, *id.* at VU00005, VU000010, and publishes its "Drug and Alcohol Policy" in its ASR, as well as its Student Handbook. Plaintiff cannot rely on the ASR when she believes it to be helpful to her case, while ignoring it when it proves her allegations are incorrect.

The University does not need to further demonstrate the implausibility of Plaintiff's allegations; but in any event, and consistent with Rule 12(c), it attached to its Answer the very policies, correspondence, and training materials that were in Plaintiff's possession or otherwise available to her at the relevant time, all of which confirm that these warnings and protections existed.[7] *See* Fed. R. Civ. P. 12(c). This includes:

- the ASR and Student Handbook for both 2021-2022 and 2022-2023, ECF No. 77-2 at VU000001-VU000341, (Attachments A-D);
- details of the RA-led floor meeting C.A. was required to attend, ECF No. 77-9 at VU000347-VU000357, (Attachment H) (including discussion of the University's alcohol and drug policies, including its amnesty policy, which encourages students to seek medical assistance when necessary without facing discipline);
- promotional materials available to C.A. at the relevant time, ECF No. 77-6 at VU000342-VU000347, (Attachments E-G); and even

- proof that C.A. and her family were specifically noticed of the alcohol education requirement **and** warned of the specific risks associated with use of alcohol and drugs and attending off-campus parties, particularly at the beginning of the year. ECF No. 77-23 at VU000522- VU000603, (Attachments V-W).

---

[7] When deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

56940816.1

It is difficult to understand how C.A. can allege the University did not adequately inform students of risks they may face when, even before she stepped foot on campus, she and her parents were warned, in official University communications, of the risks associated with attending parties off-campus where alcohol may be served (ECF No. 77-24 at VU000567) ("**A Warning About Off-Campus Parties**") and that "[a]buse of alcohol has been consistently associated with higher incidences of unplanned sexual activity, sexual and physical violence, injury, trouble with campus and local law enforcement, and fatality" and that "[f]irst-year students are at even greater risk for these consequences in the first six weeks of their first semester on campus." *Id.* at VU000575.

2.    **The University did warn students about sexual misconduct on-campus, including by requiring Resident Assistants to meet with residents at the beginning of the academic year to discuss sexual misconduct.**

The University undertook similar warnings regarding sexual misconduct. As described in each year's ASR, all first year students were required to complete an online "Sexual Assault Prevention for Undergraduates" course. ECF No. 77-2 at VU000017. First year students were also required to attend, as part of New Student Orientation, "Moments That Matter," a program "focused on high-risk alcohol use and sexual violence, with a particular focus on safe and effective bystander intervention skills, consent, survivor support and campus resources." *Id.* at VU000019. First year students were also given a booklet at New Student Orientation which "highlight[s] Villanova policy and Pennsylvania law regarding sexual violence; campus and community resources; general information about sexual violence on college campuses; [and] safe and effective bystander intervention strategies"; the resource was also distributed electronically. *Id. See also* ECF No. 77-14 at VU000437- VU000448, (Attachment M) (a copy of the booklet incorporated by reference into the ASR).

The University reinforces its robust training for first year students by providing additional training to returning students at the beginning of their next academic year. Again per the ASR, all

12

residential students, like C.A., were required to attend mandatory "floor meetings" with their Resident Assistants at which they discussed "sexual violence on college campuses, along with campus and community resources." ECF No. 77-2 at VU000020. At these meetings, students were given another copy of the booklet by their Resident Assistants; the document was also provided electronically. *Id.*

Students of all class years were also "encouraged to download the Nova Now app which includes the Sexual Assault Villanova University Resources (SAVUR) channel," and "[f]lyers about sexual misconduct and resources [we]re posted in residence hall bathrooms and other University buildings." *Id.* And, students of all class years were welcome to attend training with the Department of Public Safety on topics including "personal safety awareness," "sexual assault awareness," and "the Rape Aggression Defense (RAD) self-defense course," (ECF No. 77-2 at VU000005), and other programs "designed to promote a healthy campus culture and strategies to prevent sexual misconduct" and address topics such as "risk reduction" and "the added risks [of sexual assault] involved when the use of alcohol and/or illegal drugs is present." *Id.* at VU000020. Each year's ASR includes a full list of "Sexual Misconduct Prevention and Education Efforts." *Id.* at VU000019-VU000020.

The University supplemented its Answer to include all of this information, as well as (1) the official correspondence it sent to C.A.'s parents advising of the required first year student training, (ECF No. 77-23 at VU000522- VU000603, (Attachments V-W)); (2) materials for the "Moments That Matter" training Plaintiff would have viewed, (ECF No. 77-27 at VU000660-VU000691, (Attachments Z-BB)); (3) copies of the booklet given to Plaintiff during her first / freshman year, (ECF No. 77-30 at VU000692- VU000703, (Attachment CC)), and sophomore year, (ECF No. 77-14 at VU000437- VU000448, (Attachment M)); (4) copies of the

correspondence C.A. and her parents were sent regarding sexual violence resource information, (ECF No. 77-15 at VU000449- VU000455, (Attachments N-O)); (5) copies of the flyers C.A. would have seen in the bathroom on campus, (ECF No. 77-21 at VU000474-VU000480, (Attachment T)); and, (6) as noted, details of the RA-led floor meeting that C.A. was required to attend, ((ECF No. 77-9 at VU000347-VU000357, (Attachment H)), which addressed, in relevant part:

- definitions of sexual misconduct;
- that the "[f]irst 6-10 weeks of [the] semester when many students are going to parties and social events to celebrate their arrival on (or return to) campus" is a time of "increased risk for unwanted sexual experiences";
- that "[a]lcohol is the #1 predatory drug";
- that "[m]ost students know the person who assaulted them";
- the definition and importance of consent;
- the "buddy system" and bystander intervention; and
- available resources, including from Resident Assistants and other in residential living staff, the Sexual Assault Resource Coordinator, the Title IX Coordinator and Investigator, the Student Health Center, the Counseling Center, the Office for Intercultural Affairs, the Dean of Students Office, and individuals in Mission & Ministry.

It is difficult to understand how C.A. can straight-facedly make allegations like "freshman orientation…did not provide any specific instruction or guidance regarding sexual abuse and/or misconduct." SAC ⁋ 26. This is simply and undisputedly untrue.

### 3. The University **did** warn students that alcohol and drug use may increase risk of sexual assault.

The University was transparent with students about the increased risk of sexual assault when they abuse alcohol or drugs, including, as noted above, in written warnings sent to students and their parents even before students step foot on campus.[8] This topic was, per the ASR, addressed in the "Moments That Matter" presentation, which C.A. was required to attend her first

---

[8] Acknowledging this risk does not, *as a matter of law*, establish foreseeability of sexual assault, any more than the ASR acknowledging the risk factors for identity theft make the University responsible for the identity theft losses of every affected student. *See* ECF No. 77-3 at VU000005.

/ freshman year and which "focused on high-risk alcohol use and sexual violence," and through

additional programming throughout each academic year which addressed "the added risks [of

sexual assault] involved when the use of alcohol and/or illegal drugs is present." ECF No. 77-2 at

VU000016. These materials are incorporated by reference in the ASR, and were distributed to all

new students and all residential students; they emphasize that "[a]lcohol is the #1 predatory drug."

ECF No. 77-14 at VU000448.   The University also broadly circulated its Sexual Misconduct

Policy, including in each year's ASR and Student Handbook, which explicitly says:

> "Sexual misconduct is never excused because a person is intoxicated or impaired
> by alcohol or other drugs, and the consumption of alcohol or drugs does not
> diminish one's responsibility to obtain consent. The University considers sexual
> contact while under the influence of alcohol or other drugs to be risky behavior
> because people may abuse the impaired condition of another to commit sexual
> misconduct. Alcohol and other drugs impair a person's decision-making capacity,
> awareness of the consequences, and ability to make informed judgments. The use
> of alcohol or other drugs can limit a person's ability to freely, affirmatively, and
> clearly give consent and can create an atmosphere of confusion over whether or not
> consent has been freely, affirmatively, and clearly sought or given. The perspective
> of a reasonable person will be the basis for determining whether a Respondent
> should have been aware of the extent to which the use of alcohol or other drugs
> impacted a Complainant's ability to give consent."

ECF No. 77-22 at VU000485. Plaintiff's claim that Villanova failed to warn students that alcohol

could increase the risk of sexual assault is impossible to square with these documents.

    **4.**    **The University did provide security in the dormitories and make emotional support and/or medical assistance available to all students, including underaged students who were intoxicated.**

The pleadings also foreclose the alleged "failure to protect" theory. Per the ASR,

Villanova's Department of Public Safety employs approximately 75 officers who "provide on-

campus coverage 24 hours a day, seven days a week." ECF No. 77-2 at VU000003. They patrol

and are available at all hours to receive reports of emergencies, such as medical emergencies,

including patrols of the "exterior and interior of all campus residence halls." *Id.* In the event of an

emergency, officers "trained in crisis response" respond, in recognition that "[i]n the event of an

emergency on or off campus, the University community's physical and emotional well-being is critically important." *Id.* at VU000006.

Villanova also "provides full-service counseling services to students through the University Counseling Center, located in the Health Services Building, as well as access to Campus Ministry staff, who are trained to provide crisis and grief counseling." *Id.* Services to support the physical and emotional well-being of students are available 24/7, including through Public Safety, the Student Health Center, UWill Crisis Health and Telehealth Counseling, and Residence Life staff, with both student RAs and professional staff always on call. *Id.* at VU000013.

Plaintiff is well-aware of these services, given that she repeatedly links to the Public Safety website in her SAC, where all of this information is lodged, and she received all the relevant trainings and interventions described above. The University has even provided Plaintiff copies of the materials used to train C.A.'s Resident Assistants, which addressed topics including the University's alcohol and drug policies; the protocol to follow when alcohol or drug violations are observed; recognizing symptoms of an alcohol or drug emergency and how to respond in such cases; collaborating with Public Safety and EMS, including calling for an intoxication evaluation; and documenting incidents in incident reports to be used in later disciplinary proceedings. *See* ECF No. 77-10 at VU000358- VU000436, (Attachments I-L ); ECF No. 77-25 at VU000604-VU000659, (Attachments X-Y).

### 5.   Plaintiff's conclusory allegations cannot be squared with the documents upon which her claims rest.

In short, Plaintiff's theories depend on the Court ignoring the very documents she places at the center of her case. In the SAC, Plaintiff does not assert **any specific facts** about the University's warnings, trainings, communications, security measures, and resources, other than

that it allegedly had none. This is demonstrably untrue, unless Plaintiff plans to disavow the accuracy of the ASR – in which case the SAC contains no facts whatsoever about any history of sexual assault on campus and she can make no case at all for duty.

Plaintiff was given warnings and disclosures, in writing, even before she arrived at Villanova, and these were reinforced repeatedly thereafter. She was required to attend at least two online and two live trainings on these topics, and was required to attend at least two mandatory meetings on these topics, and had well-trained professional staff in Residence Life, Student Health, and Public Safety available to help her 24/7. The exhibits incorporated into Plaintiff's own complaint, public records, and the undisputedly authentic documents on which Plaintiff's claims hinge make it impossible for Plaintiff to plausibly assert that the University failed to warn or protect students.

**C.     Villanova's alleged acts or omissions were not the legal cause of Plaintiff's damages.**

Plaintiff also has not plausibly averred that the University's alleged acts or omissions were the legal cause of the harm that befell her. In ruling on Villanova's motion to dismiss, based solely on Plaintiff's Complaint, the Court wrote: "Villanova's failure to provide warnings and heightened[9] protections at the residential halls on sylly night was a concurring cause of Plaintiff's sexual assault. It is reasonably foreseeable to Villanova, based on its constructive knowledge of the risks of sylly night, that students would be at an increased risk of sexual assault on sylly night." Mem. Op. at 9. Because the now-complete pleadings show that Villanova *did* provide warnings and protections, and did *not* have such knowledge, there was no causation.

---

[9] For the avoidance of doubt, Plaintiff's theory does not depend on Villanova having failed to offer "heightened" protections on "sylly night," but rather on Villanova's alleged failure to provide certain measures Plaintiff identified on "sylly night." Per Plaintiff's theory, had Villanova provided the measures as a matter of course, including on "sylly night," that would suffice.

To reaffirm, the pleadings demonstrate that Villanova: (A) did not have actual or constructive knowledge of a higher likelihood of sexual assault in its resident halls on "sylly night"; and (B) implemented robust measures to warn and protect students with respect to alcohol and sexual misconduct. *See supra* §§ A-B. Once these facts are taken into account, the chain of causation Plaintiff posits collapses. The sequence of events in this case is awful. But, it is not one for which the University is plausibly at fault, and courts around the country have explicitly rejected this exact factual scenario as a basis to impose liability on universities.

"College students are generally young adults who do not always have a mature understanding of their own limitations or the dangers posed by alcohol and violence. However, the courts have not been willing to require college administrators to reinstitute curfews, bed checks, dormitory searches, hall monitors, chaperones, and the other concomitant measures which would be necessary in order to suppress the use of intoxicants and protect students from each other." *Tanja H.*, 228 Cal. App. 3d at 438. "A college, or any other kind of landlord, is incapable of foreseeing an acquaintance rape that takes place in the private quarters of a student or tenant, unless a specific student or tenant has a past history of such crimes." *Murrell v. Mount St. Clare Coll.*, No. 3:00-CV-90204, 2001 WL 1678766, *4 (S.D. Iowa Sept. 10, 2001). "[I]n the absence of any allegation in the complaint that [the alleged offender] had previously committed any sexual assault, it is unclear what steps the college could have taken to protect [plaintiff] from attack." *Facchetti*, 175 F.Supp.3d at 643-4 ("level of foreseeability of harm" necessary for a viable premises-liability claim not met where five assaults occurred in defendant college's dormitories the year prior, as none were alleged to have been perpetrated by plaintiff's alleged assailant).

## CONCLUSION

The pleadings confirm that Plaintiff cannot establish duty, breach, or proximate cause. That means her negligence claim fails. *Wittrien v. Burkholder*, 965 A.2d 1229, 1232 (Pa. Super.

Ct. 2009). Because she cannot establish a negligence claim, her NIED claim fails. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000).

The University published warnings, provided trainings, and offered resources. Plaintiff should not be permitted to "conduct a fishing expedition in order to find a cause of action" where Plaintiff is already "well-positioned to know, upon reviewing [her] own past experiences," what facts to plead. *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006). The documentation on which Villanova will make its case was already in Plaintiff's possession at the time of her enrollment, and has now been made part of this case through the University's Answer.

For the reasons set forth herein, this Court should grant the University's motion for judgment on the pleadings, and dismiss Plaintiff's Second Amended Complaint (Doc. 21) in its entirety against the University, with prejudice, pursuant to Federal Rule of Civil Procedure 12(c), along with any other, further relief the Court deems proper, equitable, and just.

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Attorneys for Defendant*
*Villanova University*

Dated: January 5, 2025

20

## <u>CERTIFICATE OF SERVICE</u>

I, James A. Keller, hereby certify that I electronically filed the foregoing Motion to Dismiss and Memorandum of Law with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

*/s/ James A. Keller*

James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1735 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Attorneys for Defendant*
*Villanova University*

Dated:  January 5, 2025

21