## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C.A., | Case No. 2:24-cv-04434-KNS |
| Plaintiff, | |
| v. | |
| Villanova University, et al., | Electronically Filed |
| Defendants. | |

**DEFENDANT VILLANOVA UNIVERSITY'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

**Page**

**INTRODUCTION**......................................................................................................................1

**ARGUMENT**..............................................................................................................................2

    I.    Rule 12(c) Permits the Court to Decide This Motion Based on the SAC and the Materials On Which It Relies ...............................................................................2

    II.    Villanova's Alcohol-, Drug-, and Sexual Assault-Related Policies and Practices Contained and Referenced in the ASR Directly Refute Plaintiff's Claims That Such Policies and Practices Do Not Exist, and Plaintiff's "Implementation" and "Effectiveness" Arguments Were Not Pleaded and As Such Do Not Salvage the SAC ................................................................................................................ 5

    III.    Rule 12(d) Conversion is Unnecessary and Would Not Alter the Outcome ....................... 7

**CONCLUSION** ........................................................................................................................8

57247006.4
57284890.2

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Delaware Nation v. Pa.*, 446 F.3d 410 (3d Cir. 2006), *as amended* ................................................. 3

*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (1997) .......................... 2, 3, 7

*Kulwicki v. Dawson*, 969 F.2d 1454 (3d Cir. 1992) ........................................................................ 7

*Meyer v. Delaware Valley Lift Truck, Inc.*, 392 F.Supp.3d 483 (2019) .......................................... 8

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir.1993) ................................................................................................ passim

**FEDERAL STATUTES**

34 C.F.R. § 668.46 ............................................................................................................................ 3

**STATE STATUTES**

18 P.S. § 20.303(b) ........................................................................................................................... 3

24 P.S. § 20-2001-G, *et seq.* ........................................................................................................... 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 12(c) ........................................................................................................ 2, 4, 8

Fed. R. Civ. P. Rule 12(d) ................................................................................................................ 7

## INTRODUCTION

This Court's Memorandum Opinion ("Mem. Op.," Doc. 70) on the Motion to Dismiss filed by Villanova University ("Villanova" or the "University") (Doc. 25) set a specific and narrow framework. The Court held that Villanova would owe a duty to Plaintiff *only if* it had actual or constructive knowledge of a higher likelihood of sexual assault in its residential halls on "Sylly Night."[1] Mem. Op. at 7. Villanova's Motion for Judgment on the Pleadings (the "Motion") applies that framework to the pleadings and to the universe of materials which the Second Amended Complaint (Doc. 21) ("SAC") itself embraces and relies upon.

Plaintiff's Opposition to the Motion ("Opp.") (Doc. 97) would effectively eliminate the motion for judgment on the pleadings from our federal rules, taking the position: "we know what the relevant documents say, and they undercut our case, but we want discovery anyway." In a similar way, Plaintiff's Opposition ignores what the SAC actually states. The SAC alleges, in categorical terms, that Villanova provided **no** warnings related to alcohol and drug use and sexual assault, and was on notice of a foreseeable risk of harm of sexual assault on its campus ***on "Sylly Night" specifically*** and took **no** precautions. Villanova's Motion demonstrates that these allegations are implausible, and contradicted by the very documents Plaintiff made the cornerstone of her case.

There is no discovery that can rebut this. It is no surprise, then, that Plaintiff's Opposition attempts to move the goalposts, abandoning the SAC's as-pled argument of a past pattern of incidents on "Sylly Night" and a lack of warning. Plaintiff now acknowledges that the University *did* undertake the warnings and protections the SAC argued were absent, but now suggests that they need discovery to search for clues that the University's efforts were ineffective, or not well

---

[1] "Sylly Night" is the term Plaintiff uses to refer to the evening of the first day of classes.

1

received.[2] That is not what Plaintiff pled, and the Court should hold Plaintiff to the SAC she filed. The University's Motion should be granted.

## ARGUMENT

I.  **Rule 12(c) Permits the Court to Decide This Motion Based on the SAC and the Materials On Which It Relies**

Plaintiff's threshold argument is procedural: that Villanova seeks to "expand the pleadings" with extrinsic documents. That framing overstates both what is necessary to resolve this Motion, and the governing legal standard. On a Rule 12(c) motion, courts may consider documents falling into any one of four categories: (1) the complaint and exhibits attached to it; (2) documents integral to or explicitly relied upon in the complaint; (3) undisputedly authentic documents upon which the claims are based; and (4) matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (1997). As noted in the Motion, at 11-13, Villanova prevails even if the Court considers only:

1. The SAC;
2. The Annual Security and Fire Safety Report ("ASR"), which Plaintiff expressly incorporates by reference in the SAC and which is integral to and expressly relied upon therein (SAC ¶ 38); and
3. The crime logs underlying the crime statistics contained in the ASR, which are undisputedly authentic public records.[3]

---

[2] By way of example, Plaintiff asserts, Opp. at 14, that discovery is needed to ascertain whether the "purported education and training efforts were actually delivered to, received by, or understood by any of the students involved." It is unclear why Plaintiff requires discovery to ascertain whether she completed mandatory training or read her mail. Indeed, if she did not, it is difficult to understand how her disregard of these efforts constitutes negligence by the University. To the extent Plaintiff seeks discovery about Katzenell, Polun, and Eguiguren's education and training, the SAC does not allege any failing by the University vis a vis these individuals that led to the harm Plaintiff sustained. It is undisputed that they did not participate in "Sylly Night." SAC ¶ 78.

[3] To be clear, the Court is not so constrained. Many other documents which are appended to the University's Answer, and which are acknowledged in its Motion, fall into one or more of the four categories which the Court may consider.

2

Plaintiff expressly relies on Villanova's ASR, in her words, "as a factual predicate of notice and foreseeability." Opp. at 10. She points to the aggregate statistics contained in the ASR to assert that Villanova had actual or constructive knowledge of drug-, alcohol-, and sexual assault-related misconduct on campus, and to imply that reported incidents had some connection to "Sylly Night." *See* SAC ¶ 38. But, the statistics do not stand alone. They represent a compilation of reported incidents drawn from daily crime logs that the University is federally mandated to collect and report. *See generally* 34 C.F.R. § 668.46. The logs are publicly maintained and available records under Federal law. *See* 34 C.F.R. § 668.46(f). They are also public records under Pennsylvania law. *See* 18 P.S. § 20.303(b) (defining daily crime logs as public records in the Commonwealth).[4] *See also Delaware Nation v. Pa.*, 446 F.3d 410, 414 (3d Cir. 2006), *as amended* June 14, 2006 (meeting minutes designated as a "public record" by statute properly considered).

The Third Circuit has made clear that consideration of critical documents on a motion for judgment on the pleadings without converting the motion is permissible, otherwise, a plaintiff with a legally deficient claim could survive dismissal simply by failing to attach a dispositive document. *White Consol.*, 998 F.2d at 1196; *Burlington Coat Factory*, 114 F.3d at 1426 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them"). Plaintiff cannot rely on aggregate ASR statistics while resisting consideration of the underlying public records that give those statistics meaning.

---

[4] Because Plaintiff expressly relies on the "About Us" page of the Villanova Department of Public Safety website in the SAC ¶¶ 88-89, she is aware that the Department is an accredited police department staffed by sworn law enforcement officers. Nowhere in the SAC does Plaintiff assert that these officers, or anyone else at the University, submitted false or fraudulent documents. Villanova University, *About Us,* DEPARTMENT OF PUBLIC SAFETY, last visited February 12, 2026 (https://www.villanova.edu/university/public-safety/about.html).

The University's crime logs reflect no pattern of reported sexual assaults on campus on "Sylly Night" in the years preceding Plaintiff's assault. *See* Motion at 11-13. Tellingly, Plaintiff's Opposition never addresses the crime logs at all. This Court defined the scope of duty narrowly. It held that Villanova would owe a duty only if it had constructive or actual knowledge of a higher likelihood of sexual assault in its residence halls on "Sylly Night." Mem. Op. at. 7. The SAC did not plead any facts whatsoever showing a pattern of reported sexual assaults on campus on "Sylly Night" in the years preceding Plaintiff's assault, other than the statistics in the ASR. The crime logs that undergird those ASR statistics, attached to the Motion, show that Plaintiff's interpretation of those statistics is simply wrong. Without this misinterpretation of the ASR, Plaintiff cannot plead a duty. As noted in the Motion, at 8, Plaintiff points to no precedent in this jurisdiction accepting the existence of an inherent causal connection between drinking and sexual assault for the purposes of establishing a legal duty or causation, and courts across the country have confronted the proposition that knowledge of drinking constitutes constructive knowledge of sexual assault and found it to be untenable. Even on the narrowest construal of the permissible record—the SAC, the ASR, and the public crime logs—the duty predicate fails.

Plaintiff asserts that this Court has already held that whether Villanova "had actual or constructive knowledge of criminal conduct by third parties on campus…presents a factual question not amenable to resolution at the pleadings stage." Opp. at 9. But, this misstates the Court's ruling and its application to the current procedural posture. On the motion to dismiss, the Court was required to accept Plaintiff's allegations as true; thus, it held that the facts as alleged plausibly suggested constructive knowledge of a heightened risk of sexual assault on "Sylly Night." Mem. Op. at 7. Under Rule 12(c), however, the Court considers the pleadings as a whole, including, as noted, documents integral to or explicitly relied upon in the complaint, undisputedly

4

authentic documents upon which the claims are based, and matters of public record. *White Consol.*, 998 F.2d at 1196. The documents properly before this Court directly undermine the plausibility of Plaintiff's pleadings and, as such, the relief the University requests is appropriate at this stage.

II. **Villanova's Alcohol-, Drug-, and Sexual Assault-Related Policies and Practices Contained and Referenced in the ASR Directly Refute Plaintiff's Claims That Such Policies and Practices Do Not Exist, and Plaintiff's "Implementation" and "Effectiveness" Arguments Were Not Pleaded and As Such Do Not Salvage the SAC**

Unable to defend the SAC as written, Plaintiff reframes the dispute as one about the "implementation, enforcement, and effectiveness" of the University's policies and practices pertaining to alcohol use, drug use, and sexual assault.[5] But, the SAC does not plead that Villanova had policies or practices that were inadequately implemented. It pleads that Villanova failed to provide warnings and protections **at all**. *See, e.g.,* SAC ¶¶ 27-28 (Villanova did not "send **any** text or e-mail messages or alerts to its students, including C.A., to exercise caution or refrain from engaging in on- or off-campus alcohol and/or drug use and/or abuse or sexual abuse and/or misconduct") (emphasis added); SAC ¶¶ 25-26 (freshman orientation "did not provide **any** specific instruction or guidance" regarding "on- or off-campus alcohol and/or drug use and/or abuse" or "sexual abuse and/or misconduct") (emphasis added); SAC ¶¶ 21-22 (Villanova "did not provide **any**" orientation, instruction, or guidance to "returning students or sophomores including C.A.") (emphasis added). The ASR directly refutes these claims.

As explained in the Motion, the ASR—the very document Plaintiff relies upon in the SAC as, in her words, "a factual predicate of notice and foreseeability"—describes, in detail,

---

[5] Oddly, at the same time she asserts, *post hoc*, that her claims are premised on unstated issues of "implementation, enforcement, or effectiveness," Plaintiff also asserts that her claims are *not* premised "on the adequacy/inadequacy of the specific content" of "Villanova's student handbooks, RA training modules, alcohol-education materials, or internal policy documents." Opp. at 12. This incoherence emphasizes the importance of holding Plaintiff to the actual factual allegations and legal theories asserted in her SAC.

5

Villanova's alcohol education requirements, mandatory sexual misconduct training, orientation programming, RA-led floor meetings, reporting protocols, and written policies pertaining to alcohol and sexual misconduct. *See* Motion at 15-21. In other words, the document Plaintiff invokes to establish the "factual predicate" for notice simultaneously documents the "factual predicate" for the existence of the very programs she alleges did not exist. That is a pleading-level implausibility, based on the evidence contained in the ASR alone, and further bolstered by the documents the ASR cites, all of which were appended to the University's Answer and noted in its Motion, and which the Court may consider at this stage of the case.

Plaintiff's position is particularly untenable because she affirmatively relies on the ASR in the SAC to establish aggregate crime statistics. Having done so, she is on notice of the entire contents of that document. *White Consol.*, 998 F.2d at 1196–97 ("When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished"). Because Plaintiff chose to rely on the ASR, she cannot now claim surprise at the policies and materials it expressly identifies and incorporates. *See* Motion at 15-21 (detailing the extensive alcohol education requirements, mandatory sexual misconduct training set forth in and incorporated in the ASR). Such notice doctrine exists precisely to prevent a plaintiff from quoting selectively from a document while disregarding the portions that undermine her claims.

The ASR is not a narrow statistical table, it is a comprehensive annual disclosure document. Plaintiff cannot rely on the ASR's accuracy for one proposition (that it contains accurate crime statistics) while asking the Court to presume its inaccuracy for another proposition (that it contains inaccurate information about the University's warnings and protections). Under settled Third Circuit law, the Court may consider documents that are integral to or explicitly relied upon in the

complaint, as well as documents incorporated by reference whose authenticity cannot reasonably be disputed. *White Consol.*, 998 F.2d at 1196; *Burlington Coat Factory*, 114 F.3d at 1426. The Court may therefore consider both the ASR and the policies and materials it incorporates in evaluating the plausibility of the SAC. Further, Plaintiff cannot at this stage pivot to argue instead that the University's warnings and protections were ineffective. This is untrue but, more essentially, this is not the case she pleaded.[6]

### III. Rule 12(d) Conversion is Unnecessary and Would Not Alter the Outcome

Plaintiff alternatively argues that if the Court considers Villanova's materials, the motion must be converted to summary judgment under Rule 12(d). That argument fails.

First, conversion is discretionary. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) (decision to consider evidence outside the complaint and convert a motion to dismiss into one for

---

[6] In support of another new theory, Plaintiff asserts that "the statutory framework governing Pennsylvania universities imposes interrelated obligations concerning sexual-assault education, alcohol-risk mitigation, and student safety" with respect to which "[c]ompliance turns not on the mere existence of policies, but on whether those measures were calibrated to known risks, implemented consistently with statutory purposes, and integrated into practices capable of mitigating foreseeable harm." Plaintiff points to no "statutory framework." Assuming, however, that this is a reference to Article XX-G of the Public School Code, as amended by Act 55 of 2022 (24 P.S. § 20-2001-G, *et seq.*):

  a. The SAC contains no allegations referencing this statute and no alleged facts or theories tying Plaintiff's negligence claims to any alleged statutory non-compliance;
  b. The requirement of an education program, 24 P.S. § 20-2003-G, was not even in effect until July 1, 2023, nearly a year after Plaintiff was assaulted;
  a. Plaintiff's characterization of the law, which requires institutions to offer an education program covering certain topics (as Villanova demonstrably does, and as it certifies annually to the Commonwealth) and says nothing at all about "calibration," "implementation," and "integration," is grossly inaccurate; and
  b. the statute does not create or redefine the common law duty analysis at issue here.

Relatedly, again asserting a new theory, Plaintiff writes, Opp. at 15, that "Villanova's own exhibits expose a critical omission: no Sylly Night–specific protocols or safety measures." Plaintiff's theory of liability – as articulated in the SAC, not as she attempts to amend it through the Opposition – does not require Villanova to have offered "Sylly Night-specific" protections. It rather asserted that Villanova was negligent because it offered **no** protections.

7

summary judgment is generally committed to the court's discretion). Should the Court conclude that any of the documents entered into the record by the University may not be considered under Rule 12(c), the Court may "simply disregard the extraneous materials" and decide the motion on the pleadings and public records alone. *Meyer v. Delaware Valley Lift Truck, Inc.*, 392 F.Supp.3d 483, 489 (2019). As explained above, the SAC, ASR, and crime logs are sufficient to resolve this Motion. Plaintiff cannot plead that warnings and protections did not exist, and then resist Rule 12(c) by demanding discovery into the implementation and efficacy of the non-existent warnings and protections. Plaintiff cannot avoid judgment on the pleadings by demanding discovery untethered to the allegations she actually made in the SAC.

## CONCLUSION

If Plaintiff is held to the allegations she actually made, as she should be, she cannot plausibly establish the duty predicate this Court articulated: actual or constructive knowledge of a higher likelihood of sexual assault in Villanova's residence halls on "Sylly Night." The pleadings do not plausibly establish duty, breach, or proximate cause. For these and all the foregoing reasons, Villanova respectfully requests that the Court grant its Motion for Judgment on the Pleadings.

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Attorneys for Villanova University*

Dated: February 19, 2026

8

## CERTIFICATE OF SERVICE

I, James A. Keller, hereby certify that I electronically filed the foregoing Reply Memorandum of Law with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Attorneys for Villanova University*

Dated:  February 19, 2026