MAUTE LAW

October 30, 2026

Via ECF
The Honorable Kai N. Scott
United States District Court for the Eastern District of Pennsylvania
James A. Byrne United States Courthouse
601 Market Street, Courtroom 13-B
Philadelphia, PA 19106

**RE: *C.A. v. Villanova University, et al.,* Docket No. 2:24-CV-04434-KNS**
**Letter Brief in Support of Defendant Eguiguren's Motion to Remand**
**Hearing Scheduled: November 30, 2026 at 1:00 PM.**

Dear Judge Scott:

Pursuant to the Court's Order of October 8, 2026 (ECF 116), Defendant Juan Eguiguren (herein, "Eguiguren") respectfully submits this Letter Brief in support of his Motion to Remand for lack of subject matter jurisdiction under 28 U.S.C. § 1447(c). (ECF Nos. 116; 117).

## I. PRELIMINARY STATEMENT

This multi-defendant litigation features a severe jurisdictional impediment that deprives this Court of subject matter jurisdiction. Eguiguren is a dual United States and Ecuadorian citizen who always maintained a permanent domicile with his family in Ecuador and was present in Pennsylvania solely to pursue his undergraduate college education at Defendant Villanova University (herein, "Villanova").

Under long-standing binding precedent, a dual citizen domiciled abroad cannot be sued in federal court based upon diversity jurisdiction. Specifically, they are not "citizens or subjects of a foreign state" because courts may only consider their United States citizenship. Further, their

domicile abroad makes them "stateless citizen," not "citizens of a State, " fatally destroying complete diversity requiring actions be "between citizens of different States." Because a federal court cannot adjudicate an action featuring Eguiguren as a stateless jurisdictional spoiler, this matter must be remanded to the Pennsylvania Court of Common Pleas in Philadelphia County.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

1. On August 22, 2024, Plaintiff filed this civil action by Complaint in the Pennsylvania Court of Common Pleas, Philadelphia County. ECF No. 1-3.

2. On August 23, 2024, Villanova "snap" removed the action to this Court asserting federal diversity jurisdiction "between citizens of different states" with citation to 28 U.S.C. § 1332. ECF No. 1 at ¶ 12; ECF No.1-1.

3. In the Joint Rule 26(f) Report filed July 17, 2026, Eguiguren challenged subject matter judication on the ground that, as a United States citizen domiciled abroad in Ecuador, he is a "stateless" citizen whose presence cannot support diversity jurisdiction. ECF Nos. 108.

4. This challenge was discussed at the July 21, 2026 conference and the parties were permitted time to conduct jurisdictional discovery. ECF Nos. 110.

5. On September 25, 2026, Eguiguren responded to Villanova's Interrogatories First Set and Production First Set and supplied an Unsworn Statement. Ex. A, Unsworn Statement.

6. At the October 7, 2026 conference, Eguiguren was joined by Plaintiff C.A. in requesting remand, Villanova was joined by Defendants Katzenell and Polun in opposition, and the Court entered an Order on October 8, 2026 setting a schedule for a motion to remand and allowing Villanova seven (7) additional jurisdictional interrogatories. ECF No. 116.

7. On October 14, 2026, Eguiguren filed a Motion to Remand. ECF 117.

8. On October 23, 2026, Eguiguren responded to Villanova's Interrogatories Second Set and supplied an Amended Unsworn Statement. Ex. B, Amended Unsworn Statement.

**B. Eguiguren's Background and Longstanding Domicile.**

9. Eguiguren is a dual citizen of the Ecuador and the United States. Ex. A ¶¶ 3, 18, 19; Ex. C, United States Passport; Ex. D, Ecuadorian Passport.

10. Born in 2002, Eguiguren was raised in Quito, Ecuador where has lived with his family in their family home since 2003. Ex. A, ¶¶ 4 to 8.

11. It was not until August 14, 2021 that Eguiguren traveled to Pennsylvania to pursue his undergraduate degree at Villanova University. Ex. A, ¶20

12. At age 18, Eguiguren registered to vote in Ecuadorian elections. He voted in two (2) Ecuadorian elections before starting college and two (2) more Ecuadorian elections while enrolled in college before this lawsuit commenced -- February 7, 2021, April 11, 2021, August 20, 2023, and October 15, 2023. Ex. A, ¶¶ 11 to 14, 30, 33; Ex. K; Ex. L; Ex. H.

13. In 2020, Eguiguren opened a bank account at Banco Pichincha in Quito, Ecuador, which he still uses. Ex. A, ¶ 56; Ex. J.

14. On June 1, 2021, Eguiguren was issued an Ecuadorian National Identity Card, which remains valid. Ex. A, ¶ 17; Ex. E.

15. On June 26, 2021, Eguiguren graduated from high school in Quito, Ecuador. Ex. A, ¶ 15.

16. The Ecuadorian government maintains Eguiguren's educational records, voting records, and travel records. Ex. A, ¶¶ 9, 12, 16; Ex. F; Ex. G; Ex. H.

17. Eguiguren has always considered Quito, Ecuador to be his "home" and for as long as he can remember, it has always been his intent to return home to Quito, Ecuador, after travelling abroad. Ex. A, ¶ 8.

18. On August 14, 2021, Eguiguren traveled to Pennsylvania to pursue his undergraduate degree at Villanova University. Ex. A, ¶20

19. In the prior four (4) prior to starting college, Eguiguren had not traveled outside of Ecuador except for a brief visit to Uruguay. Ex. A, ¶ 21.

20. Throughout his undergraduate enrollment at Villanova University, Eguiguren considered his presence in Pennsylvania to be temporary and solely for the purpose of pursuing his undergraduate education. Ex. A, ¶ 54.

21. Eguiguren never had a residence in Pennsylvania other than temporary student housing on Villanova's campus in Standford Hall, Sheehan Hall, Friar Hall, and Cannon Hall. Ex. A, ¶¶ 23, 26, 32, 42.

22. During his freshman year (2021-2022), Eguiguren returned to Ecuador for Villanova's Fall, Winter, and Spring Breaks. Ex. A, ¶ 24.

23. Eguiguren then vacated the dormitory and spent the Summer of 2022 in Ecuador from May 6, 2022 to August 8, 2022. Ex. A, ¶¶ 24, 25.

24. During his sophomore year (2022-2023), Eguiguren was only in Pennsylvania during Villanova's Fall Semester and vacated the dormitory, he returned to Ecuador for Winter Break, and he spent the Spring Semester in Europe. Ex. A, ¶¶ 27, 28.

25. Eguiguren then spent the Summer of 2023 in Ecuador, where he worked a remote internship and voted in his third Ecuadorian election on August 20, 2023. Ex. A, ¶¶ 29, 30.

26. During his junior year (2023-2024), Eguiguren returned to Ecuador for Fall Break and voted in his fourth Ecuadorian election on October 15, 2023, he spent Winter Break in Florida and returned to Ecuador for Spring Break. Ex. A, ¶¶ 33, 34, 35; EGUIGUREN0016 lines 20-21.

27. On May 1, 2024, Eguiguren requested a polling place change to allow him to vote his in the 2025 Ecuadorian General Election from Hightstown, New Jersey during his senior year. Ex. A, ¶ 36.

28. Eguiguren travelled to North Carolina between May 13, 2024 and May 17, 2024 for his summer internship with SAS Institute, Inc. ("SAS"). Ex. A, ¶ 37.

29. By May 21, 2024, Eguiguren vacated his dormitory and left Pennsylvania for the final time before this action commenced. Ex. A, ¶ 38; Ex. B, ¶ 3.

30. Eguiguren then spent the Summer of 2024 in Ecuador from May 21, 2024 to June 18, 2024, in Maryland from June 18, 2024 to June 28, 2024, in Ecuador from June 28, 2024 to July 30, 2024, in North Carolina from July 30, 2024 to August 3, 2024, and in Ecuador from August 3, 2024 to August 22, 2023. He worked a summer internship with SAS remotely from Ecuador and Maryland, and in-person in North Carolina. Ex. A, ¶¶ 38, 39.

**C. Eguiguren's Physical Presence on the Filing Date of August 22, 2024.**

31. On August 22, 2024, Eguiguren was in Ecuador and Columbia and for three (3) months prior he had neither been in Pennsylvania nor had housing there. Ex. B, ¶ 3.

32. The day after this action was filed, on August 23, 2024, Eguiguren arrived in New York and travelled to Pennsylvania to begin his senior year at Villanova (2024-2025). Ex. B, ¶ 3.

**D. Eguiguren's Post-Graduation Plans and Later Conduct**

33. During his senior year (2024-2025), Eguiguren returned to Ecuador for Winter and Spring Breaks. See EGUIGUREN0015. Ex. A, ¶ 45.

34. On September 27, 2024, Eguiguren was offered full-time post-graduate employment with SAS. Ex. A, ¶ 43.

35. In October 2024, Eguiguren negotiated to change the terms of SAS's offer from "remote PA" to in-person in Cary, North Carolina with an August 2025 start date. Ex. A, ¶ 44.

36. On October 31, 2024, Eguiguren accepted a full-time post graduate employment in-person in Cary, North Carolina with an August 2025 start date. Ex. A, ¶ 44.

37. On March 27, 2025, Eguiguren traveled to Cary, North Carolina, for a long weekend to search for apartments in anticipation of his post-graduate employment with SAS. Ex. A, ¶ 46

38. Eguiguren considered his presence in North Carolina to be temporary and solely for the purpose of evaluating housing options so that he could start work for SAS Institute, Inc. in August 2025. Ex. A, ¶ 47.

39. On April 13, 2025, Eguiguren voted in his fifth Ecuadorian election at a polling place in Hightown, New Jersey. See EGUIGUREN0031. Ex. A, ¶ 49.

40. On April 13, 2025, he learned that Villanova University had terminated his access to his dormitory and Villanova University expressly denied him access to campus under threat of immediate arrest for criminal trespass. Ex. A, ¶ 50.

41. On April 15, 2025, SAS Institute, Inc. rescinded its job offer and Eguiguren responded, in part, "It caught me off guard, especially considering the plans I have regarding moving to Cary and starting on [sic] August." EGUIGUREN0023; Ex. A, ¶ 51.

42. On April 18, 2025, Villanova University's movers packed and emptied his dormitory. See Ex. A, ¶ 52.

43. By April 24, 2025, Eguiguren had completed final examinations, and returned home to Quito, Ecuador where he continues to reside with his family at their family home in Quito, Ecuador, where household utility services remain active, and he continues to use his Banco Pichincha bank account. Ex. A, ¶ 53.

44. On November 16, 2025, he attempted to vote in Quito, Ecuador but had not timely changed his polling location back to Quito for this election and was issued a Certificado de Presentación, which documents he appeared at a polling place in Quito, Ecuador. *See* EGUIGUREN0030. Ex. A, ¶¶ 58, 59.

45. The next Ecuadorian national voting day is scheduled for November 29, 2026 and Eguiguren timely requested that his polling place be changed to Quito, Ecuador. Ex. A, ¶ 62.

46. Eguiguren has never voted in a Pennsylvania election. Ex. A ¶ 61.

47. Eguiguren retains political and participation rights as certified by Ecuador's National Electoral Council on July 20, 2026. Ex. A, ¶ 63.

## III. LEGAL ARGUMENT

### A. Remand is Required by 28 U.S.C. § 1447(c) Whenever Subject-Matter Jurisdiction is Lacking and the Plaintiff Selects the State Forum.

The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). 28 U.S.C. § 1447(c) states, in pertinent part:

> **If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.** An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c)(emphasis added).

It is incumbent upon a federal court to resolve questions regarding their authority to hear a dispute before proceeding to a disposition on the merits. *Frett-Smith v. Vanterpool*, 511 F.3d 396,

400 (3d Cir. 2008). Once a federal court determines that it lacks subject-matter jurisdiction, the plain language of 28 U.S.C. § 1447(c) mandates that the matter be remanded to the state court from which it was removed. *International Primate Protection League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991); *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 213 (3d Cir. 1997).

When the plaintiff selects a state forum, a federal court cannot use Rule 21 to override remand by dismissing a dispensable, non-diverse party. *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 433 (2026)(plaintiff's choice of forum is determinative of Rule 21 application).

### B. The Party Asserting Jurisdiction Retains the Burden of Proof Throughout Litigation By A Preponderance of the Evidence.

The party asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of litigation. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 188-89 (1936); *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

The party asserting diversity jurisdiction retains the burden of proving that diversity of citizenship exists by a preponderance of the evidence. *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011); *Freidrich v. Davis*, 767 F.3d 374, 377 (3d Cir. 2014).

Here, binding precedence requires Villanova as the removing party – as well as Katezenell and Polun who join in opposing remand – to bear the burden of proving jurisdiction, namely that diversity of citizenship exists, by a preponderance of the evidence.

### C. 28 U.S.C. § 1332(a) Is Never a Basis for Subject Matter Jurisdiction When a Party is a United States Citizen Domiciled Abroad, Including a Dual National.

28 U.S.C. § 1332(a) states:

> **(a)The district courts shall have original jurisdiction of all civil actions** where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is **between— (1) citizens of different States**; (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a)(emphasis added).

For 28 U.S.C. § 1332(a) diversity jurisdiction analysis, a dual national of the United States and a foreign country is treated only as a United States citizen. *Newman-Green, Inc.*, 490 U.S. 826, 828–29 (1989) (foreign/alienage jurisdiction cannot be satisfied because of United States citizenship); *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 185 (3d Cir. 2008); *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400 (3d Cir. 2008)(reliance on alienage jurisdiction was in error).

When a dual national is domiciled abroad, he is not a citizen of any state and cannot satisfy the state citizenship requirement of the diversity statute. *Newman-Green, Inc.*, 490 U.S. 828–29 (natural person must be domiciled within the State to be a citizen of a State); *Swiger*, 540 F.3d at 185; *Frett-Smith*, 511 F.3d at 400.

In other words, American citizens living abroad cannot be sued in federal court based on diversity jurisdiction as they are neither "citizens of a State," nor "citizens or subjects of a foreign

state." *Newman-Green, Inc.*, 490 U.S. at 826; *Swiger*, 540 F.3d at 183-84; *Frett-Smith,* 511 F.3d at 400.

In *Newman-Green, Inc.*, the Supreme Court held that Courts of Appeal have the power to dismiss "jurisdictional spoiler" defendants under Rule 21 where defendant Bennison, a dual United States and Venezuelan citizen domiciled abroad in Venezuela, destroyed both alienage and diversity of citizenship jurisdiction. 490 U.S. 826.

In *Swiger*, the Third Circuit affirmed dismissal for lack of subject matter jurisdiction because neither alienage nor diversity of citizenship jurisdiction existed against defendant-partnership where one partner, Charles Lubar, was a dual United States and United Kingdom citizen, domiciled abroad in the United Kingdom. 540 F.3d 179.

In *Frett-Smith*, the Third Circuit affirmed dismissal for lack of subject matter jurisdiction as neither alienage nor diversity of citizenship jurisdiction existed where plaintiff Smith, a dual United States and British citizen, was domiciled abroad in the British Virgin Islands. 511 F.3d 396.

Here, Eguiguren is a dual United States and Ecuadorian citizen as shown by his passports issued in 2021. Ex. A ¶¶ 3, 18, 19; Ex. C; Ex. D. Pursuant to precedence in *Newman-Green, Swiger,* and *Frett-Smith,* Eguiguren's United States citizenship controls the diversity jurisdiction analysis and neither foreign nor alienage jurisdiction exist. Accordingly, Villanova must establish by a preponderance of the evidence that the instant action is "between— (1) citizens of different States" to satisfy § 1332(a)(1) diversity jurisdiction.

**1. <u>Domicile at the time-of-filing on August 22, 2024 controls.</u>**

It is the citizenship of the parties at the time the action commenced which is controlling. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 574 (2004)(time-of-filing rule recognized for 175 years); *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972); *Washington v. Hovensa* LLC, 652 F.3d 340, 344 (3d Cir. 2011).

Here, Plaintiff's complaint was filed on August 22, 2024. ECF No. 1-1. Accordingly, the court must grant remand unless Villanova can meet its burden of establishing Eguiguren was domiciled in a State on August 22, 2024.

**2. <u>At all times, including August 22, 2024, Eguiguren's domicile was Ecuador.</u>**

For the purposes of diversity jurisdiction, "[c]itizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.'" *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)); *Freidrich v. Davis*, 767 F.3d 374, 377 (3d Cir. 2014).

For a United States Citizen to change his domicile, "two elements are necessary. He must take up residence at the new domicile, and he must intend to remain there. Neither the physical presence nor the intention to remain is alone sufficient." *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

A party's statement of intent to establish domicile is entitled to full and fair consideration when buttressed by their course of conduct at the time the complaint was filed. *Washington,* 652

F.3d at 346–47 (it is improper to disregard a statement it unless contradicted or negated by an inconsistent course of conduct, like fabrication in *Korn v. Korn*, 398 F.2d 689, 691 (3d Cir.1968)).

A court considers several factors in determining an individual's domicile, including declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business. *Washington,* 652 F.3d at 344(citation omitted). Other factors to be weighed may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration. Id. (citation omitted). More generally, the court must locate "the center of one's business, domestic, social and civic life." Id. (quoting Frett–Smith, 511 F.3d at 401).

**a. Before starting college, Eguiguren's domicile was Ecuador.**

Before travelling to Pennsylvania on August 14, 2021 to attend college, Eguiguren's domicile was undeniably in Ecuador. He lived with his family in Quito, Ecuador from 2003 to August 14, 2021, where he graduated high school, banked, voted twice, and had always considered his home to which he wanted to return. Ex. A, ¶¶ 8, 11 to 14, 15, 30, 33, 56. He has not left Ecuador in the four (4) years before starting college, except for a brief visit to Uruguay. Ex. A, ¶ 21.

As a minor, Ecuador was Eguiguren's domicile as established by his parents in 2003 pursuant to with *Mississippi Band of Choctaw Indians.* As a young adult before August 14, 2021, his Ecuadorian domiciled continued through his residence and intent to remain pursuant to *Krasnov*, as supported by his statement and the factors in *Washington*. Ecuador was the undeniable center of Eguiguren's domestic, social and civic life.

**b. Eguiguren's Ecuadorian domicile is presumed to continue, and did, during college.**

Federal courts in the Third Circuit recognize that an existing domicile is presumed to continue. "A domicile once acquired is presumed to continue until it is shown to have been changed." *Mitchell v. United States,* 21 Wall. 350, 88 U.S. 350 (1874); *Korn,* 398 F.2d at 691 n. 4 (quoting *Mitchell,* 88 U.S. at 353 (1874)). This principle gives rise to a presumption favoring an established domicile over a new one." *McCann,* 458 F.3d at 286–87.

Whenever the party claiming a new domicile is the proponent of federal jurisdiction, it bears both burdens—the burden of production regarding domicile and the burden of persuasion regarding federal jurisdiction. *Id.* at 288–89. The effect of placing both burdens on one party is to require the party to initially carry the burden of production to rebut the presumption in favor of an established domicile. If and when the party does so, the presumption falls out of the case and the party is required to carry the burden of persuasion by proving that a change of domicile occurred, creating diversity of citizenship by a preponderance of the evidence. *Id.*

The effect of this presumption is to put a heavier burden on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one. *Washington*, 652 F.3d at 345.

In *Washington*, the Third Circuit remanded unconvinced that the District Court gave the factors supporting the presumption of Washington's established domicile in Texas all the weight they deserved before finding domicile in the Virgin Islands. 652 F.3d at 346. Washington's affidavit stated that she intended to return to Texas when her work project was complete, but she had not returned to Texas in seven (7) months, kept an apartment in the Virgin Islands, and had an 'indefinite' work assignment in the Virgin Islands. *Id.* at 341.

In *Freidrich*, the Third Circuit affirmed dismissal for lack of subject matter jurisdiction over "stateless" citizen, Defendant Davis, a United States citizen domiciled abroad in Germany.

Freidrich v. Davis, 767 F.3d 374, 375 (3d Cir. 2014). Notably, Plaintiff argued a presumption that Davis' continued domicile was Pennsylvania because on a ballot request form, Davis had checked a box that declared his intent to return to the United States. Davis had still exercised political rights in the United States at the federal level, maintained a bank account in Pennsylvania and had a Pennsylvania driver's license. Davis' home, business, and family are all located in Germany. The District Court found German domicile based upon both Davis' actions and his declarations of intent to remain in Germany.

District courts within the Third Circuit have also recognized a presumption that an out-of-state student retains the domicile of their parents and lacks the requisite intent to establish a new domicile in their college state. *Shishko v. State Farm Ins. Co., 553 F. Supp. 308, 310 (E.D. Pa. 1982); Bradley v. Zissimos*, 721 F.Supp. 738, 740 (E.D.Pa.1989) ("It is generally presumed that a student who attends a university in a state other than the student's 'home' state intends to return 'home' upon completion of studies.").

Here, Eguiguren's pre-college domicile of Ecuador warrants a presumption that it continued. Moreover, it was unchanged despite Eguiguren's intermittent, temporary, and finite presence in Pennsylvania for the purpose of attending college from the day he first arrived for his freshman year on August 14, 2021 until this action was filed on August 22, 2024 -- before he had even arrived in Pennsylvania for his senior year.

During his freshman year (2021-2022), Eguiguren stayed in an on-campus dormitory and returned to Ecuador for academic breaks in the fall, winter and spring. Eguiguren vacated his dormitory and returned to Ecuador for the summer of 2022 from May 6, 2022 to August 8, 2022.

During his sophomore year (2022-2023), Eguiguren was only in Pennsylvania for the fall semester, and he stayed in an on-campus dormitory. He returned to Ecuador for winter break and he studied abroad in Europe that spring. Eguiguren returned to Ecuador for the summer of 2023 from June 5, 2023 to August 21, 2023, where he worked a remote internship and voted in his third Ecuadorian election on August 20, 2023.

During his junior year (2023-2024), Eguiguren stayed in an on-campus dormitory, spent winter break in Florida, and returned to Ecuador for spring break. On October 15, 2023 Eguiguren voted in his fourth Ecuadorian election. On May 1, 2024, Eguiguren requested a polling place change to allow him to vote in the 2025 Ecuadorian General Election from Hightstown, New Jersey. Eguiguren vacated his dormitory and returned to Ecuador for the summer of 2024 from May 21, 2024 to August 22, 2024, except for travel to Maryland from June 18, 2024 to June 28, 2024 and North Carolina from July 30, 2024 to August 3, 2024. Again, he worked a remote internship from Ecuador that summer.

Plainly, for three (3) months from May 21, 2024 until this action was filed on August 22, 2024, Eguiguren had no residence whatsoever in Pennsylvania nor was he physically present in Pennsylvania.

Moreover, between August 14, 2021 and August 22, 2024, Eguiguren had only ever lived in different temporary on-campus student dormitories in Pennsylvania, for periods without even a dormitory like over summer and spring semester sophomore year. The dormitories were in furtherance of his purpose to attend college and stays were finite.

Between August 14, 2021 and August 22, 2024, Eguiguren returned to Ecuador a total of fourteen (14) times and voted in two (2) Ecuadoran elections. He maintained his Ecuadorian bank

account at Banco Pichincha, but because it did not have a branch near Villanova, opened an account at Chase Bank in furtherance of his purpose to attend college. He participated in work-study as part of his financial aid package in furtherance of his purpose to attend college.

Between August 14, 2021 and August 22, 2024, Eguiguren participated in summer internships remotely from Ecuador, with two internship-related visits to North Carolina.

He has never voted in Pennsylvania, he was not registered to vote as of August 22, 2024, nor could he have even registered on August 22, 2024 due to Pennsylvania's 30 days residency requirement. See 25 Pa. Stat. and Cons. Stat. Ann. § 1301 (West).

Plainly, his physical presence in Pennsylvania alone is insufficient to establish Pennsylvania as a new domicile under *Krasnov*.

Like in *Washington*, Eguiguren's statements of intent -- to retain Ecuador as his continuing domicile and conversely that his presence in Pennsylvania was temporary for his undergraduate education – are entitled to full and fair consideration because they are buttressed by Eguiguren's entire course of conduct as of the August 22, 2024 filing of the complaint.

Like in *Freidrich*, a Pennsylvania bank account should be viewed insufficient to change an established domicile of Ecuador. Like in *Washington* where a furnished apartment for seven months was insufficient, a college dormitory that Eguiguren did not stay in for longer than a single semester stretch and with fourteen (14) return visits to Ecuador should be viewed insufficient to change his established domicile of Ecuador.

With the presumption of continuing domicile in Ecuador, the weight of these factors from August 14, 2021 and August 22, 2024 leads to the inescapable conclusion that Ecuador remained Eguiguren's continued domicile at the time this action commenced. Remand is proper.

**c. <u>Eguiguren's post-graduate plans do not support a change of domicile to Pennsylvania.</u>**

Just over two (2) months after the Complaint was filed, on October 31, 2024, Eguiguren accepted an offer of post-graduate employment in North Carolina to start in August 2025. He looked at apartments in North Carolina in March 2025 and, then that offer was rescinded in April 2025, Eguiguren completed his studies and returned to Ecuador – where he remains.

This conduct is plainly after the relevant time-of-filing but is objective evidence consistent with Eguiguren's stated intent that he was in Pennsylvania temporarily for undergraduate education, not indefinitely. Again, post-filing evidence supports but does not change Eguiguren's Ecuadorian domicile and remand should be granted.

**D. Any domicile factors or reasoning used to find Eguiguren acquired a Pennsylvania domicile must be consistently applied to Plaintiff as it may compel the conclusion that she too acquired a Pennsylvania domicile, which would defeat complete diversity.**

When this action commenced, Plaintiff C.A. from Virginia and Eguiguren from Ecuador were similarly situated as out-of-state undergraduate students. ECF No. 1 at ¶ 2. If the circumstances of Eguiguren's presence in Pennsylvania are somehow sufficient to establish that he abandoned his prior Ecuadorian domicile and acquired a Pennsylvania domicile, the same reasoning may compel the same conclusion as to Plaintiff.

Complete diversity is destroyed if both Plaintiff and Defendant Villanova are citizens of Pennsylvania. *See* ECF No. 1 at 3; *Exxon Mobil Corp. v. Allapattah Svcs. Inc.,* 545 U.S. 546, 553(2005); *Kaufman v. Allstate N.J. Insur. Co.,* 561 F.3d 144, 148 (3d Cir.2009). The courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction. *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995). Eguiguren reserves the right to seek remand on that basis.

## IV. CONCLUSION

Subject matter jurisdiction is an absolute, non-waivable prerequisite to federal adjudication. Because a stateless citizen jurisdictional spoiler is party to this action, complete diversity does not exist. Defendant Eguiguren respectfully requests that this Court grant the motion and remand this action to the Pennsylvania Court of Common Pleas, Philadelphia County.

Respectfully submitted,

**MAUTE LAW LLC**

By: /s/ Douglas C. Maute
Douglas C. Maute
I.D. No. 306615
141 Pleasant Valley Avenue
Moorestown, NJ 08057
dcm@mautelaw.com
(609) 560-1388
*Attorney for Juan Eguiguren*

Cc: All counsel via ECF.

Encl.

Exhibit A, 9/25/26 Unsworn Statement of Eguiguren

Exhibit B, 10/23/26 Amended Unsworn Statement of Eguiguren

Exhibit C, Eguiguren ’s United States Passport, Bates No. EGUIGUREN0009

Exhibit D, Eguiguren's Ecuadorian Passport, Bates No. EGUIGUREN0010

Exhibit E, Eguiguren's Ecuadorian National Identity Card, Bates No. EGUIGUREN0011

Exhibit F, Eguiguren's Ecuadorian National Identity Card, Bates No. EGUIGUREN0011

Exhibit C, United States Passport, Bates No. EGUIGUREN0009;

Exhibit D, Ecuadorian Passport, Bates No. EGUIGUREN0010;

Exhibit E, Ecuadorian National Identity Card (Cédula de Identidad), Bates No. EGUIGUREN0011;

Exhibit F, Certificate of Registration of Secondary Education Diploma (Certificado de Registro del Título de Bachiller), Bates No. EGUIGUREN0012;

Exhibit G, September 2026 Certificate of Immigration Entry and Exit Records (Certificado de Movimiento Migratorio), Bates Nos. EGUIGUREN0015–EGUIGUREN0016;

Exhibit H, July 2026 Certificate of Immigration Entry and Exit Records (Certificado de Movimiento Migratorio), Bates Nos. EGUIGUREN0017–EGUIGUREN0018;

Exhibit I, July 2026 Electric Bill, Bates Nos. EGUIGUREN0019–EGUIGUREN0020;

Exhibit J, April 2026 Banco Pichincha Bank Statement, Bates Nos. EGUIGUREN0021–EGUIGUREN0022.

Exhibit K Certification of Political and Participation Rights, Bates No. EGUIGUREN0029;

Exhibit L, Certificate of Presentation for Voting on November 16, 2025 (Certificado de Presentación), Bates No. EGUIGUREN0030; and

Exhibit M, Voter Registration Certificate (Certificado de Empadronamiento), Bates Nos. EGUIGUREN0031–EGUIGUREN0032.