MAUTE LAW

November 12, 2026

Via ECF
The Honorable Kai N. Scott
United States District Court for the Eastern District of Pennsylvania
James A. Byrne United States Courthouse
601 Market Street, Courtroom 13-B
Philadelphia, PA 19106

**RE:** ***C.A. v. Villanova University, et al.,*** **Docket No. 2:24-CV-04434-KNS**
**Defendant Eguiguren's Letter Brief in Reply to Villanova's Opposition to the Motion to Remand**
**Hearing Scheduled: November 30, 2026 at 1:00 PM.**

Dear Judge Scott:

Defendant Juan Eguiguren ("Eguiguren") respectfully submits this Letter Brief in Reply to Villanova University's ("Villanova") Opposition to his Motion to Remand for lack of subject matter jurisdiction under 28 U.S.C. § 1447(c). ECF Nos. 116; 117; 119; Policies and Procedures § III.E.1, U.S. Dist. Ct. E.D. Pa. (Judge Kai N. Scott) (Aug. 2026).

## I. INTRODUCTION.

Villanova's Opposition fails to meet its heightened burden of production to rebut the presumption that Eguiguren's pre-college established foreign domicile continued through the date this action was filed -- August 22, 2024. A United States citizen domiciled abroad is "stateless" and Villanova's Opposition fails to carry its burden of persuasion by a preponderance of the evidence necessary to show diversity jurisdiction exists under 28 U.S.C.§ 1332. Subject-matter jurisdiction is absent, and remand is mandatory under 28 U.S.C. § 1447(c).

## II. LEGAL ARGUMENT.

### A. Eguiguren is a "stateless citizen" because Villanova cannot overcome the presumption that his established foreign domicile continued and, even if it could, Villanova cannot establish a change in domicile by the time-of-filing.

Villanova does refute that Ecuador was Eguiguren's established domicile before college. Opp'n, at 7 (ECF No. 119); Movant's Letter Br. at 12 (ECF No. 122). There is a presumption that his established foreign domicile continued. *See McCann v. Newman Irrevocable Tr*., 458 F.3d 281, 286-87 (3d Cir. 2006). The effect of the presumption is to put a heavier burden on Villanova, trying to show a change of domicile, than is placed on Eguiguren, trying to show the retention of an existing or former one. *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011).

#### 1. <u>Villanova cannot meet its burden of production to rebut the presumption of continued domicile abroad.</u>

Villanova cannot hurdle its first heightened burden of production to rebut the presumption that the established foreign domicile continued. *McCann,* 458 F.3d at 286–87; *Washington*, 652 F.3d at 345. When many recognized domicile factors bolster the baseline presumption of retained established domicile, there is a "substantial initial hurdle to overcome in introducing evidence" of a domicile change. *Washington*, 652 F.3d at 345–46.

Numerous domicile factors between Eguiguren's first arrival in Pennsylvania on August 14, 2021 until this lawsuit was filed on August 22, 2024 serve to bolster the presumption of retained domicile in Ecuador. Namely, Eguiguren's family lived in Ecuador, he always kept belongings in Ecuador, he returned to Ecuador fourteen (11) times, he had extended summer stays in Ecuador, he participated in two (2) internships remotely from Ecuador, he voted in two (2) Ecuadoran elections, and he maintained a primary bank account at Banco Pichincha in Ecuador. *See Movant's*

*Letter Br.* at 14-16 (ECF No. 122); Ex. A, ¶¶ 8, 11 to 14, 15, 21, 30, 33, 56; Ex. H., Nos. 9, 11,13, 15, 17, 19, 21, 23, 25, 27, 29; Ex. N, Eguiguren's Resps, to Villanova's First Set of Interrogs. No. 9 at 15. Thus, per *Washington*, these factors create a substantial initial hurdle for Villanova when it introduces evidence attempting to show domicile change to Pennsylvania.

Villanova only relies upon a pre-complaint bank account and a new girlfriend which cannot rebut the presumption. Opp'n, ¶ 1 at 7 (ECF No. 119).

First, a local bank account is a matter of convenience for any out-of-state college student. Eguiguren kept his Ecuadorian bank account but opened the local account because his bank's nearest branch is in Florida. Ex. A ¶¶ 10, 22, 56; Ex. N, Eguiguren's Resps to Villanova's First Set of Interrogs. No 8 at 14. The local bank account does not establish that intent to remain indefinitely in Pennsylvania because he then left for Ecuador eleven (11) times before this lawsuit commenced. Ex. H., Nos. 9, 11,13, 15, 17, 19, 21, 23, 25, 27, 29. Nor did it alter the "center of gravity" of Eguiguren's life. It only furthered his stated temporary purpose of attending college or, at worst, balances-out his Ecuadorian bank account as a domicile factor.

Second, Eguiguren's relationship with his new girlfriend from Maryland had only just begun in May 2024, Eguiguren was in North Carolina from May 13 to 17, and he surrendered his dormitory and returned to Ecuador by May 21. Ex. A, ¶¶ 37-38; Ex. N, Eguiguren's Resps to Villanova's First Set of Interrogs. No. 9 at 15. Notably, Eguiguren did not return to Pennsylvania again until after the complaint was filed. Ex. B, ¶ 3. Villanova fails to detail how there was intent to remain indefinitely May 2024 when Eguiguren left by May 21.

Pre-filing evidence exhausted, the post-filing events cannot cure a lack of domicile at the moment of filing. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004).

Villanova's reliance upon events after August 22, 2024 must be disregarded as insufficient as a matter of law to rebut the presumption. This includes Villanova's unsupported averment that Eguiguren worked from Pennsylvania. Opp'n, ¶ 1at 7 (ECF No. 119). Again, he was not even in Pennsylvania after May 21, 2024 and had not even returned to Pennsylvania until post-complaint. Ex. A, ¶¶ 37-39; Ex. B, ¶ 3. Such allegations are irrelevant under *Grupo Dataflux*.

Villanova cannot rebut the presumption of retained domicile with claims Eguiguren wanted to abandon Ecuador. In *Coulter v. Coulter*, the plaintiff failed to rebut the presumption of continuing domicile in Pennsylvania with an alleged new domicile in New Jersey. *Coulter v. Coulter*, 715 F. App'x 158, 161 (3d Cir. 2017). There, plaintiff had articulated a desire to establish a new domicile *outside* of Pennsylvania, but no intent to remain in New Jersey *in particular*. *Id.* Thus, a well-articulated desire not to keep an established domicile fails to rebut the presumption.

Instead, a new domicile absolutely requires the concurrence of (1) physical presence in a State, (2) with an intent to remain there indefinitely. *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). Villanova's Opposition does not to articulate any concurrent physical presence with the intent to remain in Pennsylvania indefinitely. The record shows Eguiguren was present for the temporary purpose of pursuing his undergraduate education. Ex. A, ¶ 54. Objective evidence shows the finite nature of his time in Pennsylvania as he returned to Ecuador eleven (11) times pre-complaint and three (3) times after. Ex. H., Nos. 3, 5, 7, 9, 11,13, 15, 17, 19, 21, 23, 25, 27, 29. It was also finite in that he only ever lived in four (4) temporary on-campus dormitories and did not even have a residence during the spring of 2023, or over any summer, or at the time the complaint was filed. Ex. A, ¶¶ 23, 26, 32, 42. The immediate post-complaint discovery too shows his presence was finite when, on October 31, 2024, he accepted post-graduation employment in

North Carolina starting in August 2025 and when he return to Ecuador soon after the offer was rescinded and his exams were done. Ex. A, ¶44; Ex. H, No. 7.

Pursuant to *Washington,* the numerous factors which bolster retained Ecuadorian domicile from August 14, 2021 to August 22, 2024 create too substantial an initial hurdle for Villanova to rebut the presumption with only a local bank account and a new girlfriend. Neither rebuts the presumption as neither moves Eguiguren's substantial "center of gravity" from Ecuador to Pennsylvania. Importantly, Villanova has not shown a change in domicile by concurrent physical presence with the intent to remain in Pennsylvania indefinitely, particularly against the significant objective evidence that his presence was finite to attend college.

Under *McCann*, the presumption controls as a matter of law and the domicile in Ecuador continued. As a U.S. citizen domiciled abroad, Eguiguren is a "stateless" for diversity purposes, known as a jurisdictional spoiler. Subject-matter jurisdiction is absent, and remand is mandatory.

**2. Villanova has not met it burden of persuasion to establish a new domicile as of August 22, 2024.**

Even if Villanova rebuts the presumption of continued foreign domicile, Villanova then has the burden of persuasion to prove a change in domicile occurred as of August 22, 2024 by a preponderance of evidence sufficient to establish diversity jurisdiction. *McCann,* 458 F.3d at 286–87; *Washington*, 652 F.3d at 345. Again, domicile requires the concurrence of both (1) physical presence in a State, (2) with intent to remain indefinitely. *Krasnov,* 465 F.2d at 1300 (3d Cir. 1972).

As detailed in Section II(A)(1) above, Ecuador remained the substantial "center of gravity" of Eguiguren's life pre-complaint. It is undisputed that Eguiguren was not physically present in Pennsylvania on August 22, 2024 without even a transient dormitory. Opp'n, ¶ 2 at 1 (ECF No.

119); Ex. B at ¶ 3, Bates Nos. EGUIGUREN00036 to 38. On August 22, 2024, Eguiguren's family, belongings, primary banking, and voting registration all remained tied to Ecuador.

Villanova cannot meet the burden of persuasion by citing five (5) non-binding "student-domicile" opinions without any factual analysis. Opp'n, at 9-11 (ECF No. 119). Again, the record does not support a domicile change to Pennsylvania as of August 22, 2024.

Eguiguren's post-filing acceptance on October 31, 2024 of post-graduate employment in North Carolina showing his intent was to be in Pennsylvania only for college. Ex. A, ¶¶ 43-44. When that offer was rescinded on April 15, 2025, Eguiguren returned to Ecuador, showing his intent was to be in Pennsylvania only for college.. Ex. A, ¶¶ 51, 53.

Villanova fails to carry its burden of persuasion to establish Eguiguren acquired a new domicile in Pennsylvania necessary to establish diversity jurisdiction. Subject-matter jurisdiction is absent, and remand is mandatory.

**B. Eguiguren's Unsworn Statements are legally sufficient, must be given "full and fair consideration," and warrant full weight.**

Villanova argues that Eguiguren's Unsworn Statements should be afforded little weight after broadly averring that they are self-serving, unsworn, and contradicted. *See, e.g.,* Opp'n, ¶¶ 3-4 at 1, ¶ 5 at 3, Section II at 7, Section III at 9 (ECF No. 119)

Unsworn statements made under penalty of perjury and dated may be used to support matters just like sworn affidavits. *See* 28 U.S.C. § 1746; *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019). Because Eguiguren's Unsworn Statements comply with § 1746(1), they should be properly considered in support of his motion to remand.

Binding authority prevents statements about domicile from being disregarded as self-serving. *Washington*, 652 F.3d at 346 (3d Cir. 2011). The Third Circuit recognized that all such statements are self-serving and still entitled to full and fair consideration, unless contradicted by an inconsistent course of conduct like in *Korn*. *Id.* at 346-347. In *Korn*, the facts and circumstances "clearly indicate[d]" that the plaintiff's testimony was fabricated. *Id.*

In *Korn*, plaintiff's "'*entire* course of conduct' before and after his arrival in St. Thomas, contradicts and negates" his declaration that he began a new life there. *Korn v. Korn*, 398 F.2d 689, 692 (3d Cir. 1968)(emphasis added). In St. Thomas, plaintiff had only lived in hotels, he lied about trying to open a medical practice, and he had travelled back to the U.S. about 8 to 10 times. *Id.* 692–93 (forum shopping for divorce in Pennsylvania, New Jersey, and St. Thomas).

In *Frett-Smith*, the plaintiff's "proof" of Florida domicile was (1) her affidavit that she lived in Miami, contradicted by her friends' affidavits that she lived in Tampa, and (2) she applied for employment using the address where she planned to stay during graduate school, negated by the fact she did not enroll. *Frett-Smith v. Vanterpool*, 511 F.3d 396, 402-403 (3d Cir. 2008). Her only connection to Florida was medical treatment, a grad school application, and her son lives there. *Id.*

Like the facts in *Washington* and unlike those in *Korn*, Eguiguren's *entire* course of conduct and objective evidence buttresses his Unsworn Statements. For example, Eguiguren's stated intent to return to Ecuador and temporary presence in Pennsylvania are supported by objective travel logs showing his fourteen (14) trips back to Ecuador during college (August 14, 2021 to April 25, 2025). Ex. H., Nos. 3, 5, 7, 9, 11,13, 15, 17, 19, 21, 23, 25, 27, 29. Unlike the facts in *Frett-Smith*, Eguiguren has longstanding and significant ties to Ecuador since 2003, as evidenced by his travel

logs and voting records. Simply put, the objective records of his conduct buttress Eguiguren's Unsworn Statements and they should be afforded full weight.

### C. Villanova Had A Duty to Investigate Citizenship Before 'Snap' Removal.

Villanova's 'snap' removal should never have been the starting point of investigating its basis for diversity jurisdiction and, in removing, Villanova certified that reasonable inquiry was made. *See* Fed. R. Civ. P. 11; *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 403 (3d Cir. 2004)(amount in controversy)("The inquiry should be objective and not based on fanciful, "pie-in-the-sky," or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated.").

Villanova relies solely upon jurisdictional discovery supplied by Eguiguren and not upon any evidence that Villanova had when it 'snap' removed this matter. Its complaints regarding discovery are merely an attempt to embark on a fishing expedition in the absence of pre-removal support. While residence alone is never sufficient, Villanova's Residence Life knew Eguiguren did not even have a dormitory on August 22, 2024. Ex. B, Bates No. EGUIGUREN0036.

Given the Rule 11 obligation and the fact Eguiguren was a Villanova student between August 14, 2021 to August 22, 2024, evidence of alleged pre-complaint domicile change to Pennsylvania would exist independent of discovery. The fact it does not support domicile abroad.

## III. CONCLUSION.

Subject matter jurisdiction is an absolute, non-waivable prerequisite to federal adjudication. There is a presumption that Eguiguren's established domicile in Ecuador continued to the date-of-filing. As a United States citizen domiciled aboard, Eguiguren is a "stateless" citizen, jurisdictional spoiler and complete diversity does not exist. Defendant Eguiguren

respectfully requests that this Court grant the motion and remand this action to the Pennsylvania Court of Common Pleas, Philadelphia County.

Respectfully submitted,

**MAUTE LAW LLC**

By: /s/ Douglas C. Maute
Douglas C. Maute
I.D. No. 306615
141 Pleasant Valley Avenue
Moorestown, NJ 08057
dcm@mautelaw.com
(609) 560-1388
*Attorney for Juan Eguiguren*

Cc: All counsel via ECF.

Encl. Ex. N, Eguiguren's Resps to Villanova's First Set of Interrogs. (Under Seal)